UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      :
                               :      Docket No. CR 21-041
                               :
          vs.                  :      Washington, D.C.
                               :      Tuesday, March 9, 2021
MICHAEL THOMAS CURZIO,         :           9:50 a.m.
                               :
               Defendant.  :
------------------------------x


TRANSCRIPT OF VIDEOCONFERENCE MOTION HEARING
BEFORE THE HONORABLE CARL J. NICHOLS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:    SETH A. MEINERO, Esquire
                       TARA RAVINDRA, Esquire
                       Assistant United States Attorneys
                       555 4th Street, NW
                       Washington, DC  20530

For the Defendant:    A. EDUARDO BALAREZO, Esquire
                      400 Seventh Street, NW
                      Suite 306
                      Washington, DC  20004

Court Reporter:       CRYSTAL M. PILGRIM, FCRR, RMR
                      Official Court Reporter
                      United States District Court
                      District of Columbia
                      333 Constitution Avenue, NW
                      Washington, DC  20001

**Government Exhibit**

**1**

1:23-mj-00150

```
1                        P-R-O-C-E-E-D-I-N-G-S

2              THE DEPUTY CLERK:  This is criminal case year

3   2021-041, United States of America versus Michael Thomas

4   Curzio, defendant number two.  Pretrial Officer Christine

5   Schuck.  Counsel please introduce yourself for the record

6   beginning with the government.

7              MR. MEINERO:  Good morning, Your Honor, Seth Adam

8   Meinero for United States.

9              THE COURT:  Mr. Meinero, good morning.

10             MR. BALAREZO:  Good morning, Your Honor, Eduardo

11  Balarezo for Mr. Curzio.

12             THE COURT:  Mr. Balarezo.  It's looking like we have

13  a few other people on.  We might as well make sure we have

14  everyone's appearances before we begin.

15             I note that Mr. Curzio is on by video.  It also appears

16  that Ms. Ravindra may be on.

17             MS. RAVINDRA:  Good morning, Your Honor, Tara Ravindra

18  on behalf of the United States.  Mr. Meinero is going to be

19  speaking and is on video as well.

20             THE COURT:  Very well, thank you.

21             I think the parties well know where we are today which

22  is that I ordered supplemental briefing on some issues related

23  to Mr. Curzio's motion to vacate the magistrate judge's

24  detention order here.  Here's how I would like to proceed.

25             I'd like to hear argument beginning first with the
```

1   government on the questions that I posed in the last hearing

2   and on which the parties submitted supplemental briefs and on

3   any additional information or evidence that the government

4   would like to bring to my attention or argue about with respect

5   to the question under 3142(g) of whether there are conditions

6   that it could have showed the conditions of release that could

7   have assure the safety of the community.

8       So I kind of want to wrap both of the legal questions

9   around what's at issue here together with the facts around Mr.

10  Curzio's situation and dangerousness.  I'll then turn to

11  Mr. Balarezo, back to the government.  I'll probably then take

12  a short recess and come back and do a decision orally, but

13  obviously if something comes up that changes that plan, we'll

14  just take it as it goes.

15      So, Mr. Meinero, let -- obviously we're here on Mr.

16  Curzio's motion to set aside the magistrate judge's detention

17  order.  Why am I not empowered to consider whether the

18  detention hearing should have been held at all under

19  3142(f)(2)?

20          MR. MEINERO:  Well, sir, there's no mechanism for

21  reopening the question of whether the hearing was appropriate

22  in the first instance.

23      There was no objection.  As a factual matter, there was no

24  objection to holding the hearing or for the stated basis for

25  the hearing that the Government articulated back on January

1   19th.  There was an initial appearance on January 14th.  On

2   January 19th, the Government stated that its basis for

3   requesting detention was under 3142(f)(2)(A).  There was no

4   objection to that.  The magistrate judge proceeded with the

5   hearing; there was no objection at the time to raise a

6   potential issue with the hearing then.  And then when this bond

7   review motion came before the Court, it was styled as a motion

8   for modification of the pretrial detention order.  So the

9   review we're conducting now is of the order, not whether

10  detention -- the request for detention hearing in the first

11  instance was appropriate.

12          THE COURT:  I think -- but isn't the government's

13  position even if the defendant had argued in front of the

14  magistrate judge that the (f)2 conditions weren't satisfied and

15  had also presented that argument to me, that if the magistrate

16  judge had concluded that the hearing could go forward under

17  (f)(2) that that determination would be unreviewable still even

18  if the argument was preserved?

19          MR. MEINERO:  There's no mechanism, we don't see a

20  mechanism for reviewing the question whether the detention

21  hearing was appropriate.

22          THE COURT:  But I have to decide -- you agree that I

23  am reviewing whether the magistrate judge's decision to order

24  Mr. Curzio's pretrial detention was lawful?

25          MR. MEINERO:  Yes.

1          THE COURT:  That's the question in front of me.  The

2     D.C. Circuit has said a precondition to a detention order is a

3     detention hearing under (f)(1) or (f)(2), so why don't I have

4     to decide whether that precondition is satisfied?

5          MR. MEINERO:  Well under 3142(f)(2) and under

6     3145(b), those provisions provide for reopening the question of

7     the detention, amendment, or revocation of the detention order.

8          THE COURT:  Why wouldn't I be revoking the order on

9     the grounds that the hearing should not have been held in the

10    first place?

11         MR. MEINERO:  Well, as we argued in our pleadings,

12    Your Honor, that just was not an issue that was brought up by

13    the defense.  So we argue that any claim now to that effect was

14    forfeited by the defense.

15         THE COURT:  Let's assume --

16         MR. MEINERO:  And, Your Honor, if I may add, if the

17    Court is, if the Court would decide to reopen the question of

18    whether a detention hearing in the first instance was

19    appropriate, we would ask to supplement the record to also ask

20    that the -- or to argue that the hearing was appropriate on the

21    basis of (f)(2)(B) as well as (f)(2)(A).

22         THE COURT:  Let's table that question for a moment

23    because I want to assume hypothetically that the hearing was

24    appropriate under (f)(2)(A), which means that the detention

25    hearing was sought appropriately because there was a risk of

1  Mr. Cruzio's flight.  But I'm now being asked to principally

2  affirm the detention order not because of flight risk but

3  because there are no conditions that could assure the safety of

4  the community, and that strikes me as at least somewhat

5  anomalous, that the purpose of the detention hearing, again,

6  I'm assuming that the detention hearing was properly held under

7  (f)(1)(A), but for purposes of the (g) factors, I am not

8  principally considering whether Mr. Curzio is a flight risk,

9  but whether there's a set of conditions that could assure the

10 safety of the community if he's released.  Why isn't that

11 disconnect at least suggestive that if the hearing is for an

12 (f)(1)(A) purpose or that's the reason for the hearing that

13 that limits the question under (g) that I can answer?

14 A.   Well, your Honor, this Court is bound by Singleton;

15 Singleton sets up the two-step process for seeking detention.

16 The first instance or in the -- the first step is whether -- is

17 the question whether a detention hearing is appropriate, and

18 whether there's an appropriate basis to trigger the hearing.

19 When we get to that second part under that second step of the

20 two-step process, Singleton said that assuming a hearing is

21 appropriate, the judicial officer must consider several

22 enumerated factors to determine whether a condition short of

23 detention will reasonably assure future appearance and protect

24 against the danger to the community.

25      Also a plain reading of the Bail Reform Act shows that

1   there's absolutely no limitation under the factors under

2   3142(g).  Tying the basis taut, tying what factors the Court

3   must consider to what the basis was for asking for the

4   detention hearing under 3142(f), Congress should have chosen to

5   do so.  It could have chosen to say under cases where detention

6   is sought under (f)(1)(A) or (f)(2)(B), the following factors

7   as to dangerousness are to be considered.  It could have also

8   said that where detention is sought under (f)(2)(A), the

9   factors to be considered are as to risk of flight or future

10  appearance.  But Congress didn't do that, so the plaintiff's

11  reading of the BRA does not limit the government -- or does not

12  limit the Court in considering all of the factors under (g)

13  which includes dangerousness.

14          THE COURT:  Singleton did not address this situation

15  and the only two published Court of Appeals decisions that I'm

16  aware of went the other way.  I'm talking about the Third

17  Circuit and the First Circuit holding that you can't consider

18  dangerousness under (g) if the detention sought -- if the

19  detention hearing was sought under (f)(2).

20      So it seems to me I don't -- obviously I care about the

21  statute primarily, but Singleton to me does not resolve the

22  question before me and what I have is two Court of Appeals

23  decisions who have taken a contrary view to the government's

24  position here.  So other than the word must, do you have any

25  other argument or any argument about why those cases were

1    indirectly decided --

2         MR. MEINERO:  The Hemler line of cases, Your Honor,

3    you're correct appear to arrive at a different conclusion.

4    However, it is not a Circuit Court decision.  It's a decision

5    from the Southern District of Florida Holmes.  And there was an

6    unpublished decision from the Tenth Circuit that supports our

7    reasoning.

8       And we simply don't think that the reading in the Hemler

9    line of cases of the BRA is the best plain meaning

10   interpretation of the statute.

11        THE COURT:  Let's assume again that I've concluded

12   that the hearing was appropriately held and that under (g),

13   both the magistrate judge and now I appropriately look at not

14   just (f)(2) related questions, but all (g) questions.

15      Obviously I read the papers before the last hearing.  I

16   had an understanding of the government's argument about why

17   there was no set of conditions that would assure the safety of

18   the community if Mr. Curzio were to be released before trial.

19      But I wanted to ask you, Mr. Meinero, if you had anything

20   you'd like to add to the argument that was made before.  It

21   seems to me that there was at least additional information

22   proffered to the magistrate judge that I didn't have.  And I

23   invite you now to, you can give me your whole argument if you'd

24   like or just the parts that you want to highlight that we did

25   not discuss before.

1          MR. MEINERO:  Yes, Your Honor.  We relied on

2   everything we mentioned before.  But it seems that the most

3   significant fact we had not mentioned before that had come out

4   of the hearing before the magistrate judge was the undisputed

5   fact that Mr. Curzio was in a white supremacist gang while he

6   was incarcerated in the Florida penal system, correction

7   system.  It is a gang with a reputation for violence and that

8   fact speaks very strongly to Mr. Curzio's dangerousness.

9          THE COURT:  Is there any evidence in the record that

10  he remains a member of that gang?

11         MR. MEINERO:  Your Honor, if I'm correct, it came out

12  in the detention hearing that Mr. Curzio still has tattoos that

13  are affiliated with the gang.  I know Mr. Curzio argued --

14  counsel for Mr. Curzio argued that he's no longer an associate

15  of the gang, but if he has those tattoos that would seem to

16  belie that assertion.

17      In any event, his association with the gang while in

18  prison, and that was just up to two years ago, because he was

19  just released two years ago or a little over two years ago,

20  February of 2019, that recent association, undisputed recent

21  association with any violent gang that operates within and

22  outside the Florida correction system is a fact that speaks to

23  his dangerousness.

24         THE COURT:  Thank you Mr. Meinero.  Mr. Balarezo, I'm

25  happy to take these issues in any order you'd like.  I think --

1    from my perspective, I think this is the following order I'd

2    like you to address the arguments first. Whether I'm permitted

3    at this stage at all to consider whether the detention hearing

4    was appropriately held.

5         Then second, even if I couldn't do that in theory, why you

6    didn't and I don't mean you, I mean why Mr. Curzio didn't waive

7    the 3142(f) argument by presenting it not to the magistrate

8    judge nor to me.  So this is not a situation where it was not

9    merely not presented to the magistrate judge, but the argument

10   was not presented to me.  So there's a two-step waiver.

11        And then third, even assuming that there was an

12   appropriate hearing under 3142(f)(2), whether I'm limited to

13   considering just flight risk or dangerousness questions that

14   we've been talking about.

15        And then finally fourth, as to dangerousness, so again

16   assuming that we get there, if you have anything more you'd

17   like to add to what was argued before and in particular what

18   you would respond to what Mr. Meinero just argued about Mr.

19   Curzio's gang affiliation.  And you should unmute yourself.

20             MR. BALAREZO:  Very well, thank you.

21        Your Honor, first I'll address the issue of the waiver or

22   the, if I may, I want to answer number two, I believe, instead

23   of number one.

24             THE COURT:  Sure.

25             MR. BALAREZO:  It's true that Mr. Curzio did not

1   argue before the magistrate judge and that it was not argued

2   before you whether or not the hearing was initially proper.

3   However, because this Court's review is de novo, the Court is

4   starting from a clean slate and the Court should be able to

5   consider.  Although you, the Court itself, raised the issue.

6   The Court should be able to consider that argument that the

7   hearing was not properly held.

8       There is no prejudice to the government.  There's no

9   sandbagging of the Court as I think one of the government's

10  cases has indicated.  There's no reason why the Court should

11  not be able to consider.  This is not a matter, like, as if we

12  were in trial where an objection was not made and then it has

13  to wait for an appeal.  This is something that the Court can

14  consider brand new.  So we do believe that the Court can

15  consider it now, even though the Court raised it.  We are

16  making the objection at this time and the Court should look

17  into it.

18      With respect to the -- whether or not the Court should

19  consider the (g) factors, our argument, as the Court well

20  knows, is that the hearing -- the detention hearing was not

21  proper from the initial matter.  It would not make sense if the

22  Court is only considering risk of flight factors -- a serious

23  risk of flight factors to not consider danger to the community

24  factors in holding him.

25      I believe the Himler line of cases and also the Gibson

1  line of cases indicate that the Court may consider that but in

2  setting conditions of release, not in determining whether or

3  not to hold Mr. Curzio.  So to the extent that the Court has to

4  follow the 43 factors, it should be limited in how it can

5  consider.  That's our position.

6      I hope I'm making myself understood.  I apologize, I'm a

7  little under the weather.

8          THE COURT:  No, no, you are.  It seems to me that

9  there are several waiver issues.  First, there's the question

10  of whether the hearing should have been held at all under

11  3142(f)(2), and whether that was preserved.  And then there's

12  the second question of even if that was preserved, whether you

13  also preserve the argument that my consideration under (g) is

14  limited to flight risk.

