UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,        )  Criminal Action
                                 )  No. 21-MJ-233
vs.                              )
                                 )
CLAYTON RAY MULLINS,             )  March 2, 2021
                                 )  1:12 p.m.
                Defendant.       )  Washington, D.C.
                                 )
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

<u>**APPEARANCES**</u>:

```
FOR THE UNITED STATES:    COLLEEN D. KUKOWSKI
                          U.S. Department of Justice
                          U.S. Attorney's Office
                          for the District of Columbia
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-2646
                          Email: colleen.kukowski@usdoj.gov


FOR THE DEFENDANT:        PAT M. WOODWARD, JR.
                          1783 Forest Drive
                          Annapolis, MD 21401
                          (202) 246-4679
                          Email: patmwoodwardjr@gmail.com


ALSO PRESENT:             ANDRE SIDBURY, Pretrial Services

Court Reporter:           Elizabeth Saint-Loth, RPR, FCRR
                              Official Court Reporter
```

*This hearing was held via videoconference and telephonically*
*in compliance with the COVID-19 pandemic*
*stay-safer-at-home recommendations and is therefore subject to*
*the limitations associated with the use of technology.*

Proceedings reported by machine shorthand,
produced by computer-aided transcripti

**Government Exhibit**

**3**

1:23-mj-00150

**P R O C E E D I N G S**

1          THE COURT:  The United States District Court for

2     the District of Columbia is now in session.  Chief Judge

3     Beryl A. Howell presiding.

4          Matter before the Court, Magistrate Judge Case

5     No. 21-233, United States of America versus Clayton Ray

6     Mullins.

7          Your Honor, for the record, pretrial agent

8     Andre Sidbury is joining us via telephone.

9          Counsel, please state your names for the record

10    starting with the Government.

11          MS. KUKOWSKI:  Good afternoon, Your Honor.

12    This is AUSA Colleen Kukowski for the United States.

13          THE COURT:  Good afternoon.

14          MR. WOODWARD:  Good afternoon, Your Honor.

15    Pat Woodward for Mr. Mullins who is joining us from

16    McCracken County Jail in Paducah, Kentucky via Zoom.

17          THE COURT:  All right.  Thank you.

18          So we just got in chambers some of the videotape

19    evidence that the government had submitted, I guess, today.

20    Sorry I'm a little late.  I wanted to make sure that I had

21    seen what the government had submitted for purposes of the

22    hearing today which did delay me a little bit.

23          Let me begin, Mr. Mullins, by asking you whether

24    you agree, after consultation with counsel, to participate

1  in this hearing remotely without being physically present in

2  the courtroom in D.C. today?

3  THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

4  THE COURT:  Could you speak up, please?

5  THE DEFENDANT:  Yes.  Yes, ma'am.

6  THE COURT:  All right.  Thank you.

7  You may be seated.

8  All right.  I would like to remind anyone

9  listening to this hearing over the public teleconference

10  line that, under my standing order 20-20, recording and

11  rebroadcasting of court proceedings including those held by

12  videoconference, as today's hearing is being done, is

13  strictly prohibited.  Violation of these prohibitions may

14  result in sanctions, including removal of court-issued media

15  credentials, restricted or denial of entry to future

16  hearings, or other sanctions that the presiding judge

17  believes is necessary.

18  All right.  So pending before me is the

19  government's motion for review and appeal of the magistrate

20  judge's release order in this case.  And I have reviewed the

21  complaint in the case, the defendant's response, the

22  government's motion for review, the government's

23  supplemental motion that was filed today, and videos; both

24  those cited by the defendant in his briefing, and also those

25  submitted by the government to chambers today.

```
1              All right.  So let me just start -- because it's
2     the government's motion, let me just start by posing a few
3     questions to the government here starting with the fact that
4     the government's -- I guess its original brief asking for
5     review, I can't remember which one; but it describes the
6     defendant as follows -- stating:  The defendant was not a
7     protester swept up in the swagger of a violent mob; he was a
8     violent instigator.
9              The government uses the word "violent" to describe
10    the defendant's conduct multiple times in the complaint in
11    its motion for review of the magistrate judge's release
12    order and in its supplemental filing submitted today.
13             But despite this frequent use of the word
14    "violent," nowhere does the government seek pretrial
15    detention because the defendant is charged with a crime of
16    violence, as defined in 3156(a)(4) of the Bail Reform Act.
17    I am a little puzzled by that absence.
18             When I got your supplemental filing today I
19    expected to see that, but I did not.  Why is that?  What's
20    going on here?
21             MS. KUKOWSKI:  Yes, Your Honor.
22             So the government's primary charge in this -- I
23    want say there are two primary felonies, but the one that we
24    would look at first is 18 U.S.C. 111.
25             18 U.S.C. 111 is divisible statute with three
```

1    separate categories of conduct within it.  And if the Court

2    were to take a categorical approach, I think two things are

3    clear.  I think the first level of conduct -- because the

4    statute does criminalize simple assault-type conduct would

5    not be a crime of violence.

