**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 1:23-cr-00229-CJN** |
| | ) | |
| **TAYLOR TARANTO** | ) | |
| | ) | |
| **Defendant** | ) | |
| ——————————————— | ) | |

<u>**DEFENSE REPLY TO GOVERNMENT'S RESPONSE TO DETENTION APPEAL**</u>

Taylor Taranto, through his undersigned counsel, respectfully submits this reply to the Government's response to his appeal of the Magistrate Judge's order detaining him pretrial, and renews his request for this Court to release him to return to his wife and family in Washington state. While the Defense has addressed most of the Government's contentions in its appeal, it is worth highlighting a few points here.

Notwithstanding the Government's hyperbolic characterizations of Mr. Taranto's alleged conduct and their persistent threat that they *may* levy additional charges, the key facts surrounding this case remain the same: Mr. Taranto, of no criminal history, honorable military service, and a stable home and support system in Washington state, stands charged with four misdemeanor trespassory offenses from two and a half years ago, as well as a non-violent D.C. Code gun licensure-related felony and misdemeanor – the latter two of which are arguably not properly before this Court. In this context, it is a true contortion of the Bail Reform Act to detain Mr. Taranto based on alleged "serious risk of flight" when Mr. Taranto has remained so plainly and publicly available, and it is the Government instead who failed to act for the last two and a half years. Furthermore, the Government has failed to undermine the soundness of the proposed release plan and its sufficiency in addressing any of the Court's potential concerns.

**I.      Mr. Taranto is Not a Flight Risk Nor a Danger to the Community.**

First, the Government in its response claims that because Mr. Taranto has openly critiqued governmental entities and concepts, he will not comply with the Court's orders; yet they point to no concrete evidence of this conjecture and Mr. Taranto's conduct suggests the opposite is true. Mr. Taranto is an honorably discharged veteran of the U.S. Navy who served in Iraq on behalf of this country, and who has repeatedly demonstrated respect for law enforcement. Immediately prior to his arrest, Mr. Taranto engaged politely with Secret Service employees and was open with them about the reasons for his presence. Mr. Taranto did not trespass nor go anywhere prohibited. While the Government suggests that Mr. Taranto "fled" the area where he was apprehended, it is Counsel's understanding that he merely continued down a hillside (on public property in Rock Creek Park) and stopped as soon as he was asked to by law enforcement at the bottom of said hill. Discovery reviewed by Counsel reflects that he was at all times respectful and compliant upon arrest. Lastly, at the time of his arrest, Mr. Taranto was not armed, he did not resist, nor did he make any threats.

While Counsel imagines much of the discussion during the upcoming detention hearing will focus on what Mr. Taranto allegedly said and did leading up to his arrest, Counsel strongly disagrees with the Government's selective characterizations of his conduct and speech. The Government attempts to paint a portrait of a threatening and dangerous man by taking Mr. Taranto's comments out of context, when in reality there is no connection between their cited examples and any concrete threats – the true reason the Government has yet to charge him with the same. Mr. Taranto has not threatened anyone directly and has never brandished a weapon

toward anyone. And the fact that the Government *did not* in fact recover a single explosive

shows that his speech is mere hyperbole – if that is in fact what he said at all.[1]

     Mr. Taranto, who considered himself a satirical reporter with an almost Jon Stewart or

South Park-esque dry humor (that he would openly admit often did not land), often attempted to

make jokes or double entendre references in an effort to discuss and explore certain conspiracy

theories and lines of thinking adjacent to January 6th and related events. This is why Mr. Taranto

so frequently cites to the First Amendment and the protection of free speech in his endeavors and

postings.

     The Government seems to suggest that just because Mr. Taranto appears to have left his

home in Washington state and traveled to DC—as he was lawfully permitted to do—and perhaps

at most decompensated while in DC, he should not be permitted to be free. However, to the

extent the Court has any concerns about purported erratic behavior,[2] those concerns can be

addressed by ensuring that continuing mental health treatment be a part of his release conditions.

