UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

TAYLOR TARANTO,

*Defendant.*

Criminal Action No. 1:23-cr-00229 (CJN)

## ORDER

On July 12, 2023, Magistrate Judge Faruqui ordered the pretrial detention of Defendant

Taylor Taranto, who is charged with four misdemeanor offenses for his actions on January 6, 2021,

and two felony firearms offenses incident to his arrest on June 29, 2023.  Indictment, ECF No. 15;

Minute Entry for July 12, 2023.  Taranto appeals that Order. *See* Appeal, ECF No. 19. Following

briefing and a hearing on the matter, the Court concludes that pre-trial detention is appropriate and

therefore denies Taranto's appeal.

### I.     Background

#### A.     Factual Background

On January 6, 2021, Taranto entered the United States Capitol at approximately 2:38 PM.

Gov't Resp. at 4, ECF No. 20.[1]  Video evidence, as the government puts it, shows Taranto

"mov[ing] through various areas of the building and ultimately arriv[ing] at the entrance to the

Speaker's Lobby around 2:42 [PM]." *Id.*  Around this time, another rioter attempted to jump

through a glass window and was shot by a United States Capitol Police Officer. *Id.*  After the

shooting, officers "arrived and began moving the crowd, including Taranto, toward the exits." *Id.*

---

[1] Except where noted, the Court finds that the government has established the following facts by
clear and convincing evidence. *See United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986).

at 4–5.  "Next to the exit, Taranto and multiple other rioters . . . scuffled with police officers."  *Id.*

at 5.  Taranto then left the Capitol building around 2:56 PM and remained on Capitol grounds for

some time on the East side of the building.  *Id.*

Since January 6, Taranto has made many public statements about his actions at the Capitol

and his views of that day.  On July 15, 2021, Taranto posted a Facebook video of himself stating,

"So we're in the Capitol building . . . legislative building . . . we just stormed it."  *Id.*  The caption

read:  "This is me 'stormin' the capitol' lol I'm only sharing this so someone will report me to the

feds and we can get this party rolling!"  *Id.*  Taranto also gave a two-hour video interview titled

"Exclusive Taylor Taranto talks about being on scene when Ashli Babbitt got shot" on June 17,

2023.  *Id.*  "During the interview, Taranto discussed being inside the Capitol on January 6 and

reviewed video footage of himself from that day and narrated what he was doing and what was

happening around him in the footage."  *Id.*  Taranto has continued to use "multiple types of media

platforms," including Facebook, YouTube, Truth Social, Parler, and Telegram, "to express his

thoughts on a wide-ranging number of topics, most of which were focused on January 6, a belief

that the 2020 election was fraudulent, and an endorsement of theories that 'QAnon' followers

promote."  *Id.* at 5–6.  And through these platforms, "Taranto explicitly stated that he does not

believe the United States Government is legal and does not believe that his home state of

Washington has a valid constitution."  *Id.* at 6.

Sometime in May 2023, Taranto returned to Washington, D.C.  The government contends

that Taranto traveled here "in response to Speaker of the House Kevin McCarthy's offer to produce

January 6 video."  *Id.*  According to videos posted to social media, Taranto was living out of his

van during this period.  *Id.*  In arguing that pretrial detention is warranted, the government focuses

primarily on six events, several of which are captured on video that the Court has reviewed. *See* Gov't Exhibit List (Exs. 1-A–3-C), ECF No. 22.

Freedom Corner.  The government alleges that Taranto was a "regular fixture" at the so-called "Freedom Corner," a location near the D.C. jail where supporters of detained January 6 defendants gather. *See* Gov't Resp. at 6–7.  As the government puts it, "[a]ccording to those that routinely gather there, Taranto was banned from the area for his offensive conduct toward other protestors." *Id.* at 7.

