UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Cr. No. 23-229 (TJK) |
| | : | |
| TAYLOR TARANTO, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MOTION TO SUPPRESS

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), Mr. Taylor Taranto, through counsel, respectfully moves this Court to suppress at trial the items seized from Mr. Taranto's vehicle on June 29 and June 30, 2023 because that vehicle was subject to repeated unconstitutional searches, in violation of his rights under the Fourth Amendment of the United States Constitution. An evidentiary hearing on this motion is requested. Mr. Taranto also wishes to reserve any right to file supplemental pleadings in support of this motion following the evidentiary hearing.

### STATEMENT OF FACTS

Mr. Taranto's charges in this case stem from two distinct events—his alleged entry of the U.S. Capitol on January 6, 2021, and his possession of two firearms, a large capacity magazine, and additional ammunition on June 29, 2023. *See* Dkt. 15. This motion to suppress concerns the searches that led to the recovery of the firearms, magazine and ammunition from his vehicle on June 29, 2023 and other items located in his vehicle the following day.

On the morning of June 29, 2023, a magistrate of this Court issued a warrant for Mr. Taranto's arrest for four misdemeanor offenses based on his alleged illegal entry into the U.S.

1

Capitol on January 6, 2021. At some point prior, U.S. Capitol Police had released a law enforcement bulletin for Mr. Taranto based on comments he made in a livestream during which he at some point referenced the National Institute of Standards and Technology in Maryland.

At around noon on June 29, 2023, Mr. Taranto began livestreaming in the Kalorama neighborhood of Washington DC, apparently filming on streets near the house of a Secret Service protectee. Mr. Taranto then entered wooded property that is believed to be part of Rock Creek Park, continuing down the hill in the opposite direction. At approximately 12:16 pm, he was arrested exiting the woods pursuant to the warrant relating to January 6, 2021. No firearms, dangerous devices, or other contraband were located on his person. By approximately 12:58pm, Mr. Taranto was transported away from the scene and to the FBI field office.

Officers thereafter located Mr. Taranto's vehicle—a large van—parked lawfully at 2404 Kalorama Rd NW. Citing to purported concerns about potential explosives in the vehicle, MPD Explosives Ordinance Disposal (EOD) and FBI Special Agents Bomb Technicians (SABTs) conducted a protective sweep of the vehicle. According to government records, MPD Officer Williams Washington Jr. reportedly ran an EOD canine named Harley around the vehicle to search for the scent of explosives. According to the Government, MPD department policy does not require the use of a body worn camera (BWC) during a sniff-search for explosives because of concerns that the Bluetooth from the BWC could set off certain types of explosives. The Government has explained that as a result, there is no BWC footage of the sniff-search conducted by EOD canine Harley.[1]  However, police records and statements by law enforcement captured on BWC after the

---

[1] The government has provided BWC footage that depicts the search from a great distance, but it is too grainy to make out a clear outline of the dog.

search indicate that the dog did not alert to the presence of explosives in Mr. Taranto's vehicle.

Approximately 20-30 minutes later, a different canine (Trek) and MPD officer (a canine handler by the name of Boarman) arrived on scene. According to law enforcement reports, Trek has received training to detect firearms. Officer Boarman's BWC captured Trek's search. According to that footage, Trek walked around the vehicle once without alerting. Trek repeatedly made contact with the vehicle with his snout and paws during his sniff-search. During his second pass, Trek appears to first place a paw outside the drivers side door, then later placed both paws on the stepdown of the van, which according to the officers on BWC, is an indication regarding the presence of gunpowder.

At some point thereafter, based on purported probable cause provided by Trek's indication, SABTs Joshua Rothman and Epley searched Mr. Taranto's vehicle and discovered a locked backpack on the floor behind the driver's seat amidst other items. The FBI cut into that bag and discovered a pistol, rifle, magazines, and ammunition.[2]

The following day, the FBI obtained a search warrant for Mr. Taranto's vehicle based, in part, on the guns and other items found inside it. Pursuant to that search warrant, the government seized various electronic devices and other items that they may attempt to use to prove Mr. Taranto entered the U.S. Capitol on January 6.

On July 12, 2023, Mr. Taranto was indicted on charges of carrying a pistol without a license pursuant to D.C. Code § 22-4504(a)(1) and possession of a large capacity magazine pursuant to D.C. Code § 7-2506.01(b), along with four trespassory federal code misdemeanors from January

---

[2] To Counsel's knowledge, Counsel has not been provided any Body Worn Camera footage of the FBI's search, and thus this information is from written law enforcement records provided to the Defense in discovery.

3

6, 2021.

## ARGUMENT

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." "Few protections are as essential to individual liberty as the right to be free from unreasonable searches and seizures." *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018).

