**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 1:23-cr-229-CJN** |
| | : | |
| **TAYLOR FRANKLIN TARANTO,** | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SPPLEMENTAL BRIEF IN SUPPORT OF A MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this response to the defendant's supplemental brief regarding his motion to suppress evidence located during a search of the defendant's vehicle. ECF No. 39. On October 24, 2023, the Court conducted a suppression hearing on the defendant's motion. ECF No. 36. During the hearing, the government presented the testimony of Federal Bureau of Investigation Special Agent Bomb Technician Joshua Rothman and Metropolitan Police Department Officer David Boarman and offered Government Exhibits 1-7. The defendant did not present testimony but offered Defense Exhibits 1-7 and B-2, B-5, and B-7.

The parties now submit post-hearing briefing to supplement the briefs submitted prior to the hearing. The issues raised by the defendant's post-hearing brief (ECF No. 39) appear to largely mirror the issues raised in the pre-hearing brief. ECF No. 30. As a result, the government primarily rests on the arguments in its pre-hearing response. ECF No. 32. However, during the hearing, additional information was developed on two topics that the government will address in this response. First, the actions of Special Agent Rothman and Officer Boarman were undertaken at the direction of their superiors and based on collaboration between multiple police agencies, including the U.S. Capitol Police, the U.S. Secret Service, the Metropolitan Police Department,

and the Federal Bureau of Investigation.  Second, the government met its burden to prove that Officer Boarman's partner K-9 Trek was trained, certified, and his alert was reliable.

## SUPPLEMENTAL FACTS

The government incorporates by reference the facts contained in its pre-hearing response to the defendant's motion to suppress.  ECF No. 32.  The testimony elicited and exhibits received during the suppression hearing confirmed the facts as set forth in the government's pre-hearing response.  ECF No. 32.  In addition, the witnesses and exhibits provided the following supplemental facts.

Special Agent Rothman testified that he is a bomb technician with the FBI Washington Field Office.  ECF No. 36 at 6.  On June 29, 2023, he responded to Kalorama in Washington D.C. in response to a bomb threat, *id*. at 11, and was specifically instructed to respond by his supervisor Special Agent Aiden Garcia. *Id*. at 27.  Among information that Rothman received about the bomb threat was a bulletin from the U.S. Capitol Police admitted as Government Exhibit 1.  *Id*. at 15. Rothman further confirmed that since June 29, 2023, he has spoken with the investigator in this matter, FBI Special Agent Marc Gastaldo, and confirmed that the FBI and specifically SA Gastaldo were aware of and had viewed Government Exhibits 2 and 3 prior to the defendant's arrest. *Id.* at 21, 30.

Upon arriving in Kalorama, Rothman proceeded to the command post, which he described as an area a safe distance away from any hazards where decision makers meet to gather, exchange information, and make decisions.  ECF No. 36 at 36.  Rothman observed officers from multiple law enforcement agencies including the U.S. Capitol Police, the Secret Service, MPD, and FBI. *Id*. at 26.  Fellow bomb technicians Special Agent Epley (FBI) and Sergeant Byrd (MPD) responded as well.  *Id*. at 37.

Based on his training and experience as a bomb technician, Rothman described the process for responding to a potential bomb threat and the procedures that are used to render the hazard safe.  First, Rothman stated that bomb technicians will attempt to use "every non-obtrusive method possible" to assess the threat, ECF No. 36 at 60, which frequently involves assistance from a local agency to conduct a K-9 sniff.  *Id*. at 38.  In the present case, Rothman knew that two K-9s conducted sniffs of the defendant's vehicle; the "bomb dog" did not alert while the "firearm dog" did alert.  *Id.* at 39.  Rothman went on to explain that the difference between the two K-9 alerts did not surprise him, but merely changed the way the bomb technicians were assessing the vehicle as a threat.  *Id*. 41.  Rothman was clear that he still had safety concerns regarding the defendant's vehicle based on the K-9 alert by the firearm dog.  *Id.*  Rothman described the general procedure that the bomb technicians took to clear the defendant's vehicle of hazards which included (1) a visual inspection of the exterior, (2) a visual inspection of the interior, and (3) the physical review of all containers and places where a hazard could be located.  *Id*. at 47.  Rothman repeatedly testified that his role was to clear the vehicle of hazards and to render it safe for the investigation team.  *Id*. at 89.

