UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| v. | : | Cr. No. 23-229 (TJK) |
| | : | |
| **TAYLOR TARANTO,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

### SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO SUPPRESS

The government's supplemental opposition brief repeats many of its mistaken arguments from its previous briefing and so Mr. Taranto relies, in large part, on his responses in his prior briefing. He uses this reply to make several discrete points.

### ARGUMENT

1. **Trek's sniff search was unlawful and the guns recovered from Mr. Taranto's vehicle must be suppressed as fruits of the poisonous tree.**

For Trek's sniff-search to be lawful, it must be based on probable cause. *See* Taranto Reply 5-6. The government's supplemental brief claims that the probable cause supporting Trek's sniff search comes from collective knowledge. In particular, it says the relevant knowledge is based on "the bulletin issued by Capitol Police and the knowledge of the requesting FBI investigator." Gov. Supp. Opp. 6. The government, however, has fallen far short of establishing that collective knowledge applies.

1

First, the government failed to establish that Officer Boarman saw the Capitol Police BOLO, such that knowledge of the Capitol Police officers who wrote it could be imputed to him. *Cf. United States v, Hensley*, 469 U.S. 221, 231 (1985). In fact, Officer Boarman testified that he had not seen the BOLO. Tr. 130:19-22. Special Agent Rothman testified that he saw the BOLO. But he never testified that he directed Trek's search. In fact, he testified he never even observed it. Tr.60:1-2.

Second, the government offered zero proof at the suppression hearing about the supposed "requesting FBI investigator" it now relies on. The government never identified an investigator who requested the sniff-search, much less what that investigator knew or whether that knowledge added up to probable cause. The government could have called such a person. But it did not. Therefore, it has failed to meet its burden to establish that collective knowledge applies.

The government does not even attempt to support K-9 Trek's sniff search based on Officer Boarman's personal knowledge. Therefore, K-9 Trek's sniff search was illegal.

The subsequent search of Mr. Taranto's vehicle was based on the supposed probable cause supplied by Trek's sniff-search and subsequent alert. Agent Rothman testified that after he "learned of the results of the two K-9 sniffs," he concluded "there was still a significant concern to our safety" and so he "made the decision that we would actually go up and search the vehicle." Tr. 42:19-43:02. Specifically, he testified that he had his fellow officers "still had a level of concern *based on the gun dog alerting*." Tr. 41:14-15 (emphasis added).

The government claims that there was probable cause to search Mr. Taranto's vehicle before Trek's alert and so Agent Rothman's search can stand regardless of the propriety of Trek's alert. But Agent Rothman never testified to that effect, nor—importantly—did he say he would

2

have conducted the search even if Trek had not alerted.[1]  Therefore, the guns Agent Rothman found must be suppressed as fruit of the poisonous tree.

### 2. Mr. Taranto's rights were violated when Agent Rothman searched his vehicle without probable cause.

Even setting aside the issues with Trek's search, Agent Rothman's subsequent search of his vehicle was illegal because it too not was supported by probable cause.

Again, the government's efforts to rely on collective knowledge, though a closer case than with Officer Boarman, fail.  The government makes much, for example, of the fact that Agent Rothman saw the BOLO.  But that is not good enough.  First, Agent Rothman could not recall whether he saw the BOLO before or after he conducted his search, *See* Tr. 90:15-19, and a search "cannot be considered reasonable based on facts that were unknown to the officer at the time of the intrusion."  *Mendez v. Count of LA*, 815 F.3d 1178 (9th Cir. 2016).

Second, the BOLO was just, as its name suggests, a "Be On The Lookout" notice.  The government relies on the Supreme Court's case in *United States v. Hensley*, 469 U.S. 221 (1985), to support its argument that seeing a bulletin from another law enforcement agency can support a finding of collective knowledge.  Gov. Supp. Opp. 5.  But in that case, the bulletin actually told officers to "pick up and hold" the defendant. *Hensley*, 469 U.S. at 223.  From that, an officer could reasonably expect that the officer issuing the bulletin had probable cause for an arrest.  *Id.* at 230-31.  Here, nothing in the BOLO said anything about searching Mr. Taranto's vehicle.  *See* GX 1.  So, Agent Rothman could not have reasonably relied on it in conducting his search.

