UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAYLOR TARANTO,<br><br>    Defendant. | Crim. Action No. 23CR229 |

**MR. TARANTO'S MOTION TO DISMISS COUNT SIX**

  Mr. Taranto, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), moves this Court to dismiss Count Six of the Superseding Indictment, which charges him with False Information and Hoaxes, in violation of 18 U.S.C. § 1038(a). Count Six is unconstitutional under the First Amendment facially and as applied to Mr. Taranto.

  **I.**  **Relevant Background**

  On June 29, 2023, Taylor Taranto was arrested and charged by complaint with misdemeanor offenses arising out of his alleged participation in the events at the U.S. Capitol on January 6, 2021. Though he was initially charged with misdemeanor offenses, the government moved for pre-trial detention and detention was ordered under 18 U.S.C. § 3142(f)(2)(A)(risk of flight). The government's detention memo alleged that on June 29, 2023, Mr. Taranto was arrested in a wooded area near Rock Creek Parkway after law enforcement viewed "live stream" videos of Mr. Taranto from inside his van, posted a day prior to his arrest.

1

In the First Indictment filed in this case, the government did not charge any offense related to the live stream videos. In a Superseding Indictment, the government charged Mr. Taranto with False Information and Hoax (Hoax) in violation of 18 U.S.C. § 1038(a) for comments Mr. Taranto allegedly made in the live-stream videos on June 28 and 29, 2023. In the June 28 video, Mr. Taranto appears to be sitting in his van in car repair shop in Gaithersburg, Maryland. The video depicts Mr. Taranto engaging in a rambling, politically-tinged rant for approximately 90 minutes. During his post, he falsely claimed at one point that his car has a self-driving processor that is AI-enhanced. He also expressed that he has "been working on a detonator" but "doesn't really need one for this." One day later, on June 29, 2023, Mr. Taranto began livestreaming from Belmont Road, NW. In the 23-minute video, he referred several times to John and Tony Podesta and expressed he was looking for tunnel access to get an interview. He then parked his car and began walking on a trail, stating, "I'm outside Barack Obama's house." In the June 29 video, he did not say anything about a detonator. Around 3:15 p.m. that day, Mr. Taranto was arrested for various offenses arising out of January 6, 2021.

**I.   S**ection **1038 is Unconstitutional on its Face under the First Amendment.**

The Constitution mandates that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573 (2002) (citation omitted). Section 1038 is

unconstitutional under the First Amendment in this case for three reasons: 1) it is facially unconstitutional because it is not "actually necessary" to achieve its stated interests, 2) it is unconstitutional as applied to Mr. Taranto, and 3) it is facially overbroad because it prohibits a substantial amount of protected speech relative to its purported legitimate sweep.

### 1. Section 1038 is Unconstitutional on its Face under the First Amendment.

"[C]ontent-based restrictions on speech [are] presumed invalid" and the "Government bear[s] the burden of showing their constitutionality." *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 660 (2004). The Supreme Court has rejected a "free-floating test for First Amendment coverage" whereby free speech would only extend to "categories of speech that survive an ad hoc balancing of relative social costs and benefits." *United States v. Stevens*, 559 U.S. 460, 470 (2010). Rather, permissible restrictions on speech are generally limited to the few "historic and traditional categories long familiar to the bar." *Id.* at 468 (citations omitted). These historical exceptions include: advocacy intended, and likely, to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, "fighting words," child pornography, fraud, *true* threats, and speech presenting some grave and imminent threat that the government has the power to prevent. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012) (emphasis added).

In *United States v. Alvarez*, the Supreme Court found the Stolen Valor Act, 18 U.S.C. § 704, to be facially unconstitutional under the First Amendment. 567 U.S. at 709. The Stolen Valor Act criminalized falsely representing oneself as having received

3

a decoration or medal authorized for members of the United States Armed Forces. 18 U.S.C. § 704(b). Justice Kennedy, writing for a plurality, explained that the traditional categories of exceptions to the First Amendment do not include mere false statements. *Alvarez*, 567 U.S. at 718. The Court distinguished defamation and fraud, which include other elements, noting that "falsity alone may not suffice to bring the speech outside the First Amendment." *Id.* at 719. The Stolen Valor Act, though, "by its plain terms applies to a false statement made at any time, in any place, to any person. . . . And it does so entirely without regard to whether the lie was made for the purpose of material gain." *Id.* at 722-23. The plurality opinion, applying "most exacting scrutiny," found the Government could not meet its heavy burden to show that the restriction was "actually necessary" to achieve its interests—i.e., preserving the integrity of military awards. *Id.* at 724-25.[20] Since the *Alvarez* decision, courts around the country have struck down several criminal statutes directed broadly at false statements.[1]

