IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 23-CR-229 (CJN) |
| | : | |
| TAYLOR TARANTO | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ELEVEN OF THE SUPERSEDING INDICTMENT

The United States respectfully opposes defendant Taylor Taranto's motion to dismiss Count 11 of the Superseding Indictment. ECF No. 56. In his motion, Taranto contends that Count 11, which charges that he "willfully and knowingly paraded, demonstrated, and picketed in a Capitol Building," violates the First Amendment and fails to state an offense. 40 U.S.C. § 5104(e)(2)(G). Earlier this year, in *United States v. Nassif*, 97 F.4th 968 (D.C. Cir. 2024), the D.C. Circuit considered and rejected both of Taranto's arguments. Because Taranto raises no new arguments, and because the appellate case law on these points is clear, the Court should deny the defendant's Motion to Dismiss Count 11.

### BACKGROUND

 A. *The January 6 Attack on the United States Capitol*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Michael Richard Pence presiding, a large crowd gathered outside the U.S. Capitol. "The mob [ . . . ] scaled walls, smashed

1

through barricades, and shattered windows to gain access to the interior of the Capitol," with the first rioters entering shortly after 2:00 p.m. *Trump v. Thompson*, 20 F.4th 10, 10 (D.C. Cir. 2021).

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. The siege of the Capitol lasted for several hours and represented a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in damage and losses.

### B.   *The Defendant's Conduct on and Subsequent to January 6. 2021*

On January 6, 2021, Taylor Taranto traveled to the United States Capitol and entered the restricted area of the United States Capitol Grounds. The Defendant subsequently entered the United States Capitol Building through a door on the Upper West Terrace at approximately 2:33 PM and remained in the building until he was forced out by uniformed law enforcement officers at approximately 2:57 PM. Inside the Capitol building, Taranto moved with crowds of rioters through the Rotunda and Statuary Hall.  At one point, he took out his phone and filmed himself, stating, "So we're in the Capitol building…legislative building…we just stormed it." He later posted the video to social media.  At approximately 2:42 p.m., Taranto stood with a crowd of rioters in the hallway near the Speaker's Lobby.  Around this time, a woman was shot and killed. Taranto filmed the incident and aftermath.  A large number of law enforcement officers responded to the area, forcing Taranto and the other rioters from the building. After being expelled from the building, the Defendant remained within the restricted area of the Capitol Grounds for some time, mingling with other rioters.

In the wake of the events of January 6, 2021, the Defendant returned to his home in the state of Washington, where he continued to promote conspiracy theories about the events of

January 6. In the spring of 2023, the Defendant drove cross-country from Washington to the District of Columbia and began to temporarily live out of his van on the streets of Washington, DC. During this time, the Defendant's behavior escalated in a series of erratic and dangerous stunts and social media posts, which culminated on June 28, 2023, when the Defendant stated on a live video stream that he planned to detonate a self-driving vehicle at the National Institute of Standards and Technology. Based on this recorded statement, law enforcement personnel immediately began searching for the Defendant in and around the District of Columbia. He was located and arrested the next day, June 29, 2023, while searching for "tunnels" he believed would provide access to private residences in the Kalorama neighborhood of Washington, DC. Shortly following his arrest, a lawful search was conducted of the Defendant's van, which was parked near the scene of his arrest in Kalorama. During the search of the vehicle, law enforcement officers found indicia that Taranto had been living out of the van. They also lawfully seized a backpack behind the driver's seat, which contained two firearms, including a CZ Scorpion EVO 3 S1 9mm Luger firearm (the "CZ Scorpion"), as well as 13 magazines (at least one of which could hold 32 rounds) and hundreds of rounds of ammunition.