15      As the motion came to me, it was essentially arguing that

16  the magistrate judge incorrectly determined that there was no

17  set of conditions that would assure the safety of the community

18  and that was really what was attacked.  No argument that that

19  was an inappropriate thing to consider and no argument that the

20  hearing should have happened at all in the first place.

21      So there's multiple waiver issues going on.  And the fact

22  that my review is de novo doesn't seem to get me all the way

23  there to review these issues because I think the Court of

24  Appeals often reviews legal determinations by district courts

25  de novo, but that doesn't absolve a party of raising the

1   question before the Court of Appeals in their opening brief for

2   example.  Even a question that's reviewable de novo, a

3   non-jurisdictional question that's reviewed de novo.  So other

4   than the fact that my review is de novo, what is it about this

5   proceeding that allows me to look at questions that Mr. Curzio

6   not only didn't present to the magistrate judge, but didn't

7   present to me until I raised them?

8        MR. BALAREZO:  Your Honor, I think that in order for

9   the Court, as the Court itself questioned the government, the

10  Court does have a right in this proceeding, does have the

11  authority to review whether or not the hearing was held, the

12  initial detention hearing was proper.

13       And let's assume that the hearing was not proper

14  initially.  And that the Court would go ahead and just assume

15  that it was proper because the issue was not raised, then that

16  would not be consistent with the application of law.  So we

17  believe that's why the Court should have the opportunity to

18  review the entire matter from the beginning.

19       THE COURT:  So as to the ultimate question that the

20  magistrate judge focused on or at least the parties have

21  focused on here which is whether there is a set of conditions

22  that could assure the safety of Mr. Curzio's community, can you

23  respond to Mr. Meinero's argument about Mr. Curzio's gang

24  affiliation at least while he was in prison.  And just more

25  generally why you believe that and what the set of conditions

1  would be that you believe would assure the safety of the

2  community if Mr. Curzio was released pretrial?

3        MR. BALAREZO:  Your Honor, as the Court well knows by

4  now, Mr. Curzio was incarcerated for an attempted first degree

5  murder charge, that occurred in 2012.  I believe he was

6  released two years ago.

7        My understanding from speaking with Mr. Curzio is that

8  while he was in jail, in prison, he was attacked multiple times

9  by other inmates, both attempted stabbings and also attempted

10 assault where somebody tried to hit him in the head with a

11 lock.  And the reasons for those attacks was because he was

12 quote/unquote unaffiliated with anyone in the jail.

13       The only reason he became a member, if you will, of that

14 particular gang was for his own protection.  There's no

15 indication that since he was released in 2019 that he has

16 continued to be part of that gang.  There's no law enforcement

17 reports that I'm aware of.  There's no indication that he

18 attends meetings, that he does anything with the gang.  He has

19 disavowed them.  He has said that the only reason he did it was

20 for his own survival.

21       The government mentioned that he has tattoos.  Tattoos as

22 you know are permanent fixtures.  Mr. Curzio does not have the

23 means to have any tattoos removed.  Just because he still has

24 tattoos on his arms does not mean that he's a member of the

25 gang.  Additionally, I don't believe in the transcript that we

1  received of the hearing before the magistrate, that there was

2  any evidence tying those tattoos to the gang.  It just said

3  that he was a member of the gang and that he had tattoos, but I

4  don't believe there was as connection made.  So the fact that

5  he still has tattoos on his arms does not indicate membership

6  in the gang.

7        THE COURT:  Assuming hypothetically I were to

8  conclude that Mr. Curzio could be released before trial, what

9  conditions do you believe would be appropriate for me to impose

10 on him as essentially a condition to his pretrial release?

11       MR. BALAREZO:  Your Honor, given the nature of his

12 offenses which are misdemeanor offenses where he was present in

13 the Capitol on January the 6th, and given that the affidavit

14 that was presented to the Court does not indicate any

15 particular action by Mr. Curzio himself, as far as having been

16 throwing things at officers or spraying things at officers or

17 anything of that nature.  The affidavit only talks about the

18 crowd in general, does not say anything specific about Mr.

19 Curzio.  He was arrested because he was present in the Capitol

20 building.

21    We believe that the least restrictive conditions would be

22 release on personal recognizance to appear here for whatever

23 hearings or to appear on Zoom for whatever hearings.  There's

24 no indication that he has continued to engage in any violent

25 conduct.  There's no indication that he's tried to overthrow

1  the government.  There's no indication that he seeks to do

2  anything or will not adhere to the Court's authority.  So we

3  believe the least restriction would be release on personal

4  recognizance.

5          THE COURT:  Thank you, Mr. Balarezo.

6      Mr. Meinero, happy to have you rebut as much or as little

7  as you like.

8          MR. MEINERO:  Sure, Your Honor.

9      First, as a factual matter I just want to be clear what

10 the transcript hearing showed to clarify with this the issue of

11 the tattoos.  The tattoos were documented in and photographed

12 by the Florida Department of Corrections.  Those tattoos

13 included swastikas with the symbol Nazi Germany, SS

14 paramilitary force in the back of those arms.  Those are

15 symbols associated with this particular white supremacist gang

16 the Unforgiven in Florida.

17     Now those were photographed by the Department of

18 Corrections.  I'm not sure, I can represent based on that that

19 he still has the tattoos, but that's what came out during the

20 detention hearing.

21     But when he was arrested by the FBI, he had a pendant that

22 was described as being a sort of a Thor's-hammer type of

23 pendant that's associated with white power prison gangs.

24     So the assertion that during the original detention hearing

25 that he was no longer an associate of this gang is belied by

1  the pendant at least, and that he may still have these tattoos;

2  but I cannot represent he actually has the tattoos.

3       Again, our argument is that the issue about whether the

4  detention hearing was appropriate in the first instance has

5  been waived by the defense.  If the Court wants to consider

6  de novo the question of whether a hearing was appropriate, then

7  we would like to supplement our basis by saying that (f)(2)(B)

8  was also an appropriate basis to ask for a detention hearing.

9            THE COURT:  Before I decide, can you just summarize

10  what the proffer would be.  In particular, would the evidence

11  relate to conduct before Mr. Curzio's arrest or before January

12  and including January 6th or would it relate to this criminal

13  matter?

14            MR. MEINERO:  They would relate to this criminal

15  matter.  You're talking about (f)(2)(B), sir?

16            THE COURT:  Yes.

17            MR. MEINERO:  The circumstances of this criminal

18  matter, the traveling 800-miles to disrupt an official

19  proceeding, a legal proceeding, and looking at the language

20  that is used in (f)(2)(B), a serious risk that such person will

21  obstruct or attempt to obstruct justice, that is very similar

22  to the conduct for which Mr. Curzio is now charged under 40

23  U.S.C. (f)(1)04(E)(2)(D), that includes an intent to -- conduct

24  with an intent to impede, disrupt or disturb the orderly

25  conduct of a session of Congress or the House of Congress.

1   He's also charged with 18 U.S.C. 1715(A)(2).  That prohibits

2   conduct with the intent to impede or disrupt the orderly

3   conduct of government business or official functions, impedes

4   or disrupts the orderly conduct of government business or

5   official functions.  So that is in the same vein.

6          THE COURT:  I apologize, Mr. Meinero.  You agree that

7   the inquiry under 3142(f)(2)(B) about whether even a hearing

8   should be held is whether there's a risk of future obstruction,

9   not merely whether there's evidence of past obstruction.  So

10  the government would have to have argued or argue in the future

11  that the risk of future obstruction is because Mr. Curzio

12  engaged in past obstruction?

13         MR. MEINERO:  Well, there is still an open issue now

14  of whether the kind of conduct we saw happen on January 6th may

15  occur again.  Because there are numerous reports, intelligence

16  reports made public about the possibility, or chatter of

17  something like this happening again.  So based on the prior

18  conduct as well as the situation we're now seeing, there is a

19  risk of future obstruction.

20         THE COURT:  Do you have any evidence that Mr. Curzio

21  engaged in the kinds of conduct that we are seeing in other

22  cases in this Court where defendants have tried to get people

23  to take down social media posts to hide evidence of what

24  happened on January 6th or to otherwise impede, I'm speaking

25  generally, impede either investigations about what happened on

1    January 6th or their own involvement.  Is there any evidence

2    that Mr. Curzio took such steps after January 6th?

3           MR. MEINERO:  After January 6th, no.

4           THE COURT:  Thank you, thank you, Mr. Meinero.

5    Mr. Balarezo, is there anything you would like to respond

6    to?  I will take a brief recess.  I know that Mr. Curzio has

7    raised his hand.  Obviously if we were in court you would be

8    able to confer, Mr. Curzio, with Mr. Balarezo.  I am reluctant

9    to allow you to simply speak without conferring with him first.

10   I think that would be the most prudent course.  It may be that

11   that's what you want to do.

12   Mr. Balarezo, why don't you go ahead and say what you were

13   going to say.  It may then make sense to allow you and

14   Mr. Curzio to go into a breakout room as you did before, as I

15   understand it, to confer and then we can come back if there's

16   something you'd like to tell us all.

17          MR. BALAREZO:  Yes, Your Honor.  I'd like to address

18   first the issue of the Thor's-hammer that the government

19   mentioned.  My understanding from Mr. Curzio is that that is a

20   symbol of his religion.  And at this point I don't have the

21   name, if you will, of his beliefs, but I think that's probably

22   what he wanted to talk to me about.  Because he said that that

23   was just a symbol of his belief.  So I don't think that is a

24   continued proof or evidence that he was a member of the gang at

25   the time of his arrest.

1        Now with respect to the government saying that they're

2   going to move now on (f)(B)(2) grounds that he traveled 800

3   miles to D.C. to obstruct Congress, that is evidence of his

4   obstructive conduct or his future obstructive conduct, that

5   would basically mean that anybody with a car and a couple of

6   dollars for gas would be a risk to do that.

7        You have to remember that January 6th was a singular event

8   that was in part triggered by the President of the United

9   States, other individuals who exhorted individuals to go to the

10  Capitol.

11       Mr. Curzio is not using that as a defense because we know

12  it's not a defense, but just as an explanation as to why he was

13  there.  The fact that there may be chatter about other

14  individuals or other groups possibly planning similar events

15  does not inure to Mr. Curzio's detriment here.

16       So I don't believe that those particular factors really

17  shed any light on whether or not the government can move

18  forward on (f)(2)(B).  Now if I could just speak with him

19  briefly I would appreciate it.

20            THE COURT:  Please do.  Ms. Lesley, could you please

21  put Mr. Balarezo and Mr. Curzio in a breakout room.

22            THE DEPUTY CLERK:  Yes, Your Honor.

23            THE COURT:  We'll wait here until you come back.

24            MR. BALAREZO:  I'll try to keep it quick, Your Honor.

25            (Pause.)

1           MR. BALAREZO:  Your Honor, as I suspected, the issue

2    was with the necklace that was taken from him at the time of

3    his arrest.  Mr. Curzio subscribes to the religion that's

4    called Odinism which is a celebration of the Scandinavian

5    Viking life and beliefs.  And it had nothing to do with his

6    prior membership in the gang.

7           He has tried in the past, or he wanted to get the tattoos

8    on his arms removed, however, he did not have the funds to do

9    so.  He pointed out that it's very cheap to get tattoos in

10   prison, but that it's very expensive to get them removed, and

11   that's what his situation is right now.  He disclaims and

12   disavows any membership in the gang and any of those beliefs.

13          THE COURT:  Thank you, Mr. Balarezo.

14          As I indicated in the beginning, I want to take a recess.

15   I will consider the arguments that have been presented this

16   morning then I intend to rule on Mr. Curzio's motion orally

17   when I come back.  So we'll do that in just a second.

18          It's not clear to me that this is necessary because the

19   detention hearing that we're obviously focused on has already

20   been held, but just for the sake of good housekeeping;

21   Mr. Balarezo, am I right or would you state for the record that

22   Mr. Curzio consents to having proceeded this morning by

23   videoconference?

24          MR. BALAREZO:  That's correct, Your Honor.

25          THE COURT:  Thank you and, Mr. Meinero, I assume the

1  government does as well?

2          MR. MEINERO:  Yes, Your Honor.

3          THE COURT:  Okay, so we'll take a brief recess.  What

4  I will likely do is I'll let Ms. Lesley know when I'm 30

5  seconds or a minute from rejoining so everyone has a heads up.

6  So we're in recess now, thank you.

7          (Recess at 10:30.)

8          (Proceedings resumed at 10:38 a.m.)

9          THE DEPUTY CLERK:  We are now back on the record.

10          THE COURT:  Thank you.  I've considered the parties'

11  arguments and the papers including the supplemental information

12  that was filed and I will make the following findings today.

13      Mr. Curzio has been charged by information with four

14  misdemeanors. First, entering and remaining in a restricted

15  building violation of 18 U.S. Code Section 1752(a)(1).  Second,

16  disorderly or disruptive conduct in a restricted building in

17  violation of 18 U.S. Code Section 1752(a)(2).  Third, violent

18  entry and disorderly conduct in a Capitol Building in violation

19  of 18 U.S. Code Section 1504(e)(2)(A).  And fourth, parading,

20  demonstrating or picketing in a Capitol Building in violation

21  of 18 U.S. Code Section 5104(E)(2)(G).

22      On January 19th, 2021, the United States requested a

23  detention hearing under 18 U.S. Code Section 3142(f)(2), then a

24  detention hearing was held before a magistrate judge in the

25  Middle District of Florida.  The magistrate judge after

1  analyzing the Section 3142(g) factors determined first by clear

2  and convincing evidence that no combination of pretrial release

3  conditions could reasonably assure the safety of the community

4  against Mr. Curzio.  And second, by a preponderance of the

5  evidence that no combination of pretrial release conditions

6  could reasonably assure that Mr. Curzio would appear in this

7  matter as required.

8      Mr. Curzio then moved this Court under 18 U.S. Code

9  Section 3145(b) to vacate the magistrate judge's Pretrial

10 Detention Order.  This Court held a hearing on that motion on

11 February, 19th.  At the hearing the Court asked the parties to

12 supplement -- to submit supplemental briefing on three issues.