6            The statute and the courts have also been clear

7    that violations of 111(a)(1) and 111(b), where there is a

8    use of a dangerous weapon, is -- categorically falls within

9    the crime of violence definition.

10           There is a gray, murky area to be frank, Your

11   Honor, I would submit, with respect to the felony conduct

12   that is in the middle of those two outer charges.  The --

13           THE COURT:  So why don't we start with are you --

14   this is -- 111 is a statute that has both felony and

15   misdemeanor penalties.  Are you charging this defendant

16   under 111 as a misdemeanor or a felony?

17           MS. KUKOWSKI:  As a felony, Your Honor.

18           THE COURT:  All right.  And so you are -- which

19   provision are you charging him under?

20           I thought it was -- I thought you were charging

21   him under 111(a)(1), for forcibly assaulting, resisting,

22   opposing, impeding, intimidating, or interfering with a law

23   enforcement officer while engaged in or on account of the

24   performance of official duties.

25           MS. KUKOWSKI:  Yes, Your Honor.

1          THE COURT:  So that is an act that involves the

2    physical contact with the victim of the assault or the

3    intent to commit another felony; here it would be the

4    interference with an official proceeding making it a felony.

5          So are you saying that under the categorical

6    approach that that is not a crime of violence?

7          MS. KUKOWSKI:  Your Honor, to be frank, I would

8    ask the Court -- if the Court wants further information --

9    for the opportunity to brief it a little bit more.  We are

10   looking at this and have received some conflicting guidance

11   on it.  I can cite to --

12         THE COURT:  Conflicting guidance on it from whom?

13         MS. KUKOWSKI:  Internal, within the Department of

14   Justice.

15         THE COURT:  Well, let me -- let me just put it to

16   you this way:  The government's relied solely -- despite the

17   use of violence and dangerousness in your briefing -- you've

18   only relied on 3142(f)(2), risk of flight or obstruction --

19         MS. KUKOWSKI:  Yes.

20         THE COURT:  -- for the detention hearing here, and

21   for detention at all.

22         So if I find that either one of those grounds is

23   not proven by a preponderance, then the Court's hands are

24   tied because the Court is not allowed under the Bail Reform

25   Act to invoke sua sponte -- like I can for risk of flight or

1    obstruction -- I can't invoke sua sponte the grounds listed

2    under 3142(f)(1) which would include a crime of violence to

3    trigger a detention hearing or detention at all, only the

4    government can move for detention on those grounds.

5          I mean, as the D.C. Circuit held in *U.S. v*

6    *Singleton*:  In order to detain the defendant pending trial,

7    first, a judicial officer must find one of six circumstances

8    triggering a detention hearing; that is a circumstance

9    listed in 3142(f), and that absent one of these

10   circumstances detention is not an option.

11         So just so the record is absolutely clear here --

12   and what you have confirmed is that the government is not

13   seeking detention here because this case involves a crime of

14   violence under 3142(f)(1)(A), but only -- and only the

15   government can make a motion under 3142(f)(1)(A) -- but only

16   under 3142(f)(2), correct?