Counsel has spoken with Mr. Taranto's psychiatric nurse practitioner in Washington, who

indicated that prior to coming to DC, Mr. Taranto enjoyed stability and a supportive environment

back in Washington state, where she stands ready to continue supporting him upon his return.

She also confirmed that Mr. Taranto is a part of the Puget Sound Veterans Administration

---

[1] As discussed in our appeal, Counsel and the Government have yet to review the alleged
"NIST" video, and thus Counsel fully contests its purported contents at this stage given the
number of initial public claims about this case that have later been revealed to be untrue.
[2] Counsel wishes to highlight the irony that the individuals that the Government cites to for
claims of Mr. Taranto's supposed erratic behavior are individuals known to frequent so-called
Freedom Corner whose own inane behavior has made headlines and involved harassing police
officers in this very courthouse. *See* e.g. Reilly, Ryan, "A Jan. 6 Participant has Been Harasssing
Police Officers at a Capitol Attack Trial," NBC News, Aug. 18, 2022 (available at
https://www.nbcnews.com/politics/justice-department/jan-6-participant-harassing-police-
officers-capitol-attack-trial-rcna43413) [last accessed August 2, 2023].

Medical Center, which offers a wide range of services from inpatient, intensive outpatient, to home telehelp for PTSD and other mood disorders. It makes sense to include a requirement to engage with these services as part of his release plan, and Mr. Taranto is fully on board with the same.

> **II.     Mr. Taranto Has Always Remained in Plain Sight and Should Not be Penalized for Law Enforcement's Failure to Act for Over Two-and-a-Half Years.**

The Government repeatedly attempts to characterize Mr. Taranto as difficult to find in order to bolster their claim that he is a "serious risk of flight," claiming his "lack of fixed address frustrate[ing] efforts to find him." Yet these claims strain credulity, particularly given the miniscule amount of time that elapsed between the issuance of an actual arrest warrant for Mr. Taranto (at approximately 10 a.m. on June 29, 2023), and his actual arrest (barely two hours later the same day at 12:16 p.m.). In the interim, he did not hide from law enforcement, but instead continued livestreaming on his public platform, sharing his location and engaging openly with law enforcement. Further, despite the Government's claims that they made efforts to locate him earlier, discovery reviewed by the defense only documents one law enforcement attempt to drive-by the DC jail where Mr. Taranto's van had previously been seen on June 27, 2023, at which point it was not parked there, and one other drive-by in an area in Northern Virginia on June 28, 2023 – both prior to the issuance of an arrest warrant for Mr. Taranto.

In truth, the Government was in possession of substantial evidence of Mr. Taranto's presence at the Capitol for over two years—including admissions by Mr. Taranto himself that were posted publicly online—yet only began to look for him the day before the arrest warrant was issued. Up to that point and even thereafter, Mr. Taranto did everything in his power to show both his location and that he was available and amenable to arrest and accountability, including:

1) announcing on social media publicly as far back as June 2021 that he was at the Capitol; 2) generally livestreaming and posting publicly on various social media accounts for the last two and a half years; 3) contacting Congressional offices and identifying himself accurately to them in his attempts to obtain video footage that might exonerate him in the wrongful death civil lawsuit filed by Officer Jeffrey Smith's widow; 4) openly attending civil Co-Defendant David Walls-Kaufman's sentencing at DC District Court on June 13, 2023 and identifying himself to U.S. Marshals when questioned;[3] and 5) making admissions on the public docket in the civil lawsuit regarding January 6, 2021. Yet still law enforcement did not act.

In this context, the Government's actions—and moreso *in*action—with regard to Mr. Taranto and this case belie the hyperbolic assertions that Mr. Taranto is both a serious flight risk and/or dangerous. Mr. Taranto should not be faulted for their failures when he has remained in plain sight the entire time, and he should be released on the conditions proposed by the Defense.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Kathryn D'Adamo Guevara
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[3] *See* Exhibit A, Internal FBI Document reflecting encounter.