Piney Branch Elementary.  On June 18, 2023, Taranto used his YouTube channel to stream himself and several others at Piney Branch Elementary School in Takoma Park, Maryland. *Id.* Pursuant to a permit, Taranto and others used the school facilities to display a film related to the events of January 6. *Id.* at 7, 9.  On the livestream, Taranto explained that the location was chosen for its proximity to Congressman Jamie Raskin's home and stated that Raskin is "one of the guys that hates January 6 people, or more like Trump supporters, and it's kind of like sending a shockwave through him because I did nothing wrong and he's probably freaking out and saying shit like, 'Well he's stalking me.'" *See* Ex. 1-B.  Taranto further commented on the livestream "I didn't tell anyone where he lives 'cause I want him all to myself," and "[t]hat was Piney Branch Elementary School in Maryland . . . right next to where Rep. Raskin and his wife live." *Id.*

Payne Elementary.  On June 22, 2023, "Taranto was in his van parked outside of a second elementary school, Payne Elementary, located in Washington D.C. while an evacuation drill was conducted within the school." *See* Gov't Resp. at 8.  "As elementary students were brought outside, Taranto filmed the children and stated that they were 'being removed from school because there is a violent white supremacist out somewhere.'" *Id.*; *accord* Ex. 3-A.  He later commented

on the way the children were walking back into the school, remarking that it was unwise for the students to be walking together in a single route back.  Ex. 3-C.

Speaker McCarthy.  On June 27, 2023, Taranto allegedly posted a video to YouTube of a recording of a phone call with Speaker McCarthy's officer repeatedly asking to be granted access to certain video footage of the events of January 6.  Gov't Resp. at 8–9.  Then on June 28, 2023, Taranto posted a livestream to his YouTube channel from his parked van.  In this second video, Taranto allegedly "stated that his van was parked in Gaithersburg, Maryland" and he was headed to the National Institute of Standards and Technology.  *Id.* at 2, 9; *see also id.* at 2 n.3 (the government noting that NIST has a nuclear reactor on its property).  The government has proffered that Taranto made several quite concerning comments on this video, such as:

- statements that the van was "self-driving";

- a statement that he was "just going one way for this mission, to hell";

- a statement that though he had a "detonator," he did not "really need one for this";

- a statement that the van would only have to go straight, which he would accomplish with a steering wheel lock, and that he would not be near the van when it "goes off"; and

- a statement saying "Coming at you McCarthy.  Can't stop what's coming.  Nothing can stop what's coming."

*Id.* at 9.  The government has not submitted to the Court video of this incident, and Taranto disputes the government's proffer.  *See* Appeal at 19–20; Def.'s Reply at 3 n.1, ECF No. 21.

Kalorama.  On June 29, 2023, former President Trump "posted what he claimed was the address of Former President Barack Obama" on Truth Social.  Gov't Resp. at 9.  According to the government, Taranto "used his own Truth Social to re-post the address."  *Id.*  Then, on Telegram,

Taranto stated, "We got these losers surrounded!  See you in hell, Podesta's and Obama's." *Id.* at 9–10.

Soon after those posts, Taranto began livestreaming on YouTube from his van while he drove through the Kalorama neighborhood of Washington, D.C.—the same neighborhood in which former President Obama lives. *Id.* at 10; *see also id.* at 7 n.8.  Taranto parked his van on the street and began walking around the neighborhood, continuing to film, making several references to the Podestas and stating that he was trying to get an interview. *Id.*; *accord* Ex. 2-A. As the videos provided to the Court reflect, Taranto later explicitly noted that he was near the Obamas' home. *See* Ex. 2-B.

As the video also reflect, Taranto made numerous references to supposed tunnels beneath the houses, calling sewer grates "entrance points" and making other statements such as:

- "So if you go down there, there's obviously tunnels down there.  I don't know how close they'll get you to other accesses."

- "We're gonna find a way to the tunnels, underneath their houses."

- "We're looking for tunnel access so we can get the interview, in case they try to weasel their way out.  No in or out now!  See, First Amendment, just say First Amendment, free speech.  Free, it's free."

*See* Gov't Resp. at 10; *accord* Ex. 2-A, 2-B.