"It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)); *see also Arizona v. Gant*, 556 U.S. 332, 338 (2009). Where, as here, police officers act without a warrant, the government has the burden of showing their actions are constitutional under the Fourth Amendment. *See Jackson*, 415 F.3d at 92 (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967); *United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016); *Rouse v. United States*, 359 F.2d 1014, 1016 (D.C. Cir. 1966) ("[T]he police[] . . . have the burden of showing that a warrantless arrest was valid."); 6 Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(b) (4th ed. 2004) ("if the police acted without a warrant the burden of proof is on the prosecution").

For the reasons discussed below, all evidence obtained from Mr. Taranto's vehicle was the result of repeated unconstitutional searches. The government cannot meet its burden to show that the officers' actions in this case were constitutional. The evidence should therefore be

4

suppressed.

## I.     THE FIRST SNIFF-SEARCH WAS UNCONSTITUTIONAL.

The initial sniff-search of the vehicle by the first dog, Harley, was illegal. Although the Supreme Court has held that "[a] dog sniff . . . *that reveals no information other than the location of a substance that no individual has any right to possess* does not violate the Fourth Amendment," the dog sniff in this case was materially distinguishable and does violate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). Unlike a sniff search by a dog trained to detect only contraband, a sniff-search of a vehicle by a dog trained to detect lawful items in addition to unlawful ones is a search requiring probable cause. *See, e.g.*, *People v. McKnight*, 446 P.3d 397, 400 (Colo. 2019) (holding that sniff-search by canine trained to detect both marijuana (which had been legalized) and other drugs required probable cause); D.C. Police Complaints Board, Policy Report #21-3: Marijuana Trained Drug Detection Canines, https://policecomplaints.dc.gov/sites/default/files/dc/sites/office%20of%20police%20complaints/publication/attachments/Marijuana%20Detection%20K9%20Policy%20Recommendation.FINAL__0.pdf (discussing this case law and how jurisdictions that have legalized marijuana have phased out the use of dogs trained in detecting marijuana on the advice of their legal departments).[3] Separately, when the government trespasses onto a vehicle in order to obtain information, that intrusion violates the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 408 (2012). As a result, when a dog trespasses onto a vehicle during the course of its sniff-search, that also is also

---

[3] *See also Commonwealth v. Devoe*, 124 N.E.3d 706 (Mass. App. 2019) (unpublished) (holding that cases about drug sniffing dogs were not controlling but ultimately avoiding the question of whether a sniff by a dog trained in detecting firearms and explosives was a search); *United States v. Centeno-Gonzalez*, 989 F.3d 36, 47 (1st Cir. 2021) (similar).

a search requiring a showing of probable cause. *See, e.g., State v. Dorff*, 526 P.3d 988, 998 (Idaho 2023).

Defense counsel does not currently have access to clear body camera footage of the first sniff-search or discovery about the specifics of Harley's training.[4] However, based on what has been provided, it seems Harley was an explosives-detection dog, which are trained to detect scents that are not necessarily illegal. Furthermore, according to a statement by an officer captured on one of the BWCs, Harley "jumped" on the vehicle during his search. For those two, independently sufficient reasons, probable cause was required for his sniff-search.

That probable cause is absent here. Mr. Taranto was arrested for events that took place on January 6, 2021. The probable cause that supported his arrest cannot justify the sniff-search for explosives here because there has never been any suggestion—at the time or at any point since—that he possessed or used explosives on that day. *Cf. Centeno-Gonzalez*, 989 F.3d at 47 (police had probable cause to run a firearm-detection dog where the police had just arrested someone based on probable cause that he participated in a shooting).

The government may try to argue that the statements Mr. Taranto made during his livestream the day prior provided a justification for the sniff search under exigent circumstances. But the government has not proven that the officer who ran the sniff search—Officer Williams—was aware of those comments or had even seen the bulletin about Mr. Taranto. *Cf., e.g.*, *United States v. Hensley*, 469 U.S. 221, 231 (1985) (officers could rely on a bulletin produced by other officers when making the decision to stop the defendant).

---

[4] We understand the government to be seeking this discovery now pursuant to defense Counsel's request on September 14, 2023.

6

Plus, even if the Officer was aware of the livestream, Mr. Taranto's statements during it do not establish exigent circumstances. The government, in previous filings before this Court, has suggested that Mr. Taranto said his vehicle was self-driving, had a "detonator," and was "on a one-way mission to hell" at the NIST facility in Gaithersburg Maryland.  First and foremost, these statements are obviously not serious.  In the same video, Mr. Taranto jokes about loading "upgraded firmware" by a USB cable, when he is obviously using jumper cables to start an acquaintance's vehicle.