Officer David Boarman testified that he is a police officer and K-9 handler with MPD and has been partnered with his dog, Trek, for approximately 2 years.  ECF No. 36 at 104.  Boarman stated that he and Trek have completed certification for the detection of smokeless powder, *id*. at 104, and that both he and Trek are tested and recertified every 6-weeks.  *Id*. at 106.  The pair has never failed a recertification.  *Id*.  Certification records and notes were admitted as Government Exhibit 5 and Defense Exhibit B-2.

On June 29, 2023, Boarman and Trek were called to Kalorama and directed to conduct a sniff of a vehicle by MPD Sgt. Jackson.  *Id*. at 113.  During the sniff, Officer Boarman walked

Trek around the vehicle almost two times and Trek alerted for the presence of smokeless powder twice by sitting down.  *Id.* at 117-118.  Officer Boarman provided Trek with a toy after the alert, *id.* 146, which was consistent with the training and certification that both Boarman and Trek received.  *Id.* at 153.

<u>**SUPPLEMENTAL ARGUMENT**</u>

**I.   PROBABLE CAUSE EXISTED TO SEARCH THE DEFENDANT'S VEHICLE PRIOR TO THE K-9 SNIFF.**

Law enforcement had probable cause to search the defendant's vehicle prior to the dog sniff conducted by Office Boarman and K-9 Trek.  Because the defendant does not raise new arguments on this point, and because the facts as set forth above and in the government's pre-hearing briefing amply established probable cause prior to the dog sniffs, the government rests on its discussion of probable cause contained in its pre-hearing briefing at ECF No. 32, Sections I and II.  If the Court agrees that law enforcement had probable cause to search the defendant's vehicle for evidence of a crime independent of K-9 Trek's alert, the defendant's remaining arguments are rendered moot.

**II.   IN ANY EVENT, A DOG SNIFF DOES NOT CONSTITUTE A SEARCH UNDER THE FOURTH AMENDMENT.**

In any event, even assuming that K-9 Trek's alert was necessary for probable cause, the defendant's claim fails because K-9 Trek's sniff did not constitute a search under the Fourth Amendment.  The Supreme Court has held that a dog sniff performed on the exterior of a person's vehicle is not a search under the Fourth Amendment.  *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).  The defendant's supplemental brief, ECF No. 39, raises no new arguments on this issue and cites no binding authority to the contrary.  The government therefore rests on the arguments contained in its pre-hearing briefing at ECF No. 32, Section II.A.

III.   **CONTRARY TO THE DEFENDANT'S ASSERTIONS, ROTHMAN AND BOARMAN ACTED PROPERLY ON DIRECTIVES FROM FBI AND U.S. CAPITOL POLICE.**

Investigators from U.S. Capitol Police and FBI had sufficient information to justify a search of the defendant's vehicle and their request for assistance to other agencies including Metropolitan Police and the FBI Bomb Squad was proper.  The defendant argues that Officer Boarman did not receive sufficient information from MPD Sgt. Jackson to conduct a sniff on the defendant's vehicle.  ECF No. 39 at 9.  The defendant further argues that the government has not provided enough information regarding Sgt. Jackson's basis of knowledge to support the K-9 sniff.  *Id.*  Even assuming *arguendo* that Officer Boarman needed probable cause to conduct a K-9 sniff, the defendant's argument focuses on the wrong officer.  The relevant inquiry is not Sgt. Jackson's basis of knowledge, it is the Capitol Police and the FBI's basis of knowledge that is controlling.