Agent Rothman testified at the suppression hearing about a conversation he had with Agent Marc Gastaldo in preparation for the suppression hearing.  But that does not prove collective

---

[1] The government argues that Agent Rothman was acting at the direction of others.  But it did not call anyone who testified that they would have directed Agent Rothman to act even if Trek had not alerted.

3

knowledge at the time of Agent Rothman's search. Notably, Agent Rothman did not testify that Agent Gastaldo told him anything *before* he conducted the search of Mr. Taranto's vehicle or even that Agent Gastaldo was the one who directed him to conduct the search. Therefore, Agent Gastaldo's knowledge at the time of search—whatever it was—cannot be imputed to Agent Rothman under a theory of vertical collective knowledge.

At best, the government is relying on the concept of horizontal collective knowledge, which posits that as long as officers are acting as a team and there is some minimal level of communication between then, their knowledge can be aggregated. *Gorham*, 317 F. Supp. 3d at 471. This theory has rightly been rejected in this Court. *See generally id.*

Furthermore, even assuming collective knowledge, the government has failed to prove that Agent Rothman had probable cause to search Mr. Taranto's vehicle for evidence of explosive hazards. Mr. Taranto rests on the arguments he previously made about why the livestreams he purportedly made previously were not enough to establish probable cause.

Trek's alert—even if it were legally obtained—does not salvage probable cause either. The government failed to establish that Trek's alert was reliable. Trek is not trained to detect detonators. Plus, Officer Boarman testified that in the field he gives Trek a reward when he gives his trained indication but not when Trek does not give his trained indication. Tr. 148:1-14. He also testified that he gave Trek the reward in this case *before* he knew whether Trek had found something. Tr. 148:14-23. To state the obvious, this risks training Trek to alert in the field all the time, even when nothing is present.

The government asserts that Officer Boarman "was following applicable protocols" when rewarding Trek in this fashion. Gov. Supp. Opp. 8. But Officer Boarman said no such thing, and Mr. Taranto doubts this is true. If true, it is alarming. It suggests that MPD officers are

4

systematically training dogs to alert in the field without knowing whether the alert the dog has given is accurate or not.

The government claims that Trek's recertification saves Trek's reliability. But it has failed to show that Trek is not being trained to learn one rule in the field and one in training. Had the government established that the conditions in training and the field were the same that would go a long way. But evidence from the suppression hearing suggests the opposite. Officer Boarman testified that in retraining there is a trainer that "piggyback[s]" or "walks behind" Officer Boarman and Trek. Tr.154:12-13. He did not testify that piggyback occurs in the field in the same way, and indeed there was no piggybacking during Trek's search of Mr. Taranto's vehicle.

On top of this, the government cannot establish that Trek was reliable because there is evidence suggesting Officer Boarman cued Trek. Officer Boarman testified that it was possible to cue a dog by asking them to search the same place twice. Tr.143:5-8. Officer Boarman also testified that he ran Trek around Mr. Taranto's vehicle twice. Tr.138:7-9.

The government makes much of Officer Boarman's testimony that Trek wasn't detailing Mr. Taranto's van closely on the first pass, which is why he asked him to search a second time. Gov. Supp. Opp. 9. At best, this establishes that Officer Boarman was not intentionally cuing Trek. However, dog handlers can cue dogs unintentionally. *See Florida v. Harris*, 568 U.S. 237, 247 (2013) (noting that officers can cue dogs unconsciously).

In sum, Trek's alert was not reliable. Agent Rothman's search of Mr. Taranto's vehicle was not supported by probable cause, and the guns he recovered should be suppressed.

## CONCLUSION

For the reasons stated above and in Mr. Taranto's previous briefing, Mr. Taranto respectfully requests that the guns recovered from his car be suppressed.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Courtney L. Millian
Assistant Federal Public Defender
Appellate Division
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500


Kathryn D'Adamo Guevara
Assistant Federal Public Defender
Trial Division
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