Section 1038, likewise, fits none of the traditional categories of conduct exempted from First Amendment protection. The statute criminalizes "any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed" concerning a violation of various federal laws. 18 U.S.C. § 1038(a)(1). Like in *Alvarez*, the statute criminalizes mere falsity,

---

[1] *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016) (finding Ohio statute criminalizing false statements about political candidates unconstitutional); *281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014) (finding Minnesota statute criminalizing false statements about ballot initiatives unconstitutional).

applying to a "false statement made at any time, in any place, to any person" without consideration of whether it causes any harm or was perpetrated for material gain. *Id.* at 722-23. Section 1038, in fact, is even less narrowly drawn, prohibiting "any conduct" that is intended to mislead about a wide range of criminal behavior. The prohibited conduct does not constitute advocacy likely to incite imminent lawless action, or fraud, or a grave and imminent threat, or any of the other enumerated categories. *See Alvarez*, 567 U.S. at 717-18. There is no First Amendment exception for speech that causes emotional distress to listeners. *See Snyder v. Phelps*, 562 U.S. 443 (2011). "Before exempting a category of speech from the normal prohibition on content-based restrictions . . . the Court must be presented with 'persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription.'" *Alvarez*, 567 U.S. at 722 (quoting *Brown v. Entertainment Merchants Assn.*, 564 U.S. 786, 792 (2011)). There is no such long tradition proscribing that conduct prohibited by § 1038 should be an exempted category of speech.

Because § 1038 is not one of the historical exceptions to the First Amendment, it conflicts with free speech principles, and the Court must apply "most exacting scrutiny" to determine whether the statute is "actually necessary" to achieve its stated interests. *See Alvarez*, 567 U.S. at 725-26. The government can make no such showing. A statute is facially unconstitutional if "no set of circumstances exists under which [the statute] would be valid." *Stevens*, 559 U.S. at 472. In passing § 1038, Congress explained that hoaxes about terrorist attacks

> threaten the health and safety of the American public and the national security of the nation. Such a hoax is designed to instill fear in the public or its target and are a serious

5

> threat to the public's safety on many levels. First, such a hoax distracts law enforcement and military personnel from actual threats or actual emergencies and, in effect, assist terrorists. Second, these hoaxes often cause buildings and businesses to be evacuated and closed imposing costs on the economy and potentially endangering health.

H.R. Rep. No. 108–505, at 4 (2004). While these stated goals are, of course, legitimate, it is not clear how criminalizing "any conduct" intended to mislead about a litany of federal crimes is "actually necessary" to achieve them. The Court in *Alvarez* offered as an example, that "counterspeech" or refutation of misinformation could instead be used to achieve the government's purpose. *Alvarez*, 567 U.S. at 726-27. So too in Section 1038 cases, including the allegations against Mr. Taranto, the government could investigate the purported hoax and once it determined that it was, in fact, a falsity, remove the video from the public platform. Much of the most concerning and egregious conduct purportedly addressed by § 1038 can be (and frequently is) prosecuted under federal statutes outlawing certain threats or unlawful communications, *see* 18 U.S.C. § 875, mail and wire frauds, *see* 18 U.S.C. §§ 1341, 1343, or under the underlying predicate statutes. *See, e.g.*, 18 U.S.C. § 844(f)(1) (criminalizing destruction of or attempts to destroy government property by means of fire or explosives). Certainly, there could be challenges to combatting all hoaxes in this manner, but the burden is on the government to show that this statute is "actually necessary" to protect public safety. The government cannot meet its burden with respect to Section 1038. Accordingly, § 1038 is facially unconstitutional under the First Amendment, and the Court should dismiss Count 6. *See* U.S. CONST. amend. I; *Alvarez*, 567 at 725-26.