Based on the above events, Taranto is charged by Superseding Indictment with 26 U.S.C. § 5861(d) (Possession of an Unregistered Firearm) (Count One); 22 D.C. Code § 4504(a)(1) (Carrying a Pistol without a License) (Counts Two and Three), 7 D.C. Code § 2506.01(b) (Possession of a Large Capacity Ammunition Feeding Device) (Count Four); 7 D.C. Code § 2506.01(a)(3) (Unlawful Possession of Ammunition) (Count Five); 18 U.S.C. § 1038(a)(1) (False Information and Hoaxes) (Count Six); 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding) (Count Seven); 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds) (Count Eight); 18 U.S.C. § 1752(a)(2) (Disorderly or Disruptive Conduct in

3

a Restricted Building or Grounds) (Count Nine); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building) (Count Ten); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Eleven).  He now seeks to dismiss Count 11, Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *Id.* Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

## ARGUMENT

Taranto moves to dismiss Count 11 of the Superseding Indictment, which charges him with violating 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building) for his participation in the January 6 insurrection.  In support of his motion, Taranto presents two alternative arguments.  First, Taranto attacks § 5104(e)(2)(G) on constitutional grounds, arguing that the statute is both overbroad and unconstitutionally vague.  The D.C. Circuit already

4

considered and rejected the defendant's arguments in *United States v. Nassif*, 97 F. 4th 968 (D.C. Cir. 2024). Therefore, the defendant's motion cannot be granted on those grounds.

Second, Taranto argues that Count 11 fails to state an offense as applied to him. Because the Superseding Indictment contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, this argument also fails. The Court should deny the defendant's Motion to Dismiss Count 11. ECF No. 56.

## I. Pursuant to *United States v. Nassif*, 97 F. 4th 968 (D.C. Cir. 2024), 40 U.S.C. § 5104(e)(2)(G) is Neither Vague nor Overbroad.

In his motion, Taranto makes two separate constitutional attacks on 40 U.S.C. § 5104(e)(2)(G). First, the defendant argues that the statute violates the First Amendment as "the plain language itself is strikingly broad, covering enormous swaths of protected First Amendment activity." ECF No. 56 at 3. Second, he argues that the "statute does not define the offense so as to put ordinary people on notice of what is prohibited, and the language encourages arbitrary and discriminatory enforcement." ECF No. 56 at 7. These challenges have been addressed and rejected by the D.C. Circuit.

In *United States v. Nassif*, the D.C. Circuit rejected a nearly identical challenge to 40 U.S.C. § 5104(e)(2)(G). 97 F.4th 968 (D.C. Cir. 2024). In *Nassif,* another January 6 defendant argued that the statute was unconstitutionally overbroad and vague because the statute "punishes so much protected speech and is so unclear that it is entirely invalid and cannot be applied to anyone." *Id.* at 974. The court of appeals rejected that argument. It held, instead, that the Capitol buildings do not have public-forum status because there is no evidence that Congress intended to open any portion of the Capitol buildings as a public forum for assembly and discourse. *Id.* at 976. And because Capitol buildings are non-public forums, "so long as the restrictions on speech are not viewpoint based . . . review requires only that we determine whether the regulation is 'reasonable'

5

in light of the purpose of the forum." *Id.* at 973. The court of appeals further found that the restrictions set forth in the statute are reasonable and, thus, the statute was not overbroad. *Id.* at 979.

Finally, the Circuit rejected Nassif's vagueness challenge, explaining that "[a]n individual 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Id.* (*quoting Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010)). The defendant's vagueness claim fails for the same reason. Taranto's conduct inside the Capitol, like Nassif's, constituted "demonstrating" "[u]nder any plausible definition of the term." *Id.* at 981. Indeed, like Nassif, Taranto "joined a group of hundreds of people, many carrying signs, banners, or flags, who shouted or chanted as they descended on and entered into the Capitol seeking to halt the certification of the 2020 election." *Id.* In addition, Taranto filmed himself and explicitly stated he was "storming" the Capitol, proceeded to the Speaker's Lobby, and joined a mob of people who witnessed a shooting and whose presence blocked the passageway of law enforcement and other necessary aid to the situation. *Nassif* disposes of the defendant's analogous arguments in this case.