13 First, whether a magistrate judge's decision to hold a

14 detention hearing under 3142(f)(2) can be reviewed by the

15 District Court under the defendant's 3145(b) motion.  Second,

16 whether the Court during a detention hearing held under Section

17 3142(f)(2) is limited to consider only whether the defendant is

18 a flight risk or whether the Court can also consider the danger

19 of the defendant would pose to the community if released.  And

20 third, whether Mr. Curzio forfeited his right to challenge the

21 appropriateness of the detention hearing or the consideration

22 of dangerousness under 3142(g) when he failed to raise either

23 issue before the magistrate judge or this Court.

24     As to the issues that we discussed this morning, I think

25 it's likely that Mr. Curzio forfeited his argument that the

1  detention hearing was improper under Section 3142(f)(2) under

2  the party representation principle.  Courts rely on the parties

3  to frame issues for decision and serve as neutral arbiters as

4  matters the parties present.

5       Here Mr. Curzio failed to raise the arguments I've already

6  mentioned when the magistrate judge conducted his initial

7  detention hearing.  He failed to brief the issues in his

8  3145(b) motion in this Court, and he failed to raise the issues

9  that I raised sua sponte during the February-19th motions

10  hearing.  The issues were, therefore -- instead were raised by

11  me sua sponte and may have been forfeited.

12      Ultimately, I don't think that matters because in my view

13  the magistrate judge's decision to hold the detention hearing

14  under Section 3142(f)(2) is reviewable first.  When a defendant

15  files a 3145(b) motion, I review a magistrate judge's detention

16  order de novo.  The government urges the Court about the narrow

17  interpretation of the term detention order to meet only the

18  evaluation of the Section 3142(g) factors.  Government has

19  failed to point me to any case law supporting such a narrow

20  interpretation.  And considering that other courts in this

21  District regularly evaluate whether a detention hearing was

22  proper in ruling on a Section 3145(B) motion, and that the

23  Court of Appeals has made clear in the United States v.

24  Singleton that absence the presence of one of the 3142(f)

25  circumstances, detention is not an option.

1       I find that the issue is reviewable and must, therefore,

2    determine whether the government made an initial showing that

3    Mr. Curzio is a flight risk.  The reason that I ultimately

4    conclude that it doesn't matter whether Mr. Curzio has

5    preserved this argument or not is because I believe that the

6    government in this case made a showing that the hearing was

7    appropriate under Section 3142(f)(2).  And the magistrate judge

8    did not err by holding a detention hearing under that

9    provision.

10      The government at the detention hearing presented

11   sufficient evidence that Mr. Curzio was a flight risk to

12   warrant a hearing, including the demonstration that Pretrial

13   Services struggled to find anyone that could verify Mr.

14   Curzio's address, the fact that Mr. Curzio is facing years in

15   prison, and the fact that Mr. Curzio traveled to D.C. to commit

16   the actions that the government accuses him of undertaking.

17      I, therefore, conclude the magistrate judge was correct to

18   conduct a hearing under Section 3142(f)(2).

19      I should note that in my view that is the standard for

20   assessing whether the government had made a showing; to have a

21   3142(f)(2) hearing is not the standard of whether in

22   consideration of the 3142(g) factors there are a set of

23   conditions that could assure the defendant's appearance.

24      And I think the appropriate standard is whether the

25   government has shown that absent a hearing and some set of

1   conditions or detention that there's a risk of flight, that is

2   not the same as having to convince the magistrate judge that

3   there's no set of conditions that could be applied to assure

4   the defendant's appearance.

5       Having said all of that, and having determined that the

6   detention hearing was proper, I turn to whether I can evaluate

7   the question of dangerousness during a detention hearing held

8   under Section 3142(f)(2).  Although other courts including the

9   First and Third Circuits have found that when a detention

10  hearing is held solely under Section 3142(f)(2), the Court

11  cannot consider dangerousness.

12      I agree with the Tenth Circuit and its unpublished opinion

13  and the Southern District of Florida in concluding that the

14  plain text of the statute does not contain such a limitation.

15  The plain language of Section 3142(f) pertains only to what

16  triggers the requirement that a detention hearing be held.  It

17  does not dictate what a court must consider during that

18  detention hearing.  Instead those restrictions are provided by

19  Section 3142(g), which tasks the Court with determining

20  "whether there are conditions of release that will reasonably

21  assure the appearance of the person as required in the safety

22  of any other person in the community."  Section 3142(g)

23  contains no language limiting the consideration of those

24  factors to hearings held only under subsection (f)(1),

25  subsection (f)(2) or vice versa.

1      I, therefore, conclude that either (f)(1) or (f)(2) is

2    satisfied, and as I've said here, I believe (f)(2) was

3    satisfied, that I'm required to examine all of the Section

4    3142(g) factors without regard to which subsection initially

5    led the magistrate judge properly in my view to hold the

6    detention hearing.

7      So that gets us to the Section 3142(g) questions which as

8    we all know where the government and Mr. Curzio focused all of

9    their attention originally in this matter.

10      And after considering the parties' arguments and the

11    filing and representations at this hearing and the hearing on

12    February 19th and the entire record, I make the following

13    findings.  First, I must consider the nature and circumstances

14    of the charged offense.  As for that factor, Mr. Curzio is

15    correct to point out that he is charged with only four

16    misdemeanors.  And the government has conceded that none of the

17    charges against Mr. Curzio qualify as crimes of violence or at

18    least the government has not argued to the contrary.

19      The statement of facts supporting the arrest warrant and

20    complaint do not attribute any violent or destructive conduct

21    to Mr. Curzio, although there was certainly violent and

22    destructive conduct occurring in and outside of the Capitol on

23    January 6th.  The government is correct to point out the

24    statutory offenses do not accurately encompass the seriousness

25    of Mr. Curzio's conduct.

1         This isn't a case where the defendant is alleged to have

2    simply trespassed into an empty government building or explored

3    a restricted area in a reckless way.   Instead, Mr. Curzio and a

4    mob that accompanied him entered the U.S. Capitol while a joint

5    session of Congress was meeting to certify the results of the

6    Presidential election.   Many of the rioters entered the Capitol

7    for the express purpose of interrupting those proceedings.

8    Thus, Mr. Curzio's participation in storming the Capitol on

9    January 6th is far more serious than the statutory offenses

10   charged.   His participation demonstrates disregard for the rule

11   of law, a democratic process, and a peaceful transition of

12   power.

13        Although, Mr. Curzio is not accused of violence or property

14   destruction he chose to move with a large group through the

15   halls of the Capitol in a disorderly fashion.   In fact, the

16   government proffers that the large group that Mr. Curzio was

17   with kicked chairs and threw unknown substances at Capitol

18   Police officers.   It is difficult for Mr. Curzio to argue that

19   he didn't know that violence and destruction were occurring

20   around him, and after being ordered to vacate the premises,

21   Mr. Curzio apparently remained in the Capitol defying police

22   officers.

23        I, therefore, conclude this factor weighs somewhat in favor

24   of detention, but in favor of detention.

25         As for the history and characteristics of Mr. Curzio, this

1   is the second factor.  I find this factor was heavily in favor

2   of detention.  Mr. Curzio has provided the Court with little

3   reason to find that his history and characteristics don't weigh

4   in favor of detention, besides the fact that he's currently

5   employed in Florida.

6       In his motion, he appears to argue that he has extensive

7   ties to the community in Summerfield, Florida but he has failed

8   to give even one example of such tie.  This statement is

9   conclusory and does little to convince the Court that he is not

10  a danger to the community or perhaps even a flight risk.

11  Although that is not the basis which I'm concluding that

12  detention is appropriate here.

13      By contrast, the government has proffered significant

14  evidence that this factor should weigh in favor of Mr. Curzio's

15  pretrial detention.  First, he was convicted in Florida State

16  Court of attempted first degree murder, a very serious and

17  violent crime.  Second, the government has proffered and Mr.

18  Curzio has not disputed, in fact, I think he's conceded today,

19  that while in prison for his attempted first degree murder

20  conviction, he was a member of the Unforgiven, a violent white

21  supremacist gang operating both in and out of the prison

22  system.

23      To be sure Mr. Curzio now claims that he is not currently

24  a member of any gang, right wing, fringe groups or any other

25  violent organizations.  But the government responds that he

1  both still has tattoos relating to Nazi imagery including

2  swastikas and symbols of the Nazi SS paramilitary force.   But

3  as Mr. Curzio notes, tattoos are permanent and they may

4  represent nothing more than his prior gang affiliation in

5  prison.

6      I think more importantly, when Mr. Curzio was arrested by

7  the FBI he was discovered to have a Thor's-hammer pendant which

8  the government argues is a symbol associated with white power

9  prison gangs.   The Court recognizes that Mr. Curzio was

10  representing that it is actually a symbol Odinism, his current

11  and new religion.   But what I have before me is someone who was

12  convicted of first degree attempted murder, who was admittedly

13  a member of a white supremacist gang, and at a minimum evidence

14  on both sides as to whether he continues to be a member of that

15  gang.   And added to that, the government asserts that Mr.

16  Curzio is a recreational drug user who regularly uses

17  marijuana.   In front of the magistrate judge at least,

18  Mr. Curzio did not dispute this accusation.

19      Based on all of this evidence, I believe Mr. Curzio's

20  history and characteristics weigh in favor of detention.

21      As to the third factor, the weight of the evidence.   The

22  weight of the evidence against Mr. Curzio as to the charged

23  offenses is strong.   The government has proffered an affidavit

24  from a Capitol Police officer attesting to the fact that

25  Mr. Curzio was in the Capitol and remained inside of the

1  building despite being ordered leave.

2      Furthermore, according to the Government, when Mr. Curzio

3  was arrested he spontaneously stated to the arresting FBI

4  officer that he was present in the District for the riot, that

5  he entered into the Capitol Building, that he knew he was not

6  supposed to be there and that police officers in the building

7  told him to leave.  A command which he did not follow.

8      And before me Mr. Curzio acknowledges that he entered the

9  Capitol and did not leave when officers ordered him to do so.

10  Although, he does insist since that he entered the building

11  because the Capitol doors were already opened and that he

12  remained after being offered to leave because the crowd was

13  blocking the exits.  The evidence presented thus far

14  sufficiently demonstrates that Mr. Curzio was a willing

15  participate in a disruptive crowd that unlawfully entered the

16  Capitol and that he remained in the Capitol after being ordered

17  to leave.

18      The Government has put forth strong evidence that

19  Mr. Curzio committed the crimes of which he is accused and,

20  therefore, this third factor weighs in favor of detention.

21      Finally as to the fourth factor, Mr. Curzio's disregard

22  for the violence occurring around the Capitol, his failure to

23  follow police orders that day, his prior conviction for

24  attempted first degree murder, and his prior at least

25  affiliation with a white supremacist gang known for violence,

1   indicate Mr. Curzio does pose a danger to the community if he's

2   not retained pretrial.

3       Mr. Curzio's argument that he is no longer a gang member

4   or that he failed to follow police officers to leave the

5   Capitol because the building was so filled with rioters that he

6   could not find the exit do little to assuage my concerns that

7   Mr. Curzio will pose a threat to the community if released

8   pending trial.  The fourth factor, therefore, weighs in favor

9   of detention.

10      For all of these reasons, upon consideration of the

11  evidence presented, the factors set forth in 18 U.S. Code

12  Section 3142(g), and the possible release conditions set forth

13  in 3142(c), I conclude that clear and convincing evidence

14  supports -- I find that there's clear and convincing evidence

15  that defendant's pretrial release would constitute an

16  unreasonable danger to the community, and that no condition or

17  combination of conditions can be imposed that would reasonably

18  assure the safety of the community for Mr. Curzio to be

19  released pending trial.

20      Mr. Curzio's Section 3145(b) motion is, therefore, denied

21  and it is ordered that Mr. Curzio shall remain detained pending

22  trial.  I will issue a written order to be filed shortly to

23  that effect.

24      Having resolved that motion, since we are all together

25  and, Mr. Balarezo, I understand that you may have to consult

1   with Mr. Curzio about whether you want to seek further review

2   of my order, but I think it would be efficient for us to

3   discuss next steps whether you and Mr. Meinero or Ms. Ravindra

4   have discussed at all discovery in this matter, protective

5   orders and the like.  Mr. Meinero, why don't we start with you.

6        First of all, of course if there are any questions or

7   clarifications that the parties need about my order which again

8   I will not issue a written opinion.  My findings are stated

9   orally, but I will issue an order denying the motion this

10  afternoon.  But if there are questions about my findings or my

11  thinking about the decision I made today, I'm happy to discuss

12  those first.  But I do think it would be helpful for us to talk

13  about where this case goes from here.

14       Mr. Meinero?

15            MR. MEINERO:  Your Honor, I do not have questions

16  about the order.

17       Regarding discovery, the government has not yet provided

18  discovery.  Although we may provide some limited discovery

19  before our next hearing date a week from Friday.  We are still

20  negotiating the parameters of a protection order with the

21  Federal Public Defender service that can hopefully be standard

22  for all defendants.  Once we get that protection order filed,

23  we'll be able to provide more discovery.

24       We have not yet tendered a plea offer to any of the

25  defendants, including Mr. Curzio.  We may be in a position to

1  do so before the next hearing, but we have not done so yet.

2          THE COURT:  Thank you.  Mr. Balarezo.

3          MR. BALAREZO:  Your Honor, we obviously would like to

4  get discovery sooner rather than later.  I would object to the

5  government negotiating with the Federal Public Defender with

6  respect to a protective order that may affect -- that would

7  affect my client.

8      I think if anything has to be done it should be negotiated

9  with us.  I understand the reasons why they may be doing it,

10 but we're dealing with Mr. Curzio here not the Federal Public

11 Defender.  So I would love to get discovery.  I'll speak to

12 Mr. Meinero as soon as possible about a possible discovery

13 agreement and/or any sort of disposition of this matter prior

14 to trial.

15         THE COURT:  Thank you. I think that -- well, I don't

16 want to speak for the government.  My sense is what they're

17 trying to do is work out the general contours of the protective

18 order with FPD because they represent a number of different

19 defendants.  And then obviously they would have to bring those

20 general contours to each individual defendant's counsel, but I

21 don't think it's appropriate for me to get into the middle of

22 those discussions or negotiations or certainly what you and

23 Mr. Meinero would discuss as it relates to Mr. Curzio.

24     So I think for present purposes, the parties may continue

25 to have those negotiations or discussions or whatever they are.

1  And we will be back together in less than two weeks for a

2  teleconference at which we will discuss whether there are any

3  updates.