17         MS. KUKOWSKI:  That is correct, Your Honor.

18         THE COURT:  All right.  So I -- and the government

19   is not willing to take the position here that the charge in

20   this case under 18 U.S.C. Section 111(a) which provides

21   penalties for forcibly -- forcibly -- that's a statutory

22   term:  Forcibly assaulting, impeding, and interfering with a

23   law enforcement officer -- meets the elements clause of the

24   crime of violence definition in the Bail Reform Act,

25   correct?

```
 1                MS. KUKOWSKI:  Correct.

 2                THE COURT:  And it's also the view that not only

 3    does Section 111(a)(1) not satisfy the elements prong of the

 4    crime of violence, but -- despite the statutory term

 5    "forcibly" in it -- it's the government's view that, or the

 6    government is not relying or even urging this Court to

 7    consider whether Section 111(a) satisfies the residual

 8    clause of the crime of violence definition in 3156(a)(4)(B);

 9    is that correct?

10                MS. KUKOWSKI:  Yes, Your Honor.

11                THE COURT:  And is that because of the cloud --

12    constitutional cloud that the Bail Reform Act -- or that

13    residual clause in the crime of violence has because of

14    recent Supreme Court jurisprudence?

15                MS. KUKOWSKI:  Your Honor, frankly, this one I

16    don't feel fully able to respond to that; and I can follow

17    up with supplemental briefing.

18                THE COURT:  Well, supplemental briefing -- excuse

19    me -- I have a defendant who is sitting in jail; he doesn't

20    want to wait for more supplemental briefing.

21                I take it, Mr. Woodward, you would object to that.

22                MR. WOODWARD:  Yes, I would, Your Honor.

23    Thank you.

24                THE COURT:  All right.  I mean, how long has

25    Mr. Mullins now been incarcerated waiting for this review?
```

1          MR. WOODWARD:  Almost a week.  He was arrested

2     last Wednesday, Your Honor.

3          THE COURT:  That's plenty of time for the

4     government to have figured this out, particularly since

5     January 6th.  Let me just say it's pretty surprising to me

6     that the government hasn't figured this one out.

7          I know that the Supreme Court cases, you know, on

8     residual clause in *Johnson, Dimaya*, even *Davis* -- I mean,

9     it's all certainly made clear that the residual clause is

10    unconstitutionally vague under the due process clause in

11    certain contexts.

12          The Supreme Court also made clear that the

13    residual clause is not unconstitutional in every context.  I

14    mean, if we just look at *Beckles* where the Supreme Court

15    concluded that use of a residual clause in a crime of

16    violence posed no constitutional problem in advisory

17    guidelines, and specifically said that the residual clause

18    was unconstitutional for vagueness in two contexts when it

19    defined criminal offenses or when it fixed the permissible

20    sentence for criminal offenses.  The guidelines did neither.

21          The Supreme Court said that residual clause in a

22    crime of violence under the advisory guidelines therefore

23    was not unconstitutional.

24          And the Second Circuit in *U.S. v Watkins* made it

25    clear that the residual clause for crimes of violence in the

1 | Bail Reform Act under 3142(f)(1) is not one of the two

2 | contexts where the residual clause is unconstitutional.

3 | Is the government prepared to talk about *Watkins*

4 | today?

5 | MS. KUKOWSKI:  No, Your Honor.  Not at this time.

6 | THE COURT:  All right.  So that makes my job

7 | fairly easy, doesn't it, Ms. Kukowski?

8 | Because if I find that the defendant's risk of

9 | flight here is not proven by a preponderance, and I find

10 | that obstruction is not established under 3142(f)(2), then I

11 | don't know what your grounds would be even to have a

12 | detention hearing; am I correct in that conclusion,

13 | Ms. Kukowski?

14 | MS. KUKOWSKI:  Yes, Your Honor.  Yes, Your Honor.

15 | THE COURT:  All right.  Is there anything else you

16 | would like to add?

17 | MS. KUKOWSKI:  Nothing further beyond our

18 | briefings.

19 | I can proffer a slight -- a bit more information

20 | regarding the defendant's conduct immediately preceding the

21 | events of January 6th, particularly with regard to some

22 | unusual financial activity that he had which I was

23 | finishing -- confirming the information, which is why it was

24 | not included in the briefings --

25 | (Simultaneous speaking.)

1    THE COURT:  Sure.  Go ahead.

2    MS. KUKOWSKI:  The government did receive

3    financial records for the defendant from FND Bank which

4    indicated that, on several days leading up to the

5    defendant's travel to the D.C. area, he traveled here on

6    January 5th with his wife.

7    Leading up to December 28th, December 30th,

8    December 31st, he made several large cash deposits in his

9    bank accounts in rapid succession; one on the 28th for

10   9,500; one on the 30th for 4,000; another one on the 30th

11   for $1600; one on the 31st for $3,980; and, then, one on the

12   31st for $6,000.  And, then, several days after he would

13   have returned from the D.C. area, he made two additional

14   cash deposits on January 13th:  One for $2500, one for

15   $3500.

16   And I would just submit to the Court that these

17   cash deposits were atypical and unusual for his normal

18   banking habits and call into question the fact that he may

19   or leads to the inference he was indeed planning for

20   something, particularly for his travel to the Washington,

21   D.C. area, and that --

22   (Simultaneous speaking.)