When Taranto first encountered the Secret Service, Taranto stated, "Hello, just trying to get an angle, for First Amendment, free speech.  Thanks.  That's Secret Service, she's alright." *Id.* He later stated, "I control the block, we've got 'em surrounded." Gov't Resp. at 11; Ex. 2-B.  And he made several further comments in the video referencing getting a "shot" and an "angle," such

as, "We're gonna see what we can get, as a shot.  If I were them, I'd be watching this, [watching] my every move."  Gov't Resp. at 10–11; Ex. 2-B.

Taranto eventually headed into a wooded area and walked toward Rock Creek Parkway.

<u>Arrest and Vehicle Search</u>.  Taranto was then arrested by officers who apprehended him near Rock Creek Parkway.  *See* Gov't Resp. at 11.  Officers located his van, which was parked nearby, and a canine unit alerted on the van for the presence of gunpowder.  *Id.* at 3, 11.  Inside the van, officers found two firearms and hundreds of rounds of ammunition.  *Id.* at 11.

On June 30, 2023, officers executed a search warrant on Taranto's vehicle and additionally found a machete and a steering wheel lock.  *Id.* at 4.  Officers also found indications that Taranto had in fact been living in the van, including a mattress, clothing, and personal items.  *Id.*

According to the government, "[l]aw enforcement records show that Taranto has 20 firearms registered to him."  *Id.* at 3.  Two were seized from Taranto's van.  *Id.*  The government does not have custody of the remaining 18.  *Id.*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

## B.     Procedural History

On July 12, 2023, a grand jury returned an indictment charging Taranto with one count of Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1); one count of Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code § 2506.01(b); one count of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); one count of Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); one Count of Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and one Count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See generally* Indictment.  The four trespassory charges are alleged to have occurred at the Capitol on January 6, 2021, while the two firearms charges are alleged to have occurred on June 29, 2023—the day Taranto was arrested in Washington, D.C.  *Id.*

On June 30, 2023, the day after his arrest, Taranto appeared before Magistrate Judge Harvey, who granted the government's oral motion for temporary detention pursuant to 18 U.S.C. § 3142(f)(2)(A) (Serious Risk of Flight).  *See* Minute Entry for June 30, 2023; Appeal at 1.

Thereafter, Magistrate Judge Faruqui held detention hearings in this matter on July 5, 6, and 12, and on July 12 granted the government's motion for pretrial detention.  *See* Minute Entry for July 12, 2023; SEALED Tr., ECF No. 23.  Magistrate Judge Faruqui determined that he did not think Taranto was a flight risk, *see* SEALED Tr. at 46:5–6, but did conclude that there was clear and convincing evidence that there is no set of conditions of release that would reasonably

assure the safety of any other person and the community, *id.* at 56:12–16.  *See* 18 U.S.C. § 3142(e).

He explained that although the risk of Taranto doing something to harm other persons or the

community might be low, the impact of what Taranto might do would be catastrophic.  SEALED

Tr.  at 53:11–13.  He came to this conclusion by considering the statements made by Taranto on

the videos, the firearms that were found in the van, his mental health history, and his military

training.  *See id.* at 50–56.

Taranto appealed that decision on July 27, 2023 and the Court held a hearing on that appeal

on August 7, 2023.  At the end of the hearing, the Court ordered the government to submit certain

video evidence for the Court's review, and ordered Taranto's counsel to submit a more concrete

mental health care plan that would apply if Taranto were released.  ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████

## II.    Legal Standards

A defendant must be detained before trial "[i]f, after a hearing . . . the judicial officer finds

that no condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  That

hearing is held "pursuant to the provisions of subsection (f)" of section 3142.  *Id.*

Subsection (f), in turn, provides that a "judicial officer shall hold a hearing to determine

whether any condition or combination of conditions . . . will reasonably assure the appearance of

such person as required and the safety of any other person and the community" upon a motion

from the government in a certain subset of cases, including felony firearm cases, *see id.*

§ 3142(f)(1)(E), or upon a motion from the government or the judicial officer's own motion in

cases that involve "a serious risk that such person will flee" or "obstruct or attempt to obstruct

justice," *see id.* § 3142(f)(2)(A)–(B).  To justify detention based on risk of flight, the government's

burden of proof is preponderance of the evidence; for danger to the community, the government's burden is clear and convincing evidence.  *See Vortis*, 785 F.2d at 328–29.