Additionally, even if taken seriously, the comments made by Mr. Taranto and the acquaintance appear to refer to the white vehicle belonging to the acquaintance visible in the livestream—which is nowhere to be found in Kalorama—and is not Mr. Taranto's black vehicle. Equally important, they reference a place—NIST in Maryland—not located near the Kalorama neighborhood. Therefore, even if all comments are incorrectly taken out of context as serious threats, the government had no probable cause to think that Mr. Taranto's vehicle contained explosives, making the sniff-search of his vehicle unconstitutional.

## II.   THE SECOND SNIFF SEARCH WAS UNCONSTITUTIONAL.

For similar reasons, the second sniff-search, this time by the firearm detecting dog Trek, was also a Fourth Amendment violation.  As a general matter, firearms are legal in certain circumstances in Washington, DC.  Indeed, possessing them and bearing them publicly is a constitutional right. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  Thus, the second sniff-search also required probable cause.

The BWC also shows Trek repeatedly brushing his nose up against the vehicle and putting his paws on the vehicle during the course of his sniff-search.  This separately qualifies the dog's

7

search as a Fourth Amendment search.  *See Dorff*, 526 P.3d at 998.

The required probable cause for Trek's sniff-search is missing here.  The government has never suggested that Mr. Taranto was armed on January 6, and so the probable cause that supported Mr. Taranto's arrest cannot support the sniff-search of his vehicle for firearms.

Exigent circumstances do not support this second sniff-search either.  As explained above, exigent circumstances did not support the initial sniff search of the vehicle.  But even if they had, those exigent circumstances dissipated after the EOD canine failed to alert to the vehicle.  Indeed, the video of the second sniff-search depicts officers that are relaxed and unhurried.

Notably, furthermore, Mr. Taranto was in no position to use any firearms in his vehicle at the time the second sniff-search was conducted.  Not only had he been arrested and the keys to his vehicle taken from him, but he was no longer on the scene at all.  By that time, he had been transported to the FBI's field office.  Indeed, one of the MPD officers on the scene for the second sniff-search tells the other officers that, by this point, Mr. Taranto was "locked up."

The second sniff-search was thus in violation of Mr. Taranto's rights and the fruits of the search of his vehicle that followed must be suppressed.

### III. THE WARRANTLESS SEARCH INSIDE THE AUTOMOBILE WAS UNCONSTITUTIONAL.

Even if both sniff-searches were lawful, the government still lacked probable cause to search Mr. Taranto's car.  First, an alert by a drug-sniffing canine can only provide probable cause to search if the government can prove that the canine is well-trained, reliable, and was not improperly cued by its handler.  *Florida v. Harris*, 568 U.S. 237, 346-48 (2013).  To date, the government has not provided evidence demonstrating that a canine can reliably detect firearms (typically made of metal) from inside an enclosed vehicle (also made of metal).  Nor, even if dogs

8

can reliably detect firearms as a general matter, has the government provided sufficient discovery demonstrating that Trek—the canine that purportedly alerted to the presence of a firearm—had adequate training to be reliable, or alerted in the manner consistent with his training. Similarly, the Government has also not provided evidence that his handler Officer Boarman had sufficient training and experience in handling canines generally and Trek in particular, beyond participation in a basic training course.

Plus, even if Trek was reliable, alerted as trained, and was not cued, his alerts still cannot provide probable cause to search Mr. Taranto's car because firearm possession is lawful in many circumstances, and the government has not suggested that its dogs can smell the difference between firearms that are lawfully possessed and ones that are not.

Thus, the firearms, magazines, and ammunition seized pursuant to the interior search of the vehicle must be suppressed.

## IV. THE SEARCH OF THE AUTOMOBILE PURSUANT TO A WARRANT WAS ALSO UNCONSTIUTIONAL.

Finally, the government's search of Mr. Taranto's vehicle on June 30, 2023, pursuant to a search warrant was also unconstitutional. The search warrant affidavit relied, in part, on the evidence obtained during the illegal search of Mr. Taranto's car the day before and that information contributed to the magistrate judge's decision to issue the warrant. *Compare United States v. Dawkins*, 17 F.3d 399, 408 (D.C. Cir.), *amended*, 327 F.3d 1198 (D.C. Cir. 1994) (suppressing evidence obtained pursuant to search warrant that "listed the weapons observed during the illegal reentry"); *with United States v. Glover*, 681 F.3d 411, 418 (D.C. Cir. 2012) (denying motion to suppress where the subsequent search warrant "did not rely on what the officers observed during their initial entry."). Thus, the electronic devices and other items seized pursuant to that search

must be suppressed as fruit of the poisonous tree.

## CONCLUSION

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion and in supplemental pleadings, and that this Court may deem just and proper, Mr. Taranto respectfully requests that the Court grant this motion and suppress the use of all physical evidence seized by law enforcement agents from his vehicle.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Courtney L. Millian
Assistant Federal Public Defender
Appellate Division
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500


Kathryn D'Adamo Guevara
Assistant Federal Public Defender
Trial Division
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500