In general, when law enforcement assistance between agencies is requested, assisting officers are "entitled to presume" the requesting officer has a sufficient basis for the requested action.  *Whitely v. Warden*, 401 U.S. 560, 568 (1971).  "Where, however, the contrary turns out to be true, an otherwise illegal [action] cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers. . ." *Id.*  As this Court stated in *United States v. Williams*, "[a]n officer may act on a directive or request from another officers or agency."  507 F. Supp. 3d 181, 197 (D.D.C. 2020) (citing *United States v. Gorham*, 317 F. Supp. 3d 459, 470 (D.D.C. 2018)); *see also United States v. Devaugh*, 422 F. Supp. 3d 104, 113 (D.D.C. 2019).  In *United States v. Hensley*, the Supreme Court held that police officers could rely on a bulletin produced by other officers to arrest a criminal suspect.  469 U.S. 221, 231 (1985).  The Court explained, "when evidence is uncovered. . . in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who *issued* the flyer possessed probable cause to make

the arrest.  It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance." *Id*.  Therefore, the operative analysis should be focused on the bulletin issued by Capitol Police and the knowledge of the requesting FBI investigator.

Government's Exhibit 1 is a bulletin issued by the Capitol Police giving an overview of the basis for which they sought to arrest the defendant and to search his vehicle.  ECF No. 36 at 15.  Special Agent Rothman testified that the flyer was disseminated to law enforcement, that he himself received it, *id*., and that he was told to respond to Kalorama by his supervisor Special Agent Aiden Garcia to assist in his capacity as a Bomb Technician.  *Id.* at 23.  Special Agent Rothman further testified that he spoke to FBI Special Agent Marc Gastaldo who is the investigator in this matter and confirmed that Special Agent Gastaldo had observed the defendant's livestreams contained in Government's Exhibits 2 and 3.  *Id.* at 21, 30.  Special Agent Rothman further testified that multiple law enforcement agencies, including the Capitol Police, the Secret Service, MPD, and the FBI responded to Kalorama on June 29, and that a "command post" was established so that the decision makers could "meet and gather information to make decisions."  *Id.* at 36.

As a bomb technician, Special Agent Rothman stated it was "extremely common" in his training and experience for a local agency to assist with K-9 sniffs.  ECF No. 36 at 38.  This explanation is consistent with the testimony provided by Officer David Boarman who stated that on June 29, 2023, he too was called out to Kalorama for a K-9 sniff and directed by his supervisor to conduct a sniff of the defendant's vehicle.  *Id.* at 113.

The testimony of both Rothman and Boarman establishes two critical facts for purposes of applying the collective knowledge doctrine in this case.  First, it establishes that the Capitol Police and the FBI had probable cause search of the defendant's vehicle prior to the dog sniff.  *See* ECF

No. 32 at Section I.  Second, it shows that both Rothman and Boarman properly acted on directives from their respective commanding officers, based on that knowledge, to conduct a K-9 sniff and to clear the vehicle of hazards.  Therefore, the actions of both Rothman and Boarman were properly supported by the probable cause developed by the Capitol Police and the FBI.[1]

## IV.    K-9 TREK'S SNIFF WAS RELIABLE.

To the extent the Court finds that the K-9 sniff was necessary to establish probable cause to search the defendant's vehicle, the government has met its burden to establish that K-9 Trek's alert on the defendant's vehicle was reliable.  In *Florida v. Harris*, the Supreme Court provided a framework to establish the reliability of a K-9 sniff.  Specifically, the Court found that the government ordinarily meets its burden in showing a dog is reliable if the dog is properly certified. "A dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert."  *Florida v. Harris*, 568 U.S. 237, 246-47 (2013).  If a canine officer is so certified, it is incumbent upon the defense to come forward with evidence—either "by cross-examining the testifying officer or by introducing his own fact or expert witness"— disproving "the adequacy of a certification or training program," "perhaps [by] asserting that its standards are too lax, or its methods faulty."  *Id.* at 247.