### 2. Section 1038 is Unconstitutional as Applied to Mr. Taranto.

Even if the Court finds that § 1038 is not facially unconstitutional, it violates the First Amendment when applied to the alleged conduct of Mr. Taranto. An "as-applied" First Amendment argument is a challenge to the restriction of a defendant's own specific expressive activity. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984). "The underlying First Amendment standard for an as-applied challenge is no different than the standard for a facial challenge." *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 798 (S.D. Tex. 2013) (citing *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)).

As discussed above, the Government cannot show that the statute is "actually necessary" to achieve its stated interest particularly as applied to Mr. Taranto's alleged conduct. *See Alvarez*, 567 U.S. at 725-26. Mr. Taranto made vague, demonstrably false, and patently incredible statements in the context of a politically-tinged rant. Therefore, his statements are distinguishable for the purposes of the First Amendment from true threats or statements made with malice. *See Watts v. United States*, 394 U.S. 705, 707-08 (1969); *United States v. Kelner*, 534 F.2d 1020, 1026-27 (2d Cir. 1976).

### 3. Section 1038 is Unconstitutionally Overbroad.

In addition to being facially invalid under *Alvarez*, and unconstitutional as applied to Mr. Taranto, § 1038 is unconstitutional on its face because it is overbroad. A "statute is facially invalid if it prohibits a substantial amount of protected speech."

7

*United States v. Williams*, 553 U.S. 285, 292 (2008). Generally, courts only "proceed to an overbreadth issue" if "it is determined that the statute would be valid as applied." *Serafine v. Branaman*, 810 F.3d 354, 362-63 (5th Cir. 2016) (quoting *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 484-85 (1989)). Unlike a typical facial challenge, where a statute is unconstitutional only if "no set of circumstances exists under which [the statute] would be valid," an overbreadth facial challenge requires the invalidation of a law "as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 472-73 (citations omitted). The "first step in the overbreadth analysis is to construe the challenged statute." *Id.* at 474. Statutes are overbroad even if the unconstitutional applications are hypothetical and never actually prosecuted by the government. *Seals v. McBee*, 898 F.3d 587, 598 (5th Cir. 2018).

Section 1038 criminalizes a shockingly broad range of conduct. The statute addresses "any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place what would constitute a violation" of several federal statutes. 18 U.S.C. § 1038(a)(1). As in *Alvarez*, the conduct is criminal regardless of the time, place, or context in which it is given, and regardless of the motivations or actual harm caused. *See Alvarez*, 567 U.S. at 722-23. Likewise, as in *Alvarez*, the statute would apply equally whether the statement was made in a public meeting or in "personal, whispered conversations within a home." *See id.* Moreover, other courts have held that the mens rea

8

requirement is limited under § 1038, and only requires that a defendant intend to convey false or misleading information, not that he or she specifically intend that it be believed. *See United States v. Castagana*, 604 F.3d 1160, 1163-65 (9th Cir. 2010). Therefore, a defendant could potentially violate the statute by sharing information known to be false, even if it is done as parody or otherwise without the intent to deceive people.

The conduct potentially criminalized by § 1038 includes joking or innocuous, albeit false, comments about terrorism or even illness. A person who lies to their boss about being home sick with a virus or disease could, in certain contexts, be deemed to have violated the statute. Spreading false gossip about somebody contracting an S.T.D. and engaging in reckless sexual practices could be a violation. The statute could also be used to criminalize parody and other artistic expression. The famous Orson Welles radio broadcast of "War of the Worlds," detailing a fictional alien attack, was clearly false information about an attack and was believed by many listeners. Filmmakers often produce works that purport to be found footage, like "The Blair Witch Project," or which blur the lines between scripted drama and documentary. If one of these programs depicted one of the enumerated crimes, the producers could be liable under § 1038.

Section 1038 prohibits a "substantial" amount of protected speech. The unconstitutional applications significantly exceed the intended and potentially "legitimate" applications, such as prosecuting actual, intentional threats. While *Alvarez* was not decided based on overbreadth, it is worth noting that § 1038 criminalizes a considerably broader category of conduct than the Stolen Valor Act.

Accordingly, § 1038 is facially unconstitutionally overbroad, and the Court should dismiss the Indictment. *See Stevens*, 559 U.S. at 473.

## Conclusion

For the reasons herein, Count Six must be dismissed because Section 1038 violates the First Amendment facially and as applied to Mr. Taranto.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


\_\_\_\_\_/s/_____
SHELLI PETERSON
COURTNEY MILLIAN
ELIZABETH MULLIN

Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500