## II. The Language Alleged in Count 11 is Sufficient under Fed. R. Crim. P. 7(c).

Finally, Taranto argues that Count Eleven, which charges a violation of Section 5104(e)(2)(G), does not state an offense. ECF No. 56 at 11. That argument also fails. "[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (indictment charging accepting of illegal gratuities was not deficient because it did not "allege precisely how Verrusio contemplated influencing [amendments to a federal highway bill]"); *see also United*

*States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) ("It was enough for the indictment [charging an attempt to violate the unlawful reentry statute, 8 U.S.C. § 1326(a)] to point to the relevant criminal statute and allege that respondent "intentionally attempted to enter the United States ... at or near San Luis ... Arizona" "[o]n or about June 1, 2003."). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *Verrusio*, 762 F.3d at 13 (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)); *see also United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982) (Rule 7(c) "does not [require] that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense."); *United States v. Apodaca*, 275 F. Supp. 3d 123, 153-54 (D.D.C. 2017) (Howell, C.J.) (rejecting a Rule 7(c) motion to dismiss § 924 (c) charges on the ground that "they do not identify specific weapons, specify where and when the weapons were possessed, or state whether weapons were 'used, carried or brandished.'"); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (rejecting a Rule 7(c) challenge to a Hobbs Act robbery charge on the ground that the "indictment does not specify what it was that defendants allegedly conspired to steal or precisely how the conspiracy would have affected interstate commerce. Rather, it alleges in conclusory terms that defendants conspired to commit robbery and thereby affected interstate commerce."). Here, Count 11 of the Superseding Indictment charges a violation of a specified statute, employing the complete statutory language, which includes each of the elements of the charged offense. It also alleges that Taranto committed the charged offense on January 6, 2021, inside the District of Columbia. *See Apodaca*, 275 F. Supp. 3d. at 154 (charges were sufficiently pled because "[i]n addition to 'where' the offenses were allegedly perpetrated, the indictment also states 'when' they were allegedly committed").

Taranto argues that the Superseding Indictment fails to state an offense as to Count 11 because, "there are no specifics as to the facts and circumstances of any parading, picketing, or demonstrating." ECF No. 56 at 12.  Specifically, Taranto argues that Count 11 does not allege any "form of speech or expressive conduct." *Id.*   As cited above in *Verrusio*, such specificity is not required. *See* 762 F.3d at 13. Neither § 5104(e)(2)(G) nor any judicial decision construing it requires the government to prove those particular indicia that Taranto alleges, so the Superseding Indictment cannot be deficient for failing to allege that Taranto participated in "speech or expressive conduct." ECF No. 56 at 12. *See e.g. United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) ("At the indictment stage, the government need not 'show,' but merely must allege, the required elements"; "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations."). Instead, Count 11 does allege that Taranto engaged in 'parading,' 'demonstrating,' and 'picketing," which is the language of the statute. *See generally United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010) (an indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive"); s*ee also United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) ("When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations."). That is more than enough to meet Rule 7(c)'s requirement for a "plain, concise, and definite written statement of the essential facts."

Taranto does not provide any authority which would require the government to plead some "form of verbal or symbolic expression of a feeling, belief, or idea." ECF No. 56 at 12.   Nor does he claim that the absence of any information will prevent him from preparing his defense or will

8

prevent him from pleading double jeopardy if the government charges him in the future for his conduct on January 6. At this point in the proceedings, the language of Count 11 is sufficient to meet the requirements of Rule 7(c).

In any event, in addition to being procedurally flawed, the defendant's claim would also fail on the merits. Even at this pretrial stage, the Complaint—as well as the discovery produced in this case—confirm that the defendant's conduct amounted to "demonstrat[ing]" under any plausible definition of the term. As explained above, the defendant "joined a group of hundreds of people, many carrying signs, banners, or flags, who shouted or chanted as they descended on and entered into the Capitol seeking to halt the certification of the 2020 election." *Nassif*, 97 F.4d at 981. As discussed above, Taranto filmed himself and others inside of the Capitol Building, participated in the mob that prevented law enforcement from quickly and efficiently responding to a critical medical situation, and remained on the East Central Steps of the Capitol Grounds with hundreds of other individuals, even after being forced out of the building. For that reason as well, the defendant's motion should be rejected.

## **CONCLUSION**

WHEREFORE, the Government respectfully requests that the Court deny Taranto's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/Allison K. Ethen*
Samuel White
NC Bar No. 44908
Allison K. Ethen
MN Bar No. 0395353
Carlos A. Valdivia
D.C. Bar No. 1019242
Assistant United States Attorneys
601 D Street NW, Fifth Floor
Washington, D.C. 20530
Allison.ethen@usdoj.gov
(612)664-5575