4      Are there any other issues we should discuss this morning,

5  counsel?

6          MR. MEINERO:  Your Honor, the last thing that the

7  government would like to raise is the issue of tolling under

8  the Speedy Trial Act.  And we ask that there be tolling until

9  the next hearing date -- in light of the issues we just

10 discussed, the complex nature of discovery, the ongoing

11 discussions about our protection order and so we ask in the

12 interest of justice that the Speedy Trial Act be tolled until

13 March 19th.

14         THE COURT:  Thank you, Mr. Meinero.  Mr. Balarezo.

15         MR. BALAREZO:  Again, given my client's detention, we

16 would object to any tolling of the Speedy Trial Act and request

17 a speedy trial.

18         THE COURT:  Thank you, Mr. Balarezo.

19     I may have already tolled the Speedy Trial Act through

20 March 19th because we knew that that status conference was

21 coming up.  But if I did not, I will do so.  I believe that as

22 a result of the complicated nature of the discovery questions,

23 the need for a protective order, the possibility of plea

24 negotiations and the like, that at a minimum it is in the

25 interest of the public and the ends of justice to suspend the

1  running of the Speedy Trial Act between today's date, March, 9,

2  and the next status conference in this case which is currently

3  scheduled for March-19th just 10 days from today.

4      Thank you for raising that Mr. Meinero.  Anything else

5  from the government's perspective?

6          MR. MEINERO:  No, sir, thank you.

7          THE COURT:  Mr. Balarezo?

8          MR. BALAREZO:  No, Your Honor, thank you.

9          THE COURT:  Okay, thank you.  We will speak on the

10 19th.  Good day.

11         MR. MEINERO:  Thank you, Your Honor.

12         (Videoconference adjourned at 11 o'clock a.m.)

13                          -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Crystal M. Pilgrim, Official Court Reporter, certify that the foregoing is a true and accurate transcript, to the best of my ability, of the proceedings remotely reported in the above-entitled matter.

**Please Note:** This hearing occurred during the COVID-19 pandemic and is, therefore, subject to the technological limitations of court reporting remotely.

_____          _____

/s/Crystal M. Pilgrim, FCRR, RMR      Date:  April 9, 2021

MR. BALAREZO:
[13]   2/10
10/20 10/25
13/8 14/3
15/11 19/17
20/24 21/1
21/24 34/3
35/15 36/8
MR. MEINERO:
[20]   2/7
3/20 4/19
4/25 5/5
5/11 5/16
8/2 9/1 9/11
16/8 17/14
17/17 18/13
19/3 22/2
33/15 35/6
36/6 36/11
THE COURT:
[35]   2/9
2/12 2/20
4/12 4/22
5/1 5/8 5/15
5/22 7/14
8/11 9/9
9/24 10/24
12/8 13/19
15/7 16/5
17/9 17/16
18/6 18/20
19/4 20/20
20/23 21/13
21/25 22/3

22/10 34/2
34/15 35/14
35/18 36/7
36/9
THE DEPUTY
CLERK: [3]
2/2 20/22
22/9

**-**

---------------
---------------
----x [1]
 1/7
-oOo [1]
 36/13

**/**

/s/Crystal
[1]   37/10

**0**

04 [1]   17/23
041 [2]   1/3
 2/3

**1**

10 [1]   36/3
10:30 [1]
 22/7
10:38 [1]
 22/8
11 [1]   36/12
14th [1]   4/1
1504 [1]
 22/19
1715 [1]
 18/1

1752 [2]
22/15 22/17
18 [8]   18/1
22/15 22/17
22/19 22/21
22/23 23/8
32/11
19 [1]   37/6
19th [10]
 4/1 4/2
22/22 23/11
24/9 27/12
35/13 35/20
36/3 36/10

**2**

20001 [1]
 1/21
20004 [1]
 1/17
2012 [1]
 14/5
2019 [2]
 9/20 14/15
2021 [3]   1/5
 22/22 37/10
2021-041 [1]
 2/3
20530 [1]
 1/15
21-041 [1]
 1/3

**3**

30 [1]   22/4
306 [1]   1/17
3142 [32]

## 3

3142... [32]   3/5  3/19  4/3
5/5  7/2  7/4
10/7  10/12
12/11  18/7
22/23  23/1
23/14  23/17
23/22  24/1
24/14  24/18
24/24  25/7
25/18  25/21
25/22  26/8
26/10  26/15
26/19  26/22
27/4  27/7
32/12  32/13
3145 [7]   5/6
23/9  23/15
24/8  24/15
24/22  32/20
333 [1]   1/20

## 4

40 [1]   17/22
400 [1]   1/16
43 [1]   12/4
4th [1]   1/14

## 5

5104 [1]
22/21
555 [1]   1/14

## 6

6th [10]
15/13  17/12

18/14  18/24
19/1  19/2
19/3  20/7
27/23  28/9

## 8

800 [1]   20/2
800-miles [1]
17/18

## 9

9:50 [1]   1/5

## A

a.m [3]   1/5
22/8  36/12
ability [1]
37/4
able [5]
11/4  11/6
11/11  19/8
33/23
about [27]
3/4  7/16
7/20  7/25
8/16  10/14
10/18  13/4
13/23  15/17
15/18  17/3
17/15  18/7
18/16  18/25
19/22  20/13
24/16  33/1
33/7  33/10
33/11  33/13
33/16  34/12
35/11

above [1]
37/5
above-entitle
d [1]   37/5
absence [1]
24/24
absent [1]
25/25
absolutely
[1]   7/1
absolve [1]
12/25
accompanied
[1]   28/4
according [1]
31/2
accurate [1]
37/3
accurately
[1]   27/24
accusation
[1]   30/18
accused [2]
28/13  31/19
accuses [1]
25/16
acknowledges
[1]   31/8
Act [6]   6/25
35/8  35/12
35/16  35/19
36/1
action [1]
15/15
actions [1]
25/16

**A**

actually [2]
  17/2 30/10
Adam [1]   2/7
add [3]   5/16
  8/20 10/17
added [1]
  30/15
additional
  [2]   3/3
  8/21
Additionally
  [1]   14/25
address [5]
  7/14 10/2
  10/21 19/17
  25/14
adhere [1]
  16/2
adjourned [1]
  36/12
admittedly
  [1]   30/12
affect [2]
  34/6 34/7
affidavit [3]
  15/13 15/17
  30/23
affiliated
  [1]   9/13
affiliation
  [4]   10/19
  13/24 30/4
  31/25
affirm [1]
  6/2

after [7]
  19/2 19/3
  22/25 27/10
  28/20 31/12
  31/16
afternoon [1]
  33/10
again [8]
  6/5 8/11
  10/15 17/3
  18/15 18/17
  33/7 35/15
against [4]
  6/24 23/4
  27/17 30/22
ago [4]   9/18
  9/19 9/19
  14/6
agree [3]
  4/22 18/6
  26/12
agreement [1]
  34/13
ahead [2]
  13/14 19/12
all [18]
  3/18 7/12
  8/14 10/3
  12/10 12/20
  12/22 19/16
  26/5 27/3
  27/8 27/8
  30/19 32/10
  32/24 33/4
  33/6 33/22
alleged [1]

28/1
allow [2]
  19/9 19/13
allows [1]
  13/5
already [4]
  21/19 24/5
  31/11 35/19
also [11]
  2/15 4/15
  5/19 6/25
  7/7 11/25
  12/13 14/9
  17/8 18/1
  23/18
although [7]
  11/5 26/8
  27/21 28/13
  29/11 31/10
  33/18
am [5]   3/17
  4/23 6/7
  19/8 21/21
amendment [1]
  5/7
AMERICA [2]
  1/3 2/3
analyzing [1]
  23/1
anomalous [1]
  6/5
answer [2]
  6/13 10/22
any [28]   3/3
  5/13 7/24
  7/25 9/9

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 41 of 75

# A

any... [23]
9/17 9/21
9/25 14/23
15/2 15/14
15/24 18/20
19/1 20/17
21/12 21/12
24/19 26/22
27/20 29/24
29/24 33/6
33/24 34/13
35/2 35/4
35/16
anybody [1]
20/5
anyone [2]
14/12 25/13
anything [9]
8/19 10/16
14/18 15/17
15/18 16/2
19/5 34/8
36/4
apologize [2]
12/6 18/6
apparently
[1]   28/21
appeal [1]
11/13
Appeals [5]
7/15 7/22
12/24 13/1
24/23
appear [4]
8/3 15/22
15/23 23/6
appearance
[6]   4/1
6/23 7/10
25/23 26/4
26/21
appearances
[2]   1/12
2/14
appears [2]
2/15 29/6
application
[1]   13/16
applied [1]
26/3
appreciate
[1]   20/19
appropriate
[18]   3/21
4/11 4/21
5/19 5/20
5/24 6/17
6/18 6/21
10/12 15/9
17/4 17/6
17/8 25/7
25/24 29/12
34/21
appropriately
[4]   5/25
8/12 8/13
10/4
appropriatene
ss [1]   23/21
April [1]
37/10
arbiters [1]
24/3
are [27]
2/21 3/5 6/3
7/7 7/9 9/13
11/15 12/8
12/9 14/22
15/12 16/14
18/15 18/21
22/9 25/22
26/18 26/20
30/3 32/24
33/6 33/8
33/10 33/19
34/25 35/2
35/4
area [1]
28/3
argue [7]
3/4 5/13
5/20 11/1
18/10 28/18
29/6
argued [9]
4/13 5/11
9/13 9/14
10/17 10/18
11/1 18/10
27/18
argues [1]
30/8
arguing [1]
12/15
argument [20]
2/25 4/15
4/18 7/25

Case 1:23-cr-00229-CJN   Document 12-1   Filed 04/11/23   Page 42 of 75

# A

argument...
[16]   7/25
8/16 8/20
8/23 10/7
10/9 11/6
11/19 12/13
12/18 12/19
13/23 17/3
23/25 25/5
32/3
arguments [5]
10/2 21/15
22/11 24/5
27/10
arms [4]
14/24 15/5
16/14 21/8
around [4]
3/9 3/9
28/20 31/22
arrest [4]
17/11 19/25
21/3 27/19
arrested [4]
15/19 16/21
30/6 31/3
arresting [1]
31/3
arrive [1]
8/3
articulated
[1]   3/25
as [59]
aside [1]
3/16

ask [6]   5/19
5/19 8/19
17/8 35/8
35/11
asked [2]
6/1 23/11
asking [1]
7/3
assault [1]
14/10
assertion [2]
9/16 16/24
asserts [1]
30/15
assessing [1]
25/20
Assistant [1]
1/14
associate [2]
9/14 16/25
associated
[3]   16/15
16/23 30/8
association
[3]   9/17
9/20 9/21
assuage [1]
32/6
assume [6]
5/15 5/23
8/11 13/13
13/14 21/25
assuming [5]
6/6 6/20
10/11 10/16
15/7

assure [14]
3/7 6/3 6/9
6/23 8/17
12/17 13/22
14/1 23/3
23/6 25/23
26/3 26/21
32/18
attacked [2]
12/18 14/8
attacks [1]
14/11
attempt [1]
17/21
attempted [7]
14/4 14/9
14/9 29/16
29/19 30/12
31/24
attends [1]
14/18
attention [2]
3/4 27/9
attesting [1]
30/24
Attorneys [1]
1/14
attribute [1]
27/20
authority [2]
13/11 16/2
Avenue [1]
1/20
aware [2]
7/16 14/17

# B

Bail [1]
6/25

BALAREZO [17]
1/16 2/11
2/12 3/11
9/24 16/5
19/5 19/8
19/12 20/21
21/13 21/21
32/25 34/2
35/14 35/18
36/7

based [3]
16/18 18/17
30/19

basically [1]
20/5

basis [9]
3/24 4/2
5/21 6/18
7/2 7/3 17/7
17/8 29/11

be [46]

became [1]
14/13

because [23]
5/23 5/25
6/2 6/3 9/18
11/3 12/23
13/15 14/11
14/23 15/19
18/11 18/15
19/22 20/11
21/18 24/12
25/5 31/11

31/12 32/5
34/18 35/20

been [10]
3/18 5/9
10/14 12/10
15/15 17/5
21/15 21/20
22/13 24/11

before [27]
1/9 2/14 4/7
7/22 8/15
8/18 8/20
8/25 9/2 9/3
9/4 10/17
11/1 11/2
13/1 15/1
15/8 17/9
17/11 17/11
19/14 22/24
23/23 30/11
31/8 33/19
34/1

begin [1]
2/14

beginning [4]
2/6 2/25
13/18 21/14

behalf [1]
2/18

being [6]
6/1 16/22
28/20 31/1
31/12 31/16

belie [1]
9/16

belied [1]

16/25

belief [1]
19/23

beliefs [3]
19/21 21/5
21/12

believe [17]
10/22 11/14
11/25 13/17
13/25 14/1
14/5 14/25
15/4 15/9
15/21 16/3
20/16 25/5
27/2 30/19
35/21

besides [1]
29/4

best [2] 8/9
37/4

between [1]
36/1

blocking [1]
31/13

bond [1] 4/6

both [6] 3/8
8/13 14/9
29/21 30/1
30/14

bound [1]
6/14

BRA [2] 7/11
8/9

brand [1]
11/14

breakout [2]

**B**

breakout...
[2]   19/14
20/21
brief [4]
13/1 19/6
22/3 24/7
briefing [2]
2/22 23/12
briefly [1]
20/19
briefs [1]
3/2
bring [2]
3/4 34/19
brought [1]
5/12
building [11]
15/20 22/15
22/16 22/18
22/20 28/2
31/1 31/5
31/6 31/10
32/5
business [2]
18/3 18/4