23   THE COURT:  But you have proffered no evidence

24   that Mr. Mullins is involved with any of the gangs who have

25   been involved in some of these January 6th events --

1    violently involved; is that correct?

2            MS. KUKOWSKI:  That is correct, Your Honor.

3            The defendant -- as far as we know, we have been

4    looking to -- has no public facing statements or social

5    media accounts by which to determine his -- if he is either

6    affiliated, loosely or otherwise or formerly, with any of

7    the more organized factions that we saw active on

8    January 6th.

9            THE COURT:  All right.  Well, let me just make

10   sure the record is clear on some points with the government.

11           You have pointed to a lot of video evidence; and I

12   have looked at all of it, both presented by the defendant

13   and by the government.

14           And in none of -- none of the footage that I have

15   seen -- and I don't see it anywhere in the government's

16   proffer -- that even though this defendant may have been

17   trying to get into the Capitol, you don't have any evidence

18   that he ever successfully entered the Capitol; is that

19   correct?

20           MS. KUKOWSKI:  That's correct, Your Honor.

21           We have evidence -- which was part of what was

22   submitted -- showing the defendant expelled as part of a

23   crowd out of a tunnel in the archway of the lower western

24   terrace.  The actual entrance to the Capitol that bars the

25   doors there are several feet back into that tunnel, so we

1    could not confirm whether or not he actually went in and

2    have not seen anything to indicate that he was able to

3    successfully enter inside of the building.

4        THE COURT:  Okay.  So let me just now turn to some

5    of the bases that the government points to for why I should

6    consider Mr. Mullins a flight risk and the government has

7    met its preponderance of the evidence standard to establish

8    that he is a fight risk.

9        So one reason you say he is a flight risk is that

10   when he was arrested he was driving a car registered to his

11   own dealership -- not to himself personally -- and he had a

12   firearm in the car.  And I am not sure what inference you

13   are asking the Court to draw from the fact that the car was

14   registered to his own dealership.

15       MS. KUKOWSKI:  It is saying, Your Honor, that

16   using the dealership vehicle for his own purposes is

17   inconsistent with the dealership licensing; and it would

18   enable him -- it is part and parcel of the conduct that we

19   have seen, including his traffic records, where he is

20   skirting a lot of rules and regulations requiring him to

21   register his vehicles and to generally abide by rules about

22   driving vehicles, and the like; and it just allows him to

23   further operate outside of regulatory requirements and,

24   frankly, to live off the grid, so to speak --

25       THE COURT:  I'm sorry.  I've always thought it

 1     might be a real perk of working at a car dealership that you

 2     might get to drive a different car home every night.  I

 3     mean, I really -- I find that inference that you are trying

 4     to draw just not persuasive.

 5          Also -- you also said that there was a firearm

 6     found in his car, but it was legally owned and registered to

 7     him; is that right?

 8          MS. KUKOWSKI:  That is correct.

 9          THE COURT:  So he was clearly complying with gun

10     registration laws, right?

11          MS. KUKOWSKI:  To the extent that he -- yes, Your

12     Honor -- did have a weapon that he was -- had a permit to

13     carry with him; so, yes, he was complying with the Kentucky

14     laws of firearm --

15          THE COURT:  Okay.  And the government also points,

16     as part of its serious risk of flight, to the fact that the

17     defendant is self-employed.  I am sorry, but I really don't

18     understand why self-employment points to a risk of flight.

19     Why would that be?

20          MS. KUKOWSKI:  I would say it is in conjunction

21     with everything else, Your Honor; where the defendant leads

22     a lifestyle where he is not beholden to anyone else and has

23     no accountability to anyone outside of himself or perhaps

24     his wife who we know did, in fact, travel with him to

25     Washington, D.C. for the events of January 6th.  And it is

1    part of this further removed world that he lives in where it

2    is extremely difficult to locate him.

3             THE COURT:  One could say that if you are

4    self-employed you really have to be at your place of

5    business and it ties you more to a particular location.  So

6    I think that's -- might I use -- might I say a clever

7    argument; but, really, I don't find that particularly

8    persuasive on the risk of flight.

9             You also say, on the risk of flight, that he

10   doesn't have any ties to the District of Columbia.  But

11   really, you know, in reviewing a motion for pretrial

12   detention, isn't the issue whether the defendant has ties

13   not to the charging jurisdiction necessarily, but the

14   strength of the defendant's ties to the community in which

15   he resides and where the defendant will be released pending

16   trial.