To determine "whether there are conditions of release that will reasonably assure" the defendant's future appearance and the safety of the community, the "judicial officer shall . . . take into account the available information concerning" the following four factors:  (1) "the nature and circumstances of the offense charged," including whether the offense involves a firearm; (2) "the weight of the evidence" against the defendant; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  *Id.* § 3142(g)(1)–(4).

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly."  18 U.S.C. § 3145(b).  "Neither § 3142 nor § 3145 specifies the standard of review to be applied by a district court reviewing a magistrate judge's release order or detention order, and 'the D.C. Circuit has not yet addressed the issue.'"  *United States v. Crestman*, 525 F. Supp. 3d 14, 23 (D.D.C. 2021) (quoting *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017)).  "Nonetheless, both the [Bail Reform Act] and the Federal Magistrates Act, 28 U.S.C. § 636, support the conclusion, reached by every circuit to have considered the question, that a district court reviews a magistrate judge's release or detention order *de novo*."  *Id.* (collecting cases).  The Court will do the same.

### III.     Analysis

To determine whether there is a set of conditions that would reasonably assure Taranto's

future appearance and the safety of the community,[2] the Court considers the four factors set forth

in section 3142(g).

### A.  Nature and Circumstances of the Charged Offenses

The first factor the Court must consider is the nature and circumstances of the charged

offenses.  Taranto faces six charges that vary in their seriousness.  Four are misdemeanors, while

two—Carrying a Pistol Without a License Outside Home or Place of Business and Possession of

a Large Capacity Ammunition Feeding Device—are felonies.  *See generally* Indictment.  Also

relevant under 18 U.S.C. § 3142(g)(1) is whether the offenses involve firearms; both charges under

the D.C. Code regard firearms and weapons.  *See* 22 D.C. Code 4504(a)(1); 7 D.C. Code

2506.01(b).  In addition, the time and place of the charged offenses raise their severity and suggests

that Taranto may be a threat to individual persons and the community.  The evidence demonstrates

that Taranto committed four of these offenses at the U.S. Capitol while a Joint Session of Congress

---

[2] Taranto argues that he cannot be detained based on dangerousness alone because the government moved for detention under section 3142(f)(2)(A) (Serious Risk of Flight).  *See* Appeal at 4.  This argument fails for several reasons.  First, and most importantly, the government has since raised an alternative basis for a detention hearing—that Count 1 is a "felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm."  18 U.S.C. § 3142(f)(1)(E).  Because Count 1 (Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1)) clearly falls within section 3142(f)(1)(E), the Court need not consider the flight risk question.  Second, the Court has already concluded in *United States v. Curzio*, 21-cr-41, that the statute requires (and at the very least authorizes) the Court to consider all four section 3142(g) factors, including dangerousness of the defendant, even when the detention hearing was originally sought under section 3142(f)(2)(A).  *See Curzio* Tr. at 26, ECF No. 12-1.  And finally, section 3142(e) requires the Court to detain Taranto if there is "no condition or combination of conditions will reasonably assure the appearance of the person as required *and* the safety of any other person and the community."  18 U.S.C. § 3142(e)(1) (emphasis added).  The statute therefore explicitly requires this Court to consider, at every detention hearing, whether there is a set of conditions that will reasonably assure the safety of the community.

was meeting to certify the results of the presidential election.  The other two charges occurred—intentionally—near the home of a former president, and while making repeated references to the former chief of staff.  Altogether, the nature and circumstances of the charged offenses—and in particular, Taranto's firearms offenses—weigh in favor of continued detention.