In this case, the defendant did not call any witnesses.  He did not proffer any evidence, whether expert or otherwise, regarding the soundness of the certification program, the re-certification training, or the training methodology of Boarman and K-9 Trek.  The defendant now attempts to attack Trek's reliability for two reasons (1) that Trek receives a reward when he gives

---

[1] As discussed in the Government's prehearing briefing, Officer Boarman did not need probable cause to conduct a K-9 sniff on the defendant's vehicle.  Regardless, Officer's Boarman's actions were supported by the facts known to the U.S. Capitol Police and FBI at the time, which constituted probable cause.

a positive alert and (2) that, in the defense's view, Officer Boarman improperly "cued" Trek when he ordered Trek to detail the vehicle a second time and inadvertently brushed against the vehicle with Trek's leash.  ECF No. 39 at 13.

As to the defendant's first argument regarding the reward, the defendant has not provided any support for the assertion that providing a reward *after* his positive alert in this case tends to show that Trek was unreliable.  In fact, Officer Boarman explained that he and Trek were trained using the reward system, and that in providing Trek with a toy after a positive alert in the field, he was following the applicable protocols.  ECF No. 36 at 153-155.  Officer Boarman further explained that he and Trek are both retrained and certified every six weeks in a controlled environment to ensure that Trek is properly alerting and receiving rewards accordingly, and that Trek's work in the field (and related rewards) do not result in mis-training. *Id*. at 148-149.  The reasons behind this methodology are not at issue.  The defendant provided no evidence or testimony to dispute that the methodology of training a dog to alert by using a toy is improper or unreliable.

As to the defendant's second argument regarding "cueing," the record does not reflect that Officer Boarman cued Trek to give a positive alert.  The defendant argues that because Trek was walked around the vehicle a second time, the Court must necessarily infer that Trek was cued to alert.  However, this ignores Officer Boarman's testimony on this point.  First, Officer Boarman explained why he walked Trek around the vehicle a second time – it was because Trek was excited after being let out the squad car and was not properly detailing the vehicle.  ECF No. 36 at 116; *see also id.* at 138 ("Q. Why did you decide to run him again?  A. Because he was not detailing the seams on the first go-around.  He was not focused.").  Second, Officer Boarman did not adopt the defense's suggestion that directing a dog to re-search an area is, without more, considered

cueing.  To the contrary, in fact Officer Boarman specifically stated there are circumstances in which he will affirmatively have Trek re-search an area. *Id*. at 143.   Officer Boarman unequivocally testified that if Trek does not give a positive alert on a van, he would not continue to walk Trek around the van.  *Id.*  When asked by defense counsel if it were theoretically possible for a dog to be cued by telling the dog to re-search an area Officer Boarman responds, "I'm sure you could."  *Id*. at 143.  But the fact that directing a dog to "search something again" could, in some unspecified circumstances, possibly result in "cu[ing]" does not suggest that, in the circumstances presented here, Officer Boarman improperly cued Trek to alert.  As noted, Officer Boarman directed Trek to detail the defendant's vehicle a second time after—and because—Trek was unfocused the first time around.

The government has met its burden to establish Trek's reliability.  During the hearing, Officer Boarman testified that he and Trek had been partnered for approximately two years, that both he and Trek completed an 8-week initial certification program, that they are recertified every 6-weeks, that they have never failed a recertification, and that Trek is trained to detect the odor of smokeless powder.  ECF No. 36 at 104-106.  Government Exhibit 5 and Defense Exhibit B-2 contain certification and training information for Officer Boarman and Trek.  Under the framework established by *Harris*, Trek's alert is reliable.  Though Trek's alert was not necessary to establish probable cause, it nevertheless provided additional probable cause for Special Agent Bomb Technician Rothman to enter the vehicle and clear it of hazards.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the government's pre-hearing briefing, the defendant's motion to suppress should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    <u>/s/ Allison K. Ethen</u>
Colin Cloherty
D.C. Bar No. 1048977
Allison K. Ethen
MN Bar No. 0395353
Assistant United States Attorneys
601 D Street NW, Fifth Floor
Washington, D.C. 20530
E-mail: Colin.Cloherty@usdoj.gov
Telephone: (202) 815-8979

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel this 4th of December 2023.

<u> /s/ Colin Cloherty</u>
Colin Cloherty
Assistant United States Attorney