**C**

called [1]
21/4
came [4]   4/7
9/11 12/15
16/19
can [15]
6/13 8/23
11/13 11/14
12/4 13/22
16/18 17/9
19/15 20/17
23/14 23/18
26/6 32/17
33/21
can't [1]
7/17
cannot [2]
17/2 26/11
Capitol [21]
15/13 15/19
20/10 22/18
22/20 27/22
28/4 28/6
28/8 28/15
28/17 28/21
30/24 30/25
31/5 31/9
31/11 31/16
31/16 31/22
32/5
car [1]   20/5
care [1]
7/20
CARL [1]   1/9
case [6]   2/2
24/19 25/6
28/1 33/13
36/2
cases [8]
7/5 7/25 8/2
8/9 11/10
11/25 12/1
18/22
celebration
[1]   21/4
certainly [2]
27/21 34/22
CERTIFICATE
[1]   37/1
certify [2]
28/5 37/2
chairs [1]
28/17
challenge [1]
23/20
changes [1]
3/13
characteristi
cs [3]   28/25
29/3 30/20
charge [1]
14/5
charged [7]
17/22 18/1
22/13 27/14
27/15 28/10
30/22
charges [1]
27/17
chatter [2]
18/16 20/13
cheap [1]
21/9
chose [1]
28/14
chosen [2]
7/4 7/5
Christine [1]
2/4
Circuit [6]
5/2 7/17

**C**

Circuit...
[4]   7/17
8/4 8/6
26/12
Circuits [1]
26/9
circumstances
[3]   17/17
24/25 27/13
claim [1]
5/13
claims [1]
29/23
clarifications
[1]   33/7
clarify [1]
16/10
clean [1]
11/4
clear [6]
16/9 21/18
23/1 24/23
32/13 32/14
client [1]
34/7
client's [1]
35/15
Code [7]
22/15 22/17
22/19 22/21
22/23 23/8
32/11
COLUMBIA [2]
1/1 1/20
combination
[3]   23/2

23/5 32/17
come [5]
3/12 9/3
19/15 20/23
21/17
comes [1]
3/13
coming [1]
35/21
command [1]
31/7
commit [1]
25/15
committed [1]
31/19
community
[18]   3/7
6/4 6/10
6/24 8/18
11/23 12/17
13/22 14/2
23/3 23/19
26/22 29/7
29/10 32/1
32/7 32/16
32/18
complaint [1]
27/20
complex [1]
35/10
complicated
[1]   35/22
conceded [2]
27/16 29/18
concerns [1]
32/6

conclude [6]
15/8 25/4
25/17 27/1
28/23 32/13
concluded [2]
4/16 8/11
concluding
[2]   26/13
29/11
conclusion
[1]   8/3
conclusory
[1]   29/9
condition [3]
6/22 15/10
32/16
conditions
[20]   3/5
3/6 4/14 6/3
6/9 8/17
12/2 12/17
13/21 13/25
15/9 15/21
23/3 23/5
25/23 26/1
26/3 26/20
32/12 32/17
conduct [19]
15/25 17/11
17/22 17/23
17/25 18/2
18/3 18/4
18/14 18/18
18/21 20/4
20/4 22/16
22/18 25/18

# C

conduct...
[3] 27/20
27/22 27/25
conducted [1]
24/6
conducting
[1] 4/9
confer [2]
19/8 19/15
conference
[2] 35/20
36/2
conferring
[1] 19/9
Congress [6]
7/4 7/10
17/25 17/25
20/3 28/5
connection
[1] 15/4
consents [1]
21/22
consider [22]
3/17 6/21
7/3 7/17
10/3 11/5
11/6 11/11
11/14 11/15
11/19 11/23
12/1 12/5
12/19 17/5
21/15 23/17
23/18 26/11
26/17 27/13
consideration
[5] 12/13

23/21 25/22
26/23 32/10
considered
[3] 7/7 7/9
22/10
considering
[6] 6/8
7/12 10/13
11/22 24/20
27/10
consistent
[1] 13/16
constitute
[1] 32/15
Constitution
[1] 1/20
consult [1]
32/25
contain [1]
26/14
contains [1]
26/23
continue [1]
34/24
continued [3]
14/16 15/24
19/24
continues [1]
30/14
contours [2]
34/17 34/20
contrary [2]
7/23 27/18
contrast [1]
29/13
convicted [2]
29/15 30/12

conviction
[2] 29/20
31/23
convince [2]
26/2 29/9
convincing
[3] 23/2
32/13 32/14
correct [6]
8/3 9/11
21/24 25/17
27/15 27/23
correction
[2] 9/6
9/22
Corrections
[2] 16/12
16/18
could [17]
3/6 3/6 4/16
6/3 6/9 7/5
7/7 13/22
15/8 20/18
20/20 23/3
23/6 25/13
25/23 26/3
32/6
couldn't [1]
10/5
counsel [4]
2/5 9/14
34/20 35/5
couple [1]
20/5
course [2]
19/10 33/6

Case 1:23-cr-00229-CJN Document 12-1 Filed 07/11/23 Page 47 of 75

## C

court [59]
Court's [2]
 11/3 16/2
courts [4]
 12/24 24/2
 24/20 26/8
COVID [1]
 37/6
COVID-19 [1]
 37/6
CR [1]  1/3
crime [1]
 29/17
crimes [2]
 27/17 31/19
criminal [4]
 2/2 17/12
 17/14 17/17
crowd [3]
 15/18 31/12
 31/15
Cruzio's [1]
 6/1
CRYSTAL [3]
 1/18 37/2
 37/10
current [1]
 30/10
currently [3]
 29/4 29/23
 36/2
CURZIO [77]
Curzio's [19]
 2/23 3/10
 3/16 4/24

 9/8 10/19
 13/22 13/23
 17/11 20/15
 21/16 25/14
 27/25 28/8
 29/14 30/19
 31/21 32/3
 32/20

## D

D.C [4]  1/4
 5/2 20/3
 25/15
danger [6]
 6/24 11/23
 23/18 29/10
 32/1 32/16
dangerousness
 [11]  3/10
 7/7 7/13
 7/18 9/8
 9/23 10/13
 10/15 23/22
 26/7 26/11
date [4]
 33/19 35/9
 36/1 37/10
day [2]
 31/23 36/10
days [1]
 36/3
DC [3]  1/15
 1/17 1/21
de [8]  11/3
 12/22 12/25
 13/2 13/3
 13/4 17/6

 24/16
dealing [1]
 34/10
decide [4]
 4/22 5/4
 5/17 17/9
decided [1]
 8/1
decision [9]
 3/12 4/23
 8/4 8/4 8/6
 23/13 24/3
 24/13 33/11
decisions [2]
 7/15 7/23
defendant [8]
 1/6 1/16
 2/4 4/13
 23/17 23/19
 24/14 28/1
defendant's
 [5]  23/15
 25/23 26/4
 32/15 34/20
defendants
 [4]  18/22
 33/22 33/25
 34/19
Defender [3]
 33/21 34/5
 34/11
defense [5]
 5/13 5/14
 17/5 20/11
 20/12
defying [1]

# D

defying...
[1]   28/21
degree [5]
14/4 29/16
29/19 30/12
31/24
democratic
[1]   28/11
demonstrates
[2]   28/10
31/14
demonstrating
[1]   22/20
demonstration
[1]   25/12
denied [1]
32/20
denying [1]
33/9
Department
[2]   16/12
16/17
described [1]
16/22
despite [1]
31/1
destruction
[2]   28/14
28/19
destructive
[2]   27/20
27/22
detained [1]
32/21
detention
[67]

determination
[1]   4/17
determination
s [1]   12/24
determine [2]
6/22 25/2
determined
[3]   12/16
23/1 26/5
determining
[2]   12/2
26/19
detriment [1]
20/15
dictate [1]
26/17
did [11]
7/14 8/24
10/25 14/19
19/14 21/8
25/8 30/18
31/7 31/9
35/21
didn't [7]
7/10 8/22
10/6 10/6
13/6 13/6
28/19
different [2]
8/3 34/18
difficult [1]
28/18
disavowed [1]
14/19
disavows [1]
21/12

disclaims [1]
21/11
disconnect
[1]   6/11
discovered
[1]   30/7
discovery
[10]   33/4
33/17 33/18
33/18 33/23
34/4 34/11
34/12 35/10
35/22
discuss [6]
8/25 33/3
33/11 34/23
35/2 35/4
discussed [3]
23/24 33/4
35/10
discussions
[3]   34/22
34/25 35/11
disorderly
[3]   22/16
22/18 28/15
disposition
[1]   34/13
dispute [1]
30/18
disputed [1]
29/18
disregard [2]
28/10 31/21
disrupt [3]
17/18 17/24

**D**

disrupt...
[1]  18/2
disruptive
[2]  22/16
31/15
disrupts [1]
18/4
district [12]
1/1 1/1
1/10 1/19
1/20 8/5
12/24 22/25
23/15 24/21
26/13 31/4
disturb [1]
17/24
do [25]  3/12
7/5 7/10
7/24 10/5
11/14 15/9
16/1 18/20
19/11 20/6
20/20 21/5
21/8 21/17
22/4 27/20
27/24 31/9
32/6 33/12
33/15 34/1
34/17 35/21
Docket [1]
1/3
documented
[1]  16/11
does [18]
7/11 7/11

7/21 13/10
13/10 14/18
14/22 14/24
15/5 15/14
15/18 20/15
22/1 26/14
26/17 29/9
31/10 32/1
doesn't [3]
12/22 12/25
25/4
doing [1]
34/9
dollars [1]
20/6
don't [16]
4/19 5/3
7/20 8/8
10/6 14/25
15/4 19/12
19/20 19/23
20/16 24/12
29/3 33/5
34/15 34/21
done [2]
34/1 34/8
doors [1]
31/11
down [1]
18/23
drug [1]
30/16
during [7]
16/19 16/24
23/16 24/9
26/7 26/17

37/6

**E**

each [1]
34/20
EDUARDO [2]
1/16 2/10
effect [2]
5/13 32/23
efficient [1]
33/2
either [3]
18/25 23/22
27/1
election [1]
28/6
else [1]
36/4
employed [1]
29/5
empowered [1]
3/17
empty [1]
28/2
encompass [1]
27/24
ends [1]
35/25
enforcement
[1]  14/16
engage [1]
15/24
engaged [2]
18/12 18/21
entered [6]
28/4 28/6
31/5 31/8

E

entered...
[2]  31/10
31/15
entering [1]
22/14
entire [2]
13/18 27/12
entitled [1]
37/5
entry [1]
22/18
enumerated
[1]  6/22
err [1]  25/8
Esquire [3]
1/13 1/13
1/16
essentially
[2]  12/15
15/10
evaluate [2]
24/21 26/6
evaluation
[1]  24/18
even [10]
4/13 4/17
10/5 10/11
11/15 12/12
13/2 18/7
29/8 29/10
event [2]
9/17 20/7
events [1]
20/14
everyone [1]

22/5
everyone's
[1]  2/14
everything
[1]  9/2
evidence [23]
3/3 9/9
15/2 17/10
18/9 18/20
18/23 19/1
19/24 20/3
23/2 23/5
25/11 29/14
30/13 30/19
30/21 30/22
31/13 31/18
32/11 32/13
32/14
examine [1]
27/3
example [2]
13/2 29/8
exhorted [1]
20/9
exit [1]
32/6
exits [1]
31/13
expensive [1]
21/10
explanation
[1]  20/12
explored [1]
28/2
express [1]
28/7

extensive [1]
29/6
extent [1]
12/3

F

facing [1]
25/14
fact [14]
9/3 9/5 9/8
9/22 12/21
13/4 15/4
20/13 25/14
25/15 28/15
29/4 29/18
30/24
factor [9]
27/14 28/23
29/1 29/1
29/14 30/21
31/20 31/21
32/8
factors [19]
6/7 6/22 7/1
7/2 7/6 7/9
7/12 11/19
11/22 11/23
11/24 12/4
20/16 23/1
24/18 25/22
26/24 27/4
32/11
facts [2]
3/9 27/19
factual [2]
3/23 16/9
failed [7]

# F

failed... [7]
  23/22 24/5
  24/7 24/8
  24/19 29/7
  32/4
failure [1]
  31/22
far [3]
  15/15 28/9
  31/13
fashion [1]
  28/15
favor [8]
  28/23 28/24
  29/1 29/4
  29/14 30/20
  31/20 32/8
FBI [3]
  16/21 30/7
  31/3
FCRR [2]
  1/18 37/10
February [4]
  9/20 23/11
  24/9 27/12
February-19th
  [1]  24/9
Federal [3]
  33/21 34/5
  34/10
few [1]  2/13
filed [3]
  22/12 32/22
  33/22
files [1]

24/15
filing [1]
  27/11
filled [1]
  32/5
finally [2]
  10/15 31/21
find [6]
  25/1 25/13
  29/1 29/3
  32/6 32/14
findings [4]
  22/12 27/13
  33/8 33/10
first [30]
  2/25 3/22
  4/10 5/10
  5/18 6/16
  6/16 7/17
  10/2 10/21
  12/9 12/20
  14/4 16/9
  17/4 19/9
  19/18 22/14
  23/1 23/13
  24/14 26/9
  27/13 29/15
  29/16 29/19
  30/12 31/24
  33/6 33/12
fixtures [1]
  14/22
flight [13]
  6/1 6/2 6/8
  7/9 10/13
  11/22 11/23

12/14 23/18
  25/3 25/11
  26/1 29/10
Florida [10]
  8/5 9/6 9/22
  16/12 16/16
  22/25 26/13
  29/5 29/7
  29/15
focused [4]
  13/20 13/21
  21/19 27/8
follow [4]
  12/4 31/7
  31/23 32/4
following [4]
  7/6 10/1
  22/12 27/12
force [2]
  16/14 30/2
foregoing [1]
  37/3
forfeited [4]
  5/14 23/20
  23/25 24/11
forth [3]
  31/18 32/11
  32/12
forward [2]
  4/16 20/18
found [1]
  26/9
four [2]
  22/13 27/15
fourth [4]
  10/15 22/19

**F**

fourth... [2]
    31/21  32/8
FPD [1]
    34/18
frame [1]
    24/3
Friday [1]
    33/19
fringe [1]
    29/24
front [3]
    4/13  5/1
    30/17
functions [2]
    18/3  18/5
funds [1]
    21/8
further [1]
    33/1
Furthermore
[1]   31/2
future [7]
    6/23  7/9
    18/8  18/10
    18/11  18/19
    20/4