17            And this defendant appears to have lived in

18   Kentucky his entire life; he has a spouse of 20 years.  He

19   owns a business; he is active in his church.  Wouldn't the

20   government agree those are pretty strong ties to the

21   district where he resides?

22            MS. KUKOWSKI:  Yes, Your Honor.  We would agree

23   those are his ties to the community in Kentucky.

24            THE COURT:  All right.  And then your last point

25   to show a serious risk of flight is that this defendant now

1    faces a significant term of imprisonment.  But every

2    defendant charged -- almost every defendant I have seen

3    charged with offenses stemming from January 6th, if not

4    everyone -- many of them are charged with significant prison

5    terms.  When does that pose a serious risk of flight?

6              And particularly with respect to the January 6th

7    defendants who are the most similarly situated as a general

8    matter, the government hasn't sought pretrial detention in

9    every one of those cases even though many of them face

10   serious felony charges.  So how is that a serious risk of

11   flight just because he faces some serious jail time if

12   convicted?

13             MS. KUKOWSKI:  We -- the Court is correct in that

14   we have not been seeking detention in every case or, in

15   fact, in probably the majority of cases.

16             But I would submit that in this case, the

17   defendant -- because he is looking at multiple counts and

18   multiple charges of 111, and other felony offenses against

19   multiple different officer victims -- his exposure is more

20   significant than many others that we would see.

21             And I think it is his overall -- what we would

22   submit -- various distinguishing characteristics about the

23   way he went about his behavior on January 6th that

24   distinguishes him from others who have come to --

25             (Simultaneous speaking.)

1          THE COURT:  Yes.  But those distinguishing

2     characteristics are ones that go to dangerousness, right,

3     not ones that go to his risk of flight?  You are conflating

4     the two there, aren't you?

5          MS. KUKOWSKI:  Yes.

6          THE COURT:  Yes.

7          All right.  In addition to the risk of flight,

8     which you can tell I am not finding -- and I have tried to

9     tease out every single reason you have presented -- the

10    government has presented for serious risk of flight; I am

11    just not seeing that here.

12         So let's turn to the next and only other grounds

13    the government has asserted for detention here, and that is

14    that the defendant presents a serious risk that he will

15    obstruct or attempt to obstruct justice; and your primary

16    basis for that argument is that the defendant's underlying

17    conduct was obstructive on January 6th.

18         But isn't obstruction, in the context of

19    3142(f)(2), generally understood to refer to obstruction in

20    the case against the defendant by intimidating witnesses,

21    interfering with evidence in connection with the case now

22    before the Court?  It doesn't -- it doesn't refer to the

23    actual offense conduct, does it?

24         MS. KUKOWSKI:  That is correct, Your Honor; it is

25    with respect to the case before the Court and those involved

1     in the court.

2           But, here, I think the issue is that the case and

3     those involved in this matter are, in fact, law enforcement.

4     And it is circular; but we see from his conduct that his

5     conduct is assaulting law enforcement in trying to stop them

6     from going about their duties and their actions.  So I think

7     it does actually bear on his conduct that day on obstruction

8     going forward with this case itself when the Court thinks

9     about the witnesses and those -- the evidence and what would

10    be presented as a part of prosecuting this case.

11          THE COURT:  So is the government seeking detention

12    of every defendant charged under Section 231 or other

13    statutes for interference with certification of the

14    electoral votes by impeding law enforcement or creating

15    civil disorder?  I don't think it is because --

16          MS. KUKOWSKI:  I don't believe so, Your Honor.

17          THE COURT:  No.

18          So how is it that the government's position here

19    is that the obstructive conduct underlying the charged

20    offenses is sufficient to trigger a 3142(f)(2) obstruction

21    basis for detention when that same basis is not being

22    uniformly applied by the government at all?

23          MS. KUKOWSKI:  Again, I think it goes back to the

24    nature of his conduct that day.

25          His obstructive conduct wasn't simply pushing

1    aside one officer or pushing aside one barrier; but it was a

2    protracted course of conduct starting from just after 2 p.m.

3    through at least 4:30 p.m., and it's conduct that escalated

4    as he progressed forward in the day --

5         THE COURT:  Escalated violently.  Escalated

6    violently, and escalated to the point where, you know,

7    danger to the community is a real concern here; but that's

8    different from obstructive conduct, isn't it?

9         MS. KUKOWSKI:  Yes, Your Honor.

10        But again, like I said, I think what our concern

11   is is the fact that the violence and the danger there was

12   targeted at law enforcement amongst others who are part and

13   parcel of the case that would be prosecuted.