## B.      Weight of the Evidence

Turning to the second factor, the weight of the evidence against Taranto is strong—in fact, many of the key facts are uncontested.  For example, it is uncontested that there are videos of Taranto inside the Capitol, one of which he posted to the internet himself, explaining that he was "stormin' the Capitol."  Additionally, it is uncontested that Taranto has made many statements about his involvement on January 6, even giving a long interview about his presence inside the Capitol where he pointed himself out on video.  The fact that Taranto had firearms and ammunition in his van the day he was arrested—although allegedly in a locked bag, *see* Appeal at 2—is also uncontested.  Nor is it contested that when he was arrested, Taranto was purposefully near the former president's home.

Taranto is of course entitled to a presumption of innocence regarding his guilt.  And he may have some defense at trial that he has not yet asserted.  But the weight of the evidence before the Court is against the Defendant.  Overall, this factor weighs in favor of continued detention.

## C.      History and Characteristics of the Defendant

As to the third factor, the history and characteristics of the Defendant, there are facts supporting both the government's position and Taranto's position.  On the one hand, Taranto has no criminal history; he has a supportive family; and he has an honorable military record.  *See id.* at 6.  Before coming to D.C., Taranto successfully worked for many years with a mental health therapist and a psychiatrist through the Department of Veterans Affairs and was, according to their reports, doing well.  *Id.* at 12.  These facts weigh against detention.

On the other hand, the Court agrees with the government that Taranto's recent behavior is increasingly erratic. He left his family in Washington state to come to D.C., and although he asserts a lawful reason for coming here, the records reflects that he has spent his time taunting politicians, making concerning statements about explosives and violence, videotaping children outside of a school, and parking himself near a former President's home while in the possession of firearms and ammunition. Taranto also has military training and a history of PTSD and mental health issues that contribute to his potential dangerousness. Taranto has not contested the government's assertion that he has "openly stated that he does not acknowledge the legitimacy of the United States Constitution," which creates some concerns for this Court as to whether he would take instructions from this Court seriously. Of course, there is also evidence that Taranto would comply with federal directives, including his lack of criminal history and his military service. But based on the evidence at this stage, Taranto's history and characteristics—apart from the charged offenses and related conduct—suggest that detention is warranted.

### D.        Danger to the Community

The fourth factor "substantially overlaps with the ultimate question" of whether any conditions of release will reasonably assure safety. *United States v. Cua*, No. 21-107, 2021 WL 918255, at *5 (D.D.C. Mar. 10, 2021). Ultimately, the Court agrees with the government that Taranto has "clearly demonstrated his dangerousness [through] his increasingly erratic and disturbing words and actions." *See* Gov't Resp. at 19. Taranto's recent commentary about explosives, targeting of certain politicians, behavior outside a former president's home, mental health, military training, and access to firearms all contribute to the Court's determination (based on clear and convincing evidence) that Taranto poses a serious risk to others and the community.

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████ And

Taranto's job application to NIST, combined with the video Taranto posted about the same agency, suggest that Taranto took a concrete step towards these alleged violent plans. In light of this behavior, and the corresponding risk of grave harm, the Court cannot be confident that Taranto's mental health treatment proposal of either outpatient treatment or short-term in-patient treatment, *see* ECF No. 24, provides sufficient safeguards in light of Taranto's recent escalating behavior. Additionally, defense counsel represented to the Court at the hearing that Taranto was still speaking with his therapist by phone once a week while he was in D.C., yet Taranto's behavior continued to escalate. Given his recent behavior, there do not appear to be conditions of release that would prevent him from being a danger to the community, and this factor weighs heavily in favor of detention.

## IV. Conclusion

Upon consideration of the evidence presented, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds by clear and convincing evidence that defendant's pretrial release would constitute an unreasonable danger to the community, and the Court finds by clear and convincing evidence that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were Taranto to be released pending trial. Therefore, Taranto's Appeal, ECF No. 19, is **DENIED**, and it is **ORDERED** that Taranto shall remain detained pending trial.

DATE: August 14, 2023

CARL J. NICHOLS
United States District Judge