**G**

gang [28]
    9/5  9/7  9/10
    9/13  9/15
    9/17  9/21
    10/19  13/23
    14/14  14/16
    14/18  14/25
    15/2  15/3
    15/6  16/15
    16/25  19/24
    21/6  21/12
    29/21  29/24
    30/4  30/13
    30/15  31/25
    32/3
gangs [2]
    16/23  30/9
gas [1]   20/6
general [3]
    15/18  34/17
    34/20
generally [2]
    13/25  18/25
Germany [1]
    16/13
get [11]
    6/19  10/16
    12/22  18/22
    21/7  21/9
    21/10  33/22
    34/4  34/11
    34/21
gets [1]
    27/7
Gibson [1]
    11/25
give [2]
    8/23  29/8
given [3]
    15/11  15/13
    35/15
go [5]   4/16
    13/14  19/12
    19/14  20/9
goes [2]
    3/14  33/13
going [4]
    2/18  12/21
    19/13  20/2
good [6]   2/7
    2/9  2/10
    2/17  21/20
    36/10
government
[45]
government's
[5]   4/12
    7/23  8/16
    11/9  36/5
grounds [2]
    5/9  20/2
group [2]
    28/14  28/16
groups [2]
    20/14  29/24

**H**

had [11]
    4/13  4/15
    4/16  8/16
    8/19  9/3  9/3
    15/3  16/21
    21/5  25/20
halls [1]
    28/15
hammer [3]
    16/22  19/18
    30/7
hand [1]
    19/7

# H

happen [1]
  18/14
happened [3]
  12/20 18/24
  18/25
happening [1]
  18/17
happy [3]
  9/25 16/6
  33/11
has [38]
have [48]
having [6]
  15/15 21/22
  26/2 26/5
  26/5 32/24
he [74]
he's [8]
  6/10 9/14
  14/24 15/25
  18/1 29/4
  29/18 32/1
head [1]
  14/10
heads [1]
  22/5
hear [1]
  2/25
hearing [81]
hearings [3]
  15/23 15/23
  26/24
heavily [1]
  29/1
held [17]

3/18 5/9 6/6
  8/12 10/4
  11/7 12/10
  13/11 18/8
  21/20 22/24
  23/10 23/16
  26/7 26/10
  26/16 26/24
helpful [1]
  33/12
Hemler [2]
  8/2 8/8
here [13]
  2/24 3/9
  3/15 7/24
  13/21 15/22
  20/15 20/23
  24/5 27/2
  29/12 33/13
  34/10
Here's [1]
  2/24
hide [1]
  18/23
highlight [1]
  8/24
him [11]
  11/24 14/10
  15/10 19/9
  20/18 21/2
  25/16 28/4
  28/20 31/7
  31/9
Himler [1]
  11/25
himself [1]

15/15
his [32]
  9/17 9/23
  14/14 14/20
  14/24 15/5
  15/10 15/11
  19/7 19/20
  19/21 19/23
  19/25 20/3
  20/4 21/3
  21/5 21/8
  21/11 23/20
  23/25 24/6
  24/7 28/10
  29/3 29/6
  29/19 30/4
  30/10 31/22
  31/23 31/24
history [3]
  28/25 29/3
  30/20
hit [1]
  14/10
hold [4]
  12/3 23/13
  24/13 27/5
holding [4]
  3/24 7/17
  11/24 25/8
Holmes [1]
  8/5
Honor [25]
  2/7 2/10
  2/17 5/12
  5/16 6/14
  8/2 9/1 9/11

**H**

Honor... [16]
10/21 13/8
14/3 15/11
16/8 19/17
20/22 20/24
21/1 21/24
22/2 33/15
34/3 35/6
36/8 36/11
HONORABLE [1]
1/9
hope [1]
12/6
hopefully [1]
33/21
House [1]
17/25
housekeeping
[1]   21/20
how [2]   2/24
12/4
however [3]
8/4 11/3
21/8
hypothetically
y [2]   5/23
15/7

**I**

I'd [3]   2/25
10/1 19/17
I'll [6]
3/10 3/11
10/21 20/24
22/4 34/11

I'm [17]   6/1
6/6 7/15
7/16 9/11
9/24 10/2
10/12 12/6
12/6 14/17
16/18 18/24
22/4 27/3
29/11 33/11
I've [4]
8/11 22/10
24/5 27/2
imagery [1]
30/1
impede [4]
17/24 18/2
18/24 18/25
impedes [1]
18/3
importantly
[1]   30/6
impose [1]
15/9
imposed [1]
32/17
improper [1]
24/1
inappropriate
[1]   12/19
incarcerated
[2]   9/6
14/4
included [1]
16/13
includes [2]
7/13 17/23

including [6]
17/12 22/11
25/12 26/8
30/1 33/25
incorrectly
[1]   12/16
indicate [4]
12/1 15/5
15/14 32/1
indicated [2]
11/10 21/14
indication
[5]   14/15
14/17 15/24
15/25 16/1
indirectly
[1]   8/1
individual
[1]   34/20
individuals
[3]   20/9
20/9 20/14
information
[4]   3/3
8/21 22/11
22/13
initial [5]
4/1 11/21
13/12 24/6
25/2
initially [3]
11/2 13/14
27/4
inmates [1]
14/9
inquiry [1]

## I

inquiry...
[1]   18/7
inside [1]
30/25
insist [1]
31/10
instance [5]
3/22 4/11
5/18 6/16
17/4
instead [4]
10/22 24/10
26/18 28/3
intelligence
[1]   18/15
intend [1]
21/16
intent [3]
17/23 17/24
18/2
interest [2]
35/12 35/25
interpretatio
n [3]   8/10
24/17 24/20
interrupting
[1]   28/7
introduce [1]
2/5
inure [1]
20/15
investigation
s [1]   18/25
invite [1]
8/23

involvement
[1]   19/1
is [104]
isn't [3]
4/12 6/10
28/1
issue [17]
3/9 4/6 5/12
10/21 11/5
13/15 16/10
17/3 18/13
19/18 21/1
23/23 25/1
32/22 33/8
33/9 35/7
issues [13]
2/22 9/25
12/9 12/21
12/23 23/12
23/24 24/3
24/7 24/8
24/10 35/4
35/9
it [47]
it's [9]
2/12 8/4
10/25 20/12
21/9 21/10
21/18 23/25
34/21
its [2]   4/2
26/12
itself [2]
11/5 13/9

## J

jail [2]
14/8 14/12
January [15]
3/25 4/1 4/2
15/13 17/11
17/12 18/14
18/24 19/1
19/2 19/3
20/7 22/22
27/23 28/9
joint [1]
28/4
judge [22]
1/10 4/4
4/14 4/16
8/13 8/22
9/4 10/8
10/9 11/1
12/16 13/6
13/20 22/24
22/25 23/23
24/6 25/7
25/17 26/2
27/5 30/17
judge's [7]
2/23 3/16
4/23 23/9
23/13 24/13
24/15
judicial [1]
6/21
jurisdictiona
l [1]   13/3
just [21]
3/14 5/12

**J**

just... [19]
8/14  8/24
9/18  9/19
10/13  10/18
13/14  13/24
14/23  15/2
16/9  17/9
19/23  20/12
20/18  21/17
21/20  35/9
36/3
justice [3]
17/21  35/12
35/25

**K**

keep [1]
20/24
kicked [1]
28/17
kind [2]   3/8
18/14
kinds [1]
18/21
knew [2]
31/5  35/20
know [8]
2/21  9/13
14/22  19/6
20/11  22/4
27/8  28/19
known [1]
31/25
knows [2]
11/20  14/3

**L**

language [3]
17/19  26/15
26/23
large [2]
28/14  28/16
last [3]   3/1
8/15  35/6
later [1]
34/4
law [4]
13/16  14/16
24/19  28/11
lawful [1]
4/24
least [11]
6/4  6/11
8/21  13/20
13/24  15/21
16/3  17/1
27/18  30/17
31/24
leave [6]
31/1  31/7
31/9  31/12
31/17  32/4
led [1]   27/5
legal [3]
3/8  12/24
17/19
Lesley [2]
20/20  22/4
less [1]
35/1
let [2]   3/15
22/4

let's [4]
5/15  5/22
8/11  13/13
life [1]
21/5
light [2]
20/17  35/9
like [20]
2/12  2/24
2/25  3/4
8/20  8/24
9/25  10/2
10/17  11/11
16/7  17/7
18/17  19/5
19/16  19/17
33/5  34/3
35/7  35/24
likely [2]
22/4  23/25
limit [2]
7/11  7/12
limitation
[2]   7/1
26/14
limitations
[1]   37/8
limited [5]
10/12  12/4
12/14  23/17
33/18
limiting [1]
26/23
limits [1]
6/13
line [4]   8/2

**L**

line... [3]
 8/9 11/25
 12/1
little [6]
 9/19 12/7
 16/6 29/2
 29/9 32/6
lock [1]
 14/11
longer [3]
 9/14 16/25
 32/3
look [3]
 8/13 11/16
 13/5
looking [2]
 2/12 17/19
love [1]
 34/11

**M**

made [9]
 8/20 11/12
 15/4 18/16
 24/23 25/2
 25/6 25/20
 33/11
magistrate
 [29]    2/23
 3/16 4/4
 4/14 4/15
 4/23 8/13
 8/22 9/4
 10/7 10/9
 11/1 12/16

13/6 13/20
15/1 22/24
22/25 23/9
23/13 23/23
24/6 24/13
24/15 25/7
25/17 26/2
27/5 30/17
make [5]
 2/13 11/21
 19/13 22/12
 27/12
making [2]
 11/16 12/6
Many [1]
 28/6
March [5]
 1/5 35/13
 35/20 36/1
 36/3
March-19th
 [1]  36/3
marijuana [1]
  30/17
matter [14]
 3/23 11/11
 11/21 13/18
 16/9 17/13
 17/15 17/18
 23/7 25/4
 27/9 33/4
 34/13 37/5
matters [2]
 24/4 24/12
may [18]
 2/16 5/16

10/22 12/1
17/1 18/14
19/10 19/13
20/13 24/11
30/3 32/25
33/18 33/25
34/6 34/9
34/24 35/19
me [23]   4/15
 5/1 6/4 7/20
 7/21 7/22
 8/21 8/23
 10/8 10/10
 12/8 12/15
 12/22 13/5
 13/7 15/9
 19/22 21/18
 24/11 24/19
 30/11 31/8
 34/21
mean [4]
 10/6 10/6
 14/24 20/5
meaning [1]
 8/9
means [2]
 5/24 14/23
mechanism [3]
  3/20 4/19
 4/20
media [1]
 18/23
meet [1]
 24/17
meeting [1]
 28/5

Case 1:23-cr-00229-CJN Document 12-1 Filed 07/11/23 Page 58 of 75

# M

meetings [1]
14/18

MEINERO [19]
1/13 2/8 2/9
2/18 3/15
8/19 9/24
10/18 16/6
18/6 19/4
21/25 33/3
33/5 33/14
34/12 34/23
35/14 36/4

Meinero's [1]
13/23

member [10]
9/10 14/13
14/24 15/3
19/24 29/20
29/24 30/13
30/14 32/3

membership
[3]   15/5
21/6 21/12

mentioned [5]
9/2 9/3
14/21 19/19
24/6

merely [2]
10/9 18/9

MICHAEL [2]
1/5 2/3

middle [2]
22/25 34/21

might [1]
2/13

miles [2]
17/18 20/3

minimum [2]
30/13 35/24

minute [1]
22/5

misdemeanor
[1]   15/12

misdemeanors
[2]   22/14
27/16

mob [1]   28/4

modification
[1]   4/8

moment [1]
5/22

more [6]
10/16 13/24
28/9 30/4
30/6 33/23

morning [8]
2/7 2/9 2/10
2/17 21/16
21/22 23/24
35/4

most [2]   9/2
19/10

motion [16]
1/9 2/23
3/16 4/7 4/7
12/15 21/16
23/10 23/15
24/8 24/15
24/22 29/6
32/20 32/24
33/9

motions [1]
24/9

move [3]
20/2 20/17
28/14

moved [1]
23/8

Mr [58]

Mr. [70]

Mr. Balarezo
[15]   2/12
3/11 9/24
16/5 19/5
19/8 19/12
20/21 21/13
21/21 32/25
34/2 35/14
35/18 36/7

Mr. Curzio
[29]   10/6
10/25 12/3
18/11 19/2
19/14 19/19
20/21 21/22
23/4 23/6
23/8 23/20
23/25 27/8
27/17 27/21
28/13 28/16
28/21 28/25
30/18 30/22
30/25 31/2
31/19 32/7
34/10 34/23

Mr. Curzio's
[8]   20/15

## M

Mr. Curzio's... [7]   21/16 28/8 29/14 30/19 31/21 32/3 32/20
Mr. Meinero [17]   2/9 2/18 3/15 8/19 9/24 10/18 16/6 18/6 19/4 21/25 33/3 33/5 33/14 34/12 34/23 35/14 36/4
Mr. Meinero's [1]   13/23
MS [1]   2/17
Ms. [4]   2/16 20/20 22/4 33/3
Ms. Lesley [2]   20/20 22/4
Ms. Ravindra [2]   2/16 33/3
much [1] 16/6
multiple [2] 12/21 14/8
murder [5] 14/5 29/16 29/19 30/12 31/24

must [6] 6/21 7/3 7/24 25/1 26/17 27/13
my [20]   3/4 10/1 12/13 12/22 13/4 14/7 19/19 24/12 25/19 27/5 32/6 33/2 33/7 33/8 33/10 33/10 34/7 34/16 35/15 37/4
myself [1] 12/6

## N

name [1] 19/21
narrow [2] 24/16 24/19
nature [5] 15/11 15/17 27/13 35/10 35/22
Nazi [3] 16/13 30/1 30/2
necessary [1] 21/18
necklace [1] 21/2
need [2] 33/7 35/23

negotiated [1]   34/8
negotiating [2]   33/20 34/5
negotiations [3]   34/22 34/25 35/24
neutral [1] 24/3
new [2] 11/14 30/11
next [5] 33/3 33/19 34/1 35/9 36/2
NICHOLS [1] 1/9
no [35]   1/3 3/20 3/23 3/23 4/3 4/5 4/19 6/3 7/1 8/17 9/14 11/8 11/8 11/10 12/8 12/8 12/16 12/18 12/19 14/14 14/16 14/17 15/24 15/25 16/1 16/25 19/3 23/2 23/5 26/3 26/23 32/3 32/16 36/6 36/8
non [1]   13/3