14        THE COURT:  All right.  The government, to support

15   its basis for detention of obstruction, also says that even

16   though the defendant has no adult criminal record he has a

17   history of traffic violations.  And it really is a stretch,

18   to my mind, how a speeding ticket or a parking offense

19   translates into clear and convincing evidence at all that --

20   or even a preponderance that the defendant is likely to

21   obstruct justice in this case.

22        Do you want an opportunity to persuade me

23   otherwise?  Parking tickets, really?

24        MS. KUKOWSKI:  Let me just submit -- what I would

25   submit, Your Honor, is they aren't parking tickets.  They

1    are multiple violations for things bearing from not wearing

2    seat belts to inappropriate reg- -- not having current

3    registration, to multiple tickets regarding speeding in

4    excess of 15 miles per hour.

5         And so the reason why I think it is notable is

6    because -- if the Court were to release the defendant, one

7    of the things he would have to agree to do is follow the

8    conditions that the Court sets for him.  But here we can see

9    he is not following and has a lengthy -- very lengthy -- a

10   long record of not following simple conditions for things

11   such as driving which is a quintessential part of every day

12   life.

13        So if he can't be expected to follow those

14   conditions -- which are in place not just for his own safety

15   but for those around him and on the road, I think there are

16   questions about whether or not he would abide by any

17   conditions that the Court would set for the safety of

18   others.

19        THE COURT:  Well, you're going back to

20   dangerousness and safety again, Ms. Kukowski.  And,

21   remember, that's different from obstruction, right, of this

22   case?

23        MS. KUKOWSKI:  Yes, Your Honor.

24        THE COURT:  All right.  Do you want to add

25   anything else before I turn to Mr. Woodward?

1          MS. KUKOWSKI:  Nothing further, Your Honor.

2          THE COURT:  Okay.  Mr. Woodward, would you like to

3     respond?

4          MR. WOODWARD:  I do not, Your Honor.

5          Thank you for making our argument.  I appreciate it.

6          THE COURT:  All right.  As I said, the

7     government's decision to rest its entire detention motion on

8     risk of flight and obstruction of justice in this case makes

9     this decision fairly easy.

10          The Court is ready to rule on the government's

11     motion to review the Western District of Kentucky magistrate

12     judge's decision to release the defendant pending trial.

13          On an appeal from a magistrate judge's order of

14     pretrial release, the district court must conduct a *de novo*

15     review, must do so promptly.  Under 18 U.S.C. Section

16     3145(a), the Bail Reform Act requires release of a defendant

17     prior to trial unless a judicial officer determines after a

18     hearing that no condition or combination of conditions will

19     reasonably assure the safety of any other person and the

20     community and the appearance of the defendant as required.

21          The government has the burden to establish that

22     the defendant poses a risk of flight or a risk of

23     obstruction by a preponderance of the evidence.

24          In determining whether any conditions of release

25     will reasonably assure the appearance of a person as

1    required, the Court must take into account the available

2    information concerning the four factors that are set out in

3    18 U.S.C. Section 3142(g).

4         But, in some ways, the Court only gets to these

5    3142(g) factors if the government has established the basis

6    for a detention hearing and detention under one of the

7    grounds listed in 3142(f)(1), which the government has not

8    here; and only the government is permitted to make a motion

9    and assert one of those bases for detention including the

10   fact that the case involves a crime of violence, or the

11   government has to show that the defendant presents a serious

12   risk of flight or obstruction of justice.

13        So it's not really clear if the Court finds that

14   neither risk of flight or obstruction of justice by this

15   defendant is satisfied by the government -- whether I really

16   need to even go through the 3142(g) factors because I can

17   tell you -- as you can tell from the questioning, I really

18   don't think that this defendant meets the requirements of a

19   risk of flight or obstruction of justice.

20        As to the risk of flight, as I have already

21   pointed out, this defendant has no criminal history aside

22   from traffic violations.  He has very strong ties to the

23   area in which he resides.  He has lived in Kentucky his

24   whole life, where his wife of 20 years lives.  He owns a car

25   dealership in the community, is an active member of his

1    church.  All of these factors suggest the defendant is not a

2    serious flight risk, despite the government's efforts to

3    show that he is, such that there is any reason for detention

4    here or to believe that certain reasonable conditions of

5    release wouldn't assure that he doesn't flee somewhere.  And

6    so -- you know, the government also really doesn't point to

7    the defendant's conduct on January 6th, like discarding or

8    concealing evidence, hiding his firearms -- nothing that

9    suggests that he poses a serious risk of obstructing justice

10   in this case.