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 60 of 75

## N

non-jurisdict
ional [1]
 13/3
none [1]
 27/16
not [79]
note [3]
 2/15 25/19
 37/6
notes [1]
 30/3
nothing [2]
 21/5 30/4
novo [8]
 11/3 12/22
 12/25 13/2
 13/3 13/4
 17/6 24/16
now [18]   4/9
 5/13 6/1
 8/13 8/23
 11/15 14/4
 16/17 17/22
 18/13 18/18
 20/1 20/2
 20/18 21/11
 22/6 22/9
 29/23
number [4]
 2/4 10/22
 10/23 34/18
numerous [1]
 18/15
NW [3]   1/14
 1/16 1/20

## O

o'clock [1]
 36/12
object [2]
 34/4 35/16
objection [6]
 3/23 3/24
 4/4 4/5
 11/12 11/16
obstruct [3]
 17/21 17/21
 20/3
obstruction
 [5]   18/8
 18/9 18/11
 18/12 18/19
obstructive
 [2]   20/4
 20/4
obviously [8]
 3/13 3/15
 7/20 8/15
 19/7 21/19
 34/3 34/19
occur [1]
 18/15
occurred [2]
 14/5 37/6
occurring [3]
 27/22 28/19
 31/22
Odinism [2]
 21/4 30/10
offense [1]
 27/14
offenses [5]

 15/12 15/12
 27/24 28/9
 30/23
offer [1]
 33/24
offered [1]
 31/12
officer [4]
 2/4 6/21
 30/24 31/4
officers [7]
 15/16 15/16
 28/18 28/22
 31/6 31/9
 32/4
official [5]
 1/19 17/18
 18/3 18/5
 37/2
often [1]
 12/24
Okay [2]
 22/3 36/9
Once [1]
 33/22
one [4]
 10/23 11/9
 24/24 29/8
ongoing [1]
 35/10
only [11]
 7/15 11/22
 13/6 14/13
 14/19 15/17
 23/17 24/17
 26/15 26/24

**O**

only... [1]
27/15
oOo [1]
36/13
open [1]
18/13
opened [1]
31/11
opening [1]
13/1
operates [1]
9/21
operating [1]
29/21
opinion [2]
26/12 33/8
opportunity
[1] 13/17
option [1]
24/25
orally [3]
3/12 21/16
33/9
order [26]
2/24 3/17
4/8 4/9 4/23
5/2 5/7 5/8
6/2 9/25
10/1 13/8
23/10 24/16
24/17 32/22
33/2 33/7
33/9 33/16
33/20 33/22
34/6 34/18

35/11 35/23
ordered [6]
2/22 28/20
31/1 31/9
31/16 32/21
orderly [3]
17/24 18/2
18/4
orders [2]
31/23 33/5
organizations
[1] 29/25
original [1]
16/24
originally
[1] 27/9
other [15]
2/13 7/16
7/24 7/25
13/3 14/9
18/21 20/9
20/13 20/14
24/20 26/8
26/22 29/24
35/4
otherwise [1]
18/24
our [8] 5/11
8/6 11/19
12/5 17/3
17/7 33/19
35/11
out [8] 9/3
9/11 16/19
21/9 27/15
27/23 29/21

34/17
outside [2]
9/22 27/22
over [1]
9/19
overthrow [1]
15/25
own [3]
14/14 14/20
19/1

**P**

P-R-O-C-E-E-D
-I-N-G-S [1]
2/1
pandemic [1]
37/7
papers [2]
8/15 22/11
parading [1]
22/19
parameters
[1] 33/20
paramilitary
[2] 16/14
30/2
part [3]
6/19 14/16
20/8
participate
[1] 31/15
participation
[2] 28/8
28/10
particular
[6] 10/17
14/14 15/15

**P**

particular...
[3]   16/15
17/10 20/16
parties [8]
2/21 3/2
13/20 23/11
24/2 24/4
33/7 34/24
parties' [2]
22/10 27/10
parts [1]
8/24
party [2]
12/25 24/2
past [3]
18/9 18/12
21/7
Pause [1]
20/25
peaceful [1]
28/11
penal [1]
9/6
pendant [4]
16/21 16/23
17/1 30/7
pending [3]
32/8 32/19
32/21
people [2]
2/13 18/22
perhaps [1]
29/10
permanent [2]
14/22 30/3

permitted [1]
10/2
person [3]
17/20 26/21
26/22
personal [2]
15/22 16/3
perspective
[2]   10/1
36/5
pertains [1]
26/15
photographed
[2]   16/11
16/17
picketing [1]
22/20
PILGRIM [3]
1/18 37/2
37/10
place [2]
5/10 12/20
plain [4]
6/25 8/9
26/14 26/15
plaintiff's
[1]   7/10
plan [1]
3/13
planning [1]
20/14
plea [2]
33/24 35/23
pleadings [1]
5/11
please [4]

2/5 20/20
20/20 37/6
point [4]
19/20 24/19
27/15 27/23
pointed [1]
21/9
police [6]
28/18 28/21
30/24 31/6
31/23 32/4
pose [3]
23/19 32/1
32/7
posed [1]
3/1
position [4]
4/13 7/24
12/5 33/25
possibility
[2]   18/16
35/23
possible [3]
32/12 34/12
34/12
possibly [1]
20/14
posts [1]
18/23
potential [1]
4/6
power [3]
16/23 28/12
30/8
precondition
[2]   5/2 5/4

Case 1:23-cr-00229-CJN  Document 12-1  Filed 07/11/23  Page 63 of 75

# P

prejudice [1]
11/8

premises [1]
28/20

preponderance
[1]   23/4

presence [1]
24/24

present [7]
13/6 13/7
15/12 15/19
24/4 31/4
34/24

presented [8]
4/15 10/9
10/10 15/14
21/15 25/10
31/13 32/11

presenting
[1]   10/7

preserve [1]
12/13

preserved [4]
4/18 12/11
12/12 25/5

President [1]
20/8

Presidential
[1]   28/6

pretrial [12]
2/4 4/8
4/24 14/2
15/10 23/2
23/5 23/9
25/12 29/15

32/2 32/15

primarily [1]
7/21

principally
[2]   6/1 6/8

principle [1]
24/2

prior [6]
18/17 21/6
30/4 31/23
31/24 34/13

prison [10]
9/18 13/24
14/8 16/23
21/10 25/15
29/19 29/21
30/5 30/9

probably [2]
3/11 19/21

proceed [1]
2/24

proceeded [2]
4/4 21/22

proceeding
[4]   13/5
13/10 17/19
17/19

proceedings
[3]   22/8
28/7 37/4

process [3]
6/15 6/20
28/11

proffer [1]
17/10

proffered [4]
8/22 29/13

29/17 30/23

proffers [1]
28/16

prohibits [1]
18/1

proof [1]
19/24

proper [7]
11/2 11/21
13/12 13/13
13/15 24/22
26/6

properly [3]
6/6 11/7
27/5

property [1]
28/13

protect [1]
6/23

protection
[4]   14/14
33/20 33/22
35/11

protective
[4]   33/4
34/6 34/17
35/23

provide [3]
5/6 33/18
33/23

provided [3]
26/18 29/2
33/17

provision [1]
25/9

provisions
[1]   5/6

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 64 of 75

**P**

prudent [1]
 19/10
public [5]
 18/16 33/21
 34/5 34/10
 35/25
published [1]
 7/15
purpose [3]
 6/5 6/12
 28/7
purposes [2]
 6/7 34/24
put [2]
 20/21 31/18

**Q**

qualify [1]
 27/17
question [18]
 3/5 3/21
 4/20 5/1 5/6
 5/17 5/22
 6/13 6/17
 7/22 12/9
 12/12 13/1
 13/2 13/3
 13/19 17/6
 26/7
questioned
 [1]  13/9
questions
 [11]  3/1
 3/8 8/14
 8/14 10/13

13/5 27/7
33/6 33/10
33/15 35/22
quick [1]
 20/24
quote [1]
 14/12
quote/unquote
 [1]  14/12

**R**

raise [5]
 4/5 23/22
 24/5 24/8
 35/7
raised [7]
 11/5 11/15
 13/7 13/15
 19/7 24/9
 24/10
raising [2]
 12/25 36/4
rather [1]
 34/4
RAVINDRA [5]
 1/13 2/16
 2/17 2/17
 33/3
read [1]
 8/15
reading [3]
 6/25 7/11
 8/8
really [2]
 12/18 20/16
reason [6]
 6/12 11/10

14/13 14/19
25/3 29/3
reasonably
 [5]  6/23
 23/3 23/6
 26/20 32/17
reasoning [1]
 8/7
reasons [3]
 14/11 32/10
 34/9
rebut [1]
 16/6
received [1]
 15/1
recent [2]
 9/20 9/20
recess [6]
 3/12 19/6
 21/14 22/3
 22/6 22/7
reckless [1]
 28/3
recognizance
 [2]  15/22
 16/4
recognizes
 [1]  30/9
record [6]
 2/5 5/19 9/9
 21/21 22/9
 27/12
recreational
 [1]  30/16
Reform [1]
 6/25

# R

regard [1]
27/4
Regarding [1]
33/17
regularly [2]
24/21 30/16
rejoining [1]
22/5
relate [3]
17/11 17/12
17/14
related [2]
2/22 8/14
relates [1]
34/23
relating [1]
30/1
release [10]
3/6 12/2
15/10 15/22
16/3 23/2
23/5 26/20
32/12 32/15
released [10]
6/10 8/18
9/19 14/2
14/6 14/15
15/8 23/19
32/7 32/19
relied [1]
9/1
religion [3]
19/20 21/3
30/11
reluctant [1]
19/8

rely [1]
24/2
remain [1]
32/21
remained [4]
28/21 30/25
31/12 31/16
remaining [1]
22/14
remains [1]
9/10
remember [1]
20/7
remotely [2]
37/4 37/8
removed [3]
14/23 21/8
21/10
reopen [1]
5/17
reopening [2]
3/21 5/6
reported [1]
37/4
Reporter [3]
1/18 1/19
37/2
reporting [1]
37/8
reports [3]
14/17 18/15
18/16
represent [4]
16/18 17/2
30/4 34/18
representatio
n [1]   24/2

representatio
ns [1]   27/11
representing
[1]   30/10
reputation
[1]   9/7
request [2]
4/10 35/16
requested [1]
22/22
requesting
[1]   4/3
required [3]
23/7 26/21
27/3
requirement
[1]   26/16
resolve [1]
7/21
resolved [1]
32/24
respect [4]
3/4 11/18
20/1 34/6
respond [3]
10/18 13/23
19/5
responds [1]
29/25
restricted
[3]   22/14
22/16 28/3
restriction
[1]   16/3
restrictions
[1]   26/18

**R**

restrictive [1]  15/21
result [1]  35/22
results [1]  28/5
resumed [1]  22/8
retained [1]  32/2
review [10]  4/7 4/9 11/3
12/22 12/23 13/4 13/11
13/18 24/15 33/1
reviewable [3]  13/2
24/14 25/1
reviewed [2]  13/3 23/14
reviewing [2]  4/20 4/23
reviews [1]  12/24
revocation [1]  5/7
revoking [1]  5/8
right [5]  13/10 21/11
21/21 23/20 29/24
riot [1]  31/4

rioters [2]  28/6 32/5
risk [18]  5/25 6/2 6/8
7/9 10/13 11/22 11/23
12/14 17/20 18/8 18/11
18/19 20/6 23/18 25/3
25/11 26/1 29/10
RMR [2]  1/18 37/10
room [2]  19/14 20/21
rule [2]  21/16 28/10
ruling [1]  24/22
running [1]  36/1

**S**

safety [10]  3/7 6/3 6/10
8/17 12/17 13/22 14/1
23/3 26/21 32/18
said [8]  5/2 6/20 7/8
14/19 15/2 19/22 26/5
27/2
sake [1]  21/20

same [2]  18/5 26/2
sandbagging [1]  11/9
satisfied [4]  4/14 5/4
27/2 27/3
saw [1]  18/14
say [4]  7/5 15/18 19/12
19/13
saying [2]  17/7 20/1
Scandinavian [1]  21/4
scheduled [1]  36/3
Schuck [1]  2/5
second [10]  6/19 6/19
10/5 12/12 21/17 22/15
23/4 23/15 29/1 29/17
seconds [1]  22/5
Section [23]  22/15 22/17
22/19 22/21 22/23 23/1
23/9 23/16 24/1 24/14
24/18 24/22 25/7 25/18

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 67 of 75

# S

Section...
 [9]  26/8
 26/10 26/15
 26/19 26/22
 27/3 27/7
 32/12 32/20
see [1]  4/19
seeing [2]
 18/18 18/21
seek [1]
 33/1
seeking [1]
 6/15
seeks [1]
 16/1
seem [2]
 9/15 12/22
seems [4]
 7/20 8/21
 9/2 12/8
sense [3]
 11/21 19/13
 34/16
serious [4]
 11/22 17/20
 28/9 29/16
seriousness
 [1]  27/24
serve [1]
 24/3
service [1]
 33/21
Services [1]
 25/13
session [2]

 17/25 28/5
set [11]
 3/16 6/9
 8/17 12/17
 13/21 13/25
 25/22 25/25
 26/3 32/11
 32/12
SETH [2]
 1/13 2/7
sets [1]
 6/15
setting [1]
 12/2
Seventh [1]
 1/16
several [2]
 6/21 12/9
shall [1]
 32/21
shed [1]
 20/17
short [2]
 3/12 6/22
shortly [1]
 32/22
should [18]
 3/18 5/9 7/4
 10/19 11/4
 11/6 11/10
 11/16 11/18
 12/4 12/10
 12/20 13/17
 18/8 25/19
 29/14 34/8
 35/4

showed [2]
 3/6 16/10
showing [3]
 25/2 25/6
 25/20
shown [1]
 25/25
shows [1]
 6/25
sides [1]
 30/14
significant
 [2]  9/3
 29/13
similar [2]
 17/21 20/14
simply [3]
 8/8 19/9
 28/2
since [3]
 14/15 31/10
 32/24
Singleton [6]
 6/14 6/15
 6/20 7/14
 7/21 24/24
singular [1]
 20/7
sir [3]  3/20
 17/15 36/6
situation [5]
 3/10 7/14
 10/8 18/18
 21/11
slate [1]
 11/4