11        While his conduct on January 6th was, to put it

12   mildly, obstructive with respect to the police -- it was

13   terribly troubling and dangerous to the police -- that, by

14   itself, doesn't meet the government's burden to show that

15   the defendant poses a serious risk of obstruction of justice

16   in this case or that he would attempt to threaten a

17   prospective witness or juror in this case.

18        So those factors not only weigh in favor of

19   release, if considered as part of the 3142(g) factors, but

20   because they haven't even been met here, and there is no

21   other basis on which this Court could even consider

22   detention because the government has made no motion for

23   consideration of the fact that he is charged with a crime of

24   violence, the Court finds that even though his conduct --

25   based on what I have seen -- shows a clear disregard for the

1  safety of others and, in particular, the two police officers

2  that were involved in the assault that he made by pulling

3  one of them by a leg down stairs where he was being beaten

4  until some of the rioters or good samaritans tried to move

5  him back up the stairs to the police line where the

6  defendant is pointing his hands saying -- as if to say:

7  Don't move him back to the police line, get him back to the

8  mob -- pushing that particular policeman by the head so he

9  wouldn't get back to the police line.  And the other police

10 officer -- oh my goodness -- who was flat on his back being

11 beaten, and this defendant was holding his leg so he

12 couldn't get up and couldn't get back to the police line --

13 I mean, it is frightening footage; but that's -- that's not

14 the basis for the government's detention here.  So the

15 government simply has not carried its burden to show by a

16 preponderance of the evidence the defendant poses either a

17 serious risk of flight or a serious risk of obstructing or

18 attempting to obstruct justice or threatening witnesses in

19 this case.

20      If the government had moved under 3142(f)(1),

21 relying on the defendant's being charged with a crime of

22 violence, under 18 U.S.C. Section 111(a)(1) and his

23 dangerousness to the community, pretrial detention would

24 likely be warranted; but only the government can so move,

25 and the government has not so moved.

1          In the absence of both that motion and an adequate

2    showing by the government that the defendant poses a risk

3    either of flight or of obstructing justice, the Court's

4    hands are tied.  This defendant cannot be detained pending

5    trial.

6          So upon consideration of the proffered evidence,

7    the statutory factors, the Court finds the government has

8    not met its burden of establishing by a preponderance of the

9    evidence that no condition or combination of conditions will

10   reasonably assure the appearance of the defendant and,

11   therefore, the government's motion is denied.

12         The magistrate judge's pretrial detention ruling

13   is affirmed.  The defendant will be released pending trial

14   subject to the same conditions that the magistrate judge

15   originally imposed.

16         Ms. Kukowski, what were those conditions; do you

17   know?

18         MS. KUKOWSKI:  Your Honor, I believe it included

19   GPS and home confinement.

20         I don't believe there is a written order, but I

21   can consult very quickly with a colleague.

22         MR. WOODWARD:  If I may, Your Honor, there is a

23   $100,000 unsecured bond, home curfew with work release --

24         THE COURT:  I will tell you that with respect to

25   the bond -- we actually don't do bonds in D.C.; it's just

1   too unfair.  So I will not impose a $100,000 bond; we don't

2   do that.

3          So what are the other conditions, Mr. Woodward?

4          MR. WOODWARD:  Thank you.

5          Location monitoring with GPS.

6          THE COURT:  And location monitoring so that he is

7   on -- does he have a curfew or is he on home detention?

8          MR. WOODWARD:  It is a home curfew but with work

9   release and the ability to go to church and medical and

10  legal visits.

11         THE COURT:  All right.  Well, let me just dictate

12  then what the conditions are going to be which are fairly

13  standard conditions.

14         I am glad, Mr. Woodward, you alerted me that there

15  was a bail bond condition because we don't do that; that

16  will not be imposed.

17         So the defendant must report to pretrial services

18  weekly by phone.  He must verify his address with pretrial

19  services.

20         He must surrender any passport and not obtain a

21  passport or other international travel document.  His travel

22  is restricted to the western district of Kentucky and the

23  District of Columbia for court purposes only.

24         He must avoid all contact, directly or indirectly,

25  with any person who is or may be a victim or witness in the

1    investigation or prosecution, with the exception of his wife

2    of course, who apparently was also in D.C. as part of the

3    mob on January 6th.