# S

so [40]

social [1]
 18/23

solely [1]
 26/10

some [3]
 2/22 25/25
 33/18

somebody [1]
 14/10

someone [1]
 30/11

something [4]
 3/13 11/13
 18/17 19/16

somewhat [2]
 6/4 28/23

soon [1]
 34/12

sooner [1]
 34/4

sort [2]
 16/22 34/13

sought [5]
 5/25 7/6 7/8
 7/18 7/19

Southern [2]
 8/5 26/13

speak [5]
 19/9 20/18
 34/11 34/16
 36/9

speaking [3]
 2/19 14/7
 18/24

speaks [2]
 9/8 9/22

specific [1]
 15/18

speedy [6]
 35/8 35/12
 35/16 35/17
 35/19 36/1

spontaneously
 [1]  31/3

sponte [2]
 24/9 24/11

spraying [1]
 15/16

SS [2]  16/13
 30/2

stabbings [1]
 14/9

stage [1]
 10/3

standard [4]
 25/19 25/21
 25/24 33/21

start [1]
 33/5

starting [1]
 11/4

state [2]
 21/21 29/15

stated [4]
 3/24 4/2
 31/3 33/8

statement [2]
 27/19 29/8

STATES [11]
 1/1 1/3 1/10

1/14 1/19
 2/3 2/8 2/18
 20/9 22/22
 24/23

status [2]
 35/20 36/2

statute [3]
 7/21 8/10
 26/14

statutory [2]
 27/24 28/9

step [5]
 6/15 6/16
 6/19 6/20
 10/10

steps [2]
 19/2 33/3

still [9]
 4/17 9/12
 14/23 15/5
 16/19 17/1
 18/13 30/1
 33/19

storming [1]
 28/8

Street [2]
 1/14 1/16

strikes [1]
 6/4

strong [2]
 30/23 31/18

strongly [1]
 9/8

struggled [1]
 25/13

styled [1]

# S

styled... [1]
4/7

sua [2]   24/9
24/11

subject [1]
37/7

submit [1]
23/12

submitted [1]
3/2

subscribes
[1]   21/3

subsection
[3]   26/24
26/25 27/4

substances
[1]   28/17

such [5]
17/20 19/2
24/19 26/14
29/8

sufficient
[1]   25/11

sufficiently
[1]   31/14

suggestive
[1]   6/11

Suite [1]
1/17

summarize [1]
17/9

Summerfield
[1]   29/7

supplement
[3]   5/19

17/7 23/12

supplemental
[4]   2/22
3/2 22/11
23/12

supporting
[2]   24/19
27/19

supports [2]
8/6 32/14

supposed [1]
31/6

supremacist
[5]   9/5
16/15 29/21
30/13 31/25

sure [5]
2/13 10/24
16/8 16/18
29/23

survival [1]
14/20

suspected [1]
21/1

suspend [1]
35/25

swastikas [2]
16/13 30/2

symbol [5]
16/13 19/20
19/23 30/8
30/10

symbols [2]
16/15 30/2

system [4]
9/6 9/7 9/22

29/22

# T

table [1]
5/22

take [7]
3/11 3/14
9/25 18/23
19/6 21/14
22/3

taken [2]
7/23 21/2

talk [2]
19/22 33/12

talking [3]
7/16 10/14
17/15

talks [1]
15/17

TARA [2]
1/13 2/17

tasks [1]
26/19

tattoos [19]
9/12 9/15
14/21 14/21
14/23 14/24
15/2 15/3
15/5 16/11
16/11 16/12
16/19 17/1
17/2 21/7
21/9 30/1
30/3

taut [1]   7/2

technological
[1]   37/7

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 70 of 75

T

**teleconferenc
e [1]**   35/2
**tell [1]**
  19/16
**tendered [1]**
  33/24
**Tenth [2]**
  8/6  26/12
**term [1]**
  24/17
**text [1]**
  26/14
**than [6]**
  7/24  13/4
  28/9  30/4
  34/4  35/1
**thank [19]**
  2/20  9/24
  10/20  16/5
  19/4  19/4
  21/13  21/25
  22/6  22/10
  34/2  34/15
  35/14  35/18
  36/4  36/6
  36/8  36/9
  36/11
**that [294]**
**that's [13]**
  5/1  6/12
  12/5  13/2
  13/3  13/17
  16/19  16/23
  19/11  19/21
  21/3  21/11

21/24
**their [3]**
  13/1  19/1
  27/9
**them [3]**
  13/7  14/19
  21/10
**then [17]**
  3/10  3/11
  4/6  4/6  10/5
  10/11  10/15
  11/12  12/11
  13/15  17/6
  19/13  19/15
  21/16  22/23
  23/8  34/19
**theory [1]**
  10/5
**there [37]**
  3/5  3/23
  3/23  4/1  4/3
  4/5  5/25  6/3
  8/5  8/17
  8/21  9/9
  10/11  10/16
  11/8  12/9
  12/16  12/23
  13/21  15/1
  15/4  18/13
  18/15  18/18
  19/1  19/5
  20/13  20/13
  25/22  26/20
  27/21  31/6
  33/6  33/10
  35/2  35/4

35/8
**there's [23]**
  3/20  4/19
  6/9  6/18  7/1
  10/10  11/8
  11/10  12/9
  12/11  12/21
  14/14  14/16
  14/17  15/23
  15/25  16/1
  18/8  18/9
  19/15  26/1
  26/3  32/14
**therefore [9]**
  24/10  25/1
  25/17  27/1
  28/23  31/20
  32/8  32/20
  37/7
**these [4]**
  9/25  12/23
  17/1  32/10
**they [6]**
  17/14  30/3
  34/9  34/18
  34/19  34/25
**they're [2]**
  20/1  34/16
**thing [2]**
  12/19  35/6
**things [2]**
  15/16  15/16
**think [22]**
  2/21  4/12
  8/8  9/25
  10/1  11/9

# T

think... [16]
  12/23 13/8
  19/10 19/21
  19/23 23/24
  24/12 25/24
  29/18 30/6
  33/2 33/12
  34/8 34/15
  34/21 34/24
thinking [1]
  33/11
third [7]
  7/16 10/11
  22/17 23/20
  26/9 30/21
  31/20
this [52]
THOMAS [2]
  1/5 2/3
Thor's [3]
  16/22 19/18
  30/7
Thor's-hammer
  [3]   16/22
  19/18 30/7
those [18]
  5/6 7/25
  9/15 14/11
  15/2 16/12
  16/14 16/14
  16/17 20/16
  21/12 26/18
  26/23 28/7
  33/12 34/19
  34/22 34/25

though [1]
  11/15
threat [1]
  32/7
three [1]
  23/12
threw [1]
  28/17
through [2]
  28/14 35/19
throwing [1]
  15/16
thus [2]
  28/8 31/13
tie [1]   29/8
ties [1]
  29/7
time [4]   4/5
  11/16 19/25
  21/2
times [1]
  14/8
today [5]
  2/21 22/12
  29/18 33/11
  36/3
today's [1]
  36/1
together [3]
  3/9 32/24
  35/1
told [1]
  31/7
tolled [2]
  35/12 35/19
tolling [3]

35/7 35/8
  35/16
took [1]
  19/2
transcript
  [4]   1/9
  14/25 16/10
  37/3
transition
  [1]   28/11
traveled [2]
  20/2 25/15
traveling [1]
  17/18
trespassed
  [1]   28/2
trial [13]
  8/18 11/12
  15/8 32/8
  32/19 32/22
  34/14 35/8
  35/12 35/16
  35/17 35/19
  36/1
tried [4]
  14/10 15/25
  18/22 21/7
trigger [1]
  6/18
triggered [1]
  20/8
triggers [1]
  26/16
true [2]
  10/25 37/3
try [1]

# T

try... [1]
  20/24
trying [1]
  34/17
Tuesday [1]
  1/5
turn [2]
  3/10 26/6
two [12]   2/4
  6/15 6/20
  7/15 7/22
  9/18 9/19
  9/19 10/10
  10/22 14/6
  35/1
two-step [3]
  6/15 6/20
  10/10
tying [3]
  7/2 7/2 15/2
type [1]
  16/22

# U

U.S [8]
  22/15 22/17
  22/19 22/21
  22/23 23/8
  28/4 32/11
U.S.C [2]
  17/23 18/1
ultimate [1]
  13/19
ultimately
  [2]   24/12

25/3
unaffiliated
  [1]  14/12
under [43]
understand
  [3]  19/15
  32/25 34/9
understanding
  [3]  8/16
  14/7 19/19
understood
  [1]  12/6
undertaking
  [1]  25/16
undisputed
  [2]  9/4
  9/20
Unforgiven
  [2]  16/16
  29/20
UNITED [11]
  1/1 1/3 1/10
  1/14 1/19
  2/3 2/8 2/18
  20/8 22/22
  24/23
unknown [1]
  28/17
unlawfully
  [1]  31/15
unmute [1]
  10/19
unpublished
  [2]  8/6
  26/12
unquote [1]

14/12
unreasonable
  [1]  32/16
unreviewable
  [1]  4/17
until [4]
  13/7 20/23
  35/8 35/12
up [6]   3/13
  5/12 6/15
  9/18 22/5
  35/21
updates [1]
  35/3
upon [1]
  32/10
urges [1]
  24/16
us [5]   19/16
  27/7 33/2
  33/12 34/9
used [1]
  17/20
user [1]
  30/16
uses [1]
  30/16
using [1]
  20/11

# V

vacate [3]
  2/23 23/9
  28/20
vein [1]
  18/5
verify [1]

Case 1:23-cr-00229-CJN   Document 12-1   Filed 07/11/23   Page 73 of 75

**V**

verify... [1]
  25/13
versa [1]
  26/25
versus [1]
  2/3
very [7]
  2/20 9/8
  10/20 17/21
  21/9 21/10
  29/16
vice [1]
  26/25
video [2]
  2/15 2/19
videoconferen
ce [3]   1/9
  21/23 36/12
view [4]
  7/23 24/12
  25/19 27/5
Viking [1]
  21/5
violation [4]
  22/15 22/17
  22/18 22/20
violence [6]
  9/7 27/17
  28/13 28/19
  31/22 31/25
violent [8]
  9/21 15/24
  22/17 27/20
  27/21 29/17
  29/20 29/25

vs [1]   1/4

**W**

wait [2]
  11/13 20/23
waive [1]
  10/6
waived [1]
  17/5
waiver [4]
  10/10 10/21
  12/9 12/21
want [9]   3/8
  5/23 8/24
  10/22 16/9
  19/11 21/14
  33/1 34/16
wanted [3]
  8/19 19/22
  21/7
wants [1]
  17/5
warrant [2]
  25/12 27/19
was [114]
washington
  [4]   1/4
  1/15 1/17
  1/21
way [3]   7/16
  12/22 28/3
we [50]
we'll [5]
  3/13 20/23
  21/17 22/3
  33/23
we're [6]

3/15 4/9
  18/18 21/19
  22/6 34/10
we've [1]
  10/14
weather [1]
  12/7
week [1]
  33/19
weeks [1]
  35/1
weigh [3]
  29/3 29/14
  30/20
weighs [3]
  28/23 31/20
  32/8
weight [2]
  30/21 30/22
well [16]
  2/13 2/19
  2/20 2/21
  3/20 5/5
  5/11 5/21
  6/14 10/20
  11/19 14/3
  18/13 18/18
  22/1 34/15
went [1]
  7/16
were [12]
  7/25 8/18
  11/12 15/7
  16/11 16/17
  19/7 19/12
  24/10 24/10

Case 1:23-cr-00229-CJN Document 12-1 Filed 04/11/23 Page 74 of 75

## W

were... [2]
 28/19 31/11
weren't [1]
 4/14
what [25]
 7/2 7/3 7/22
 10/17 10/17
 10/18 12/18
 13/4 13/25
 15/8 16/9
 16/19 17/10
 18/23 18/25
 19/11 19/12
 19/22 21/11
 22/3 26/15
 26/17 30/11
 34/16 34/22
what's [1]
 3/9
whatever [3]
 15/22 15/23
 34/25
when [12]
 4/6 6/19
 16/21 21/17
 22/4 23/22
 24/6 24/14
 26/9 30/6
 31/2 31/9
where [11]
 2/21 7/5 7/8
 10/8 11/12
 14/10 15/12
 18/22 27/8
 28/1 33/13

whether [49]
which [18]
 2/21 3/2
 5/24 7/13
 13/21 15/12
 17/22 21/4
 26/19 27/4
 27/7 29/11
 30/7 31/7
 31/19 33/7
 35/2 36/2
while [6]
 9/5 9/17
 13/24 14/8
 28/4 29/19
white [7]
 9/5 16/15
 16/23 29/20
 30/8 30/13
 31/25
who [5]  7/23
 20/9 30/11
 30/12 30/16
whole [1]
 8/23
why [15]
 3/17 5/3 5/8
 6/10 7/25
 8/16 10/5
 10/6 11/10
 13/17 13/25
 19/12 20/12
 33/5 34/9
will [18]
 6/23 14/13
 16/2 17/20

 19/6 19/21
 21/15 22/4
 22/12 26/20
 32/7 32/22
 33/8 33/9
 35/1 35/2
 35/21 36/9
willing [1]
 31/14
wing [1]
 29/24
within [1]
 9/21
without [2]
 19/9 27/4
word [1]
 7/24
work [1]
 34/17
would [44]
wouldn't [1]
 5/8
wrap [1]  3/8
written [2]
 32/22 33/8

## Y

year [1]  2/2
years [5]
 9/18 9/19
 9/19 14/6
 25/14
Yes [6]  4/25
 9/1 17/16
 19/17 20/22
 22/2
yet [3]

# Y

yet... [3]
  33/17  33/24
  34/1
you [66]
you'd [5]
  8/20  8/23
  9/25  10/16
  19/16
you're [2]
  8/3  17/15
your [26]
  2/7  2/10
  2/17  5/12
  5/16  6/14
  8/2  8/23  9/1
  9/11  10/21
  13/8  14/3
  15/11  16/8
  19/17  20/22
  20/24  21/1
  21/24  22/2
  33/15  34/3
  35/6  36/8
  36/11
yourself [2]
  2/5  10/19

# Z

Zoom [1]
  15/23