4           The defendant must not possess a firearm,

5    destructive device, or other weapon.  So I know he has

6    firearms; he is going to have to put those in safekeeping

7    someplace else.  I will not have him retain firearms in his

8    possession nor his wife; no firearms in the home, period, or

9    in his place of business.

10          The defendant must not use or unlawfully possess a

11   narcotic drug or other controlled substance defined in 21

12   U.S.C. Section 802 unless prescribed by a licensed medical

13   practitioner.

14          He will be restricted to his residence on a

15   curfew -- well, no.  Does he have a curfew, Mr. Woodward, or

16   is he on home detention, period, with exceptions?

17          MR. WOODWARD:  Might I say curfew, Your Honor.  I

18   don't have a specific time; but they were allowing for him

19   to obviously work and go to church.  And --

20          THE COURT:  All right.  So that's not a curfew.

21   He is going to be restricted to his residence at all times,

22   except for employment, education, religious services,

23   medical, substance abuse or mental health treatment,

24   attorney visits, court appearances, and court-ordered

25   obligations, or other preapproved activities by pretrial

1    services.

2          He must submit to location monitoring as directed

3    by the pretrial services office or supervising officer, and

4    comply with all program requirements and instructions

5    provided and must pay all or part of the cost of the program

6    based on his ability to pay.

7          As I've said, the defendant must report to

8    pretrial services by phone on a weekly basis.  He must also

9    report to pretrial services by phone any contact he has with

10   law enforcement as soon as possible after such contact, and

11   that includes arrests, questioning, and traffic stops.

12         He must report as soon as possible to pretrial

13   services any change in address, telephone, or employment

14   status.  The Court is to be notified of any violations of

15   this order.

16         Mr. Mullins, I want to remind you that your

17   presence is as required in court, and you will be advised

18   when next to appear; so please keep in close touch with your

19   counsel to make sure you know when that is.

20         I am also required to caution you about your

21   conduct during your release pending trial and of certain

22   penalties that could apply to you.

23         First, failing to appear in court as required is a

24   crime for which you can be sentenced to imprisonment.  If

25   you violate any condition of release, a warrant for your

1    arrest may be issued and you may be jailed until trial, and

2    you may also be prosecuted for contempt of court.

3            Committing a crime while on release may lead to

4    more severe punishment than you would receive for committing

5    that same crime at any other time.

6            And, finally, it is a crime to try to influence a

7    juror, to threaten or attempt to bribe a witness or other

8    person who may have information about this case, to

9    retaliate against anyone for providing information about the

10   case, or to otherwise obstruct the administration of justice.

11           Do you understand that, Mr. Mullins?

12           THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

13           THE COURT:  All right.  You may be seated.

14           All right.  Is there anything further to address

15   today from the government?

16           MS. KUKOWSKI:  Nothing further, Your Honor.

17           THE COURT:  And Mr. Woodward?

18           MR. WOODWARD:  No, Your Honor.  Thank you.

19           MR. SIDBURY:  Your Honor, this is Andre Sidbury

20   from pretrial services.

21           THE COURT:  Yes.

22           MR. SIDBURY:  So any conditions that you provided

23   to the defendant, he would have to be under the supervision

24   of the Western District of Kentucky; so you would have to

25   indicate that the defendant will be supervised there under

1    courtesy supervision.

2          In addition to -- you had indicated that you

3    wanted the defendant to call once a week; we have been

4    leaving that release condition up to the supervising

5    jurisdiction which we will -- we've indicated the defendant

6    would contact that agency as directed by the agency.

7          THE COURT:  All right.  I will make those changes.

8          Thank you very much.

9          MS. SIDBURY:  Thank you, Your Honor.

10          THE COURT:  All right.

11          All right.  With that, you are all excused.  Thank

12    you.

13          MR. WOODWARD:  Thank you.
          (Whereupon, the proceeding concludes, 1:58 p.m.)
14                    **CERTIFICATE**

15          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
16    transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
17    ability.
          PLEASE NOTE:  This hearing was held via
18    videoconference and telephonically in compliance with the
     COVID-19 pandemic stay-safer-at-home recommendations and is
19    therefore subject to the limitations associated with the use
     of technology, including but not limited to telephone signal
20    interference, static, signal interruptions, and other
     restrictions and limitations associated with remote court
21    reporting via telephone, speakerphone, and/or
     videoconferencing capabilities.
22          This certificate shall be considered null and void
     if the transcript is disassembled in any manner by any party
23    without authorization of the signatory below.

24    Dated this 6th day of April, 2021.

25    /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter