IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** * | |
| * | |
| vs.     * | Case No. 23-cr-00229-CJN |
| * | |
| **TAYLOR TARANTO**, * | |
| **Defendant** * | |
| * | |

ooOoo

### RESPONSE TO GOVERNMENT'S MOTION TO DISMISS CERTAIN COUNTS AND MOTION TO DISMISS ALL COUNTS IN THE INDICTMENT

Taylor Taranto, by his undersigned counsel, opposes the government's Motion (ECF 96) to the extent it seeks to dismiss only certain counts of the Indictment, citing President Trump's Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021.

Mr. Taranto respectfully moves this Honorable Court to dismiss *all* Counts including those that allege conduct on June 28 and 29, 2023 on the ground that all his charges *relate* to the events on January 6, and are therefore covered by the President's Executive Order. From the start and throughout the pendency of this prosecution, the government and this Court have treated the allegations set out in all the counts as *related* to the events of January 6. *See, e.g.,* Complaint; Arrest Warrant; Indictment. The "Factual Background" set out by the Court in its Order denying bail makes clear that Mr. Taranto's conduct in June is directly related to J6:

> On *January 6*, 2021, Taranto entered the United States Capitol at approximately 2:38 PM.
> . . .
> Since *January 6*, Taranto has made many public statements about his actions at the Capitol and his views of that day.
> . . .

> Sometime in May 2023, Taranto returned to Washington, D.C. The government contends that Taranto traveled here "in response to Speaker of the House Kevin McCarthy's offer to produce *January 6* video."
>
> . . .
>
> On June 27, 2023, Taranto allegedly posted a video to YouTube of a recording of a phone call with Speaker McCarthy's officer repeatedly asking to be granted access to certain video footage of the events of *January 6*. Gov't Resp. at 8-9. Then on June 28, 2023, Taranto posted a livestream to his YouTube channel from his parked van.

Order (ECF 27) at 2-4 (emphasis added).

Indeed, by including all the charges in a single indictment the government necessarily determined that all the charges are sufficiently related to meet the joinder requirements of FED. R. CRIM. PROC. 8. Lastly, the government has consistently interpreted the President's Executive Order in other cases as applying to conduct that took place on dates other than January 6 and in locations other than the Capitol.

For all these reasons, as more fully set forth below, Mr. Taranto moves this Court to dismiss all the counts in the Superseding Indictment with prejudice.

**Introduction**

Mr. Taranto has never been convicted of a crime. He has been married for more than 15 years and has two children. He is an honorably discharged combat veteran. He is not charged with any violence or destruction of property in this case in connection with the events of January 6 nor in connection with his arrest in June 2023.

Mr. Taranto is an honorably discharged veteran of the U.S. Navy who served in Iraq on behalf of this country, and who has repeatedly demonstrated respect for law enforcement. Immediately prior to his arrest in June 2023, Mr. Taranto engaged politely with Secret Service employees and was open

with them about the reasons for his presence. Mr. Taranto did not trespass nor go anywhere prohibited. At the time of his arrest, Mr. Taranto had no weapons on his person, did not resist and did not make any threats.[1] The gun charges from June 2023 involve licensure violations.

Mr. Taranto has not threatened anyone directly and has never brandished a weapon. He has lived in Washington State for much of his adult life, save when he was in the U.S. Navy, where he was deployed to Iraq and served honorably for over six years before his honorable discharge. His mother, father, siblings, and numerous other relatives all reside in the Washington area. Mr. Taranto is a loving and engaged father who has actively worked to address mental health issues that began after trauma experienced during his military service. He is connected with a mental health therapist and psychiatrist, with whom he has been working for over a decade. He receives active assistance from the VA, and also SSDI benefits as a result of his service-related disability.

His wife has journeyed across the country at a moment's notice to accompany Mr. Taranto back home to Washington. Mr. Taranto owns a home together in Washington with his wife. His mother, father, siblings, and many other members of his extended family reside in Washington state.

The June 2023 charges arise out of statements he allegedly made on a pod-cast. Mr. Taranto, who considers himself a satirical reporter with an almost Jon Stewart or South Park-esque dry humor (that he would openly admit often did not land), often attempted to make jokes or double entendre references in an effort to discuss and explore certain conspiracy theories and lines of thinking adjacent to January 6th and related events. This is why Mr. Taranto so frequently cites to the First Amendment

---

[1] The offense level for the felony offense charged in Count 6 for a violation of 18 U.S.C. § 1038(a) is 12, reflecting that it is neither a violent nor a serious offense. Indeed, as shown in the pending motions to dismiss, all the charges against Mr. Taranto raise substantial First and Second Amendment issues.

and the protection of free speech in his endeavors and postings.

In sum, Mr. Taranto has zero criminal history, a history of honorable service in the U.S. Navy, and a supportive family network back in Washington state. Most importantly, all his charges are related to the events at the United States Capitol on January 6. Therefore they are covered by President Trump's exercise of his pardon power and grant of clemency.

### I.   The Presidential Pardon Power

Article II, Section 2, of the United States Constitution provides that "[t]he President ... shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. Art. II, § 2, cl. 1. In *Marbury v. Madison,* the Supreme Court laid the foundation for the view that the President's pardon power is plenary. 5 U.S. 137, 165-66 (1803) (the Constitution vested the President "with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience"). More explicitly, the Supreme Court has made clear that the President has a "general, unqualified grant of power to pardon offenses against the United States." *The Laura*, 114 U.S. 411, 413 (1885); *United States v. Klein*, 80 U.S. 128, 147 (the President's power to pardon is "granted without limit"). The "executive can reprieve or pardon all offenses after their commission, either before trial, during trial or after trial, by individuals, or by classes, conditionally or absolutely, and this without modification or regulation by Congress." *Ex parte Grossman*, 267 U.S. 87, 120 (1925).

### A. President Trump's Executive Order of Clemency

In pertinent part, the Executive Order states:

> Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:
>
> . . .
>
> (b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;
>
> . . .
>
> I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021.[2]

Mr. Taranto's case falls within the last clause quoted above in that his pending indictment involves "conduct related to" the events on January 6, 2021. As a pardon ceases all litigation, Mr. Taranto's moves this Court to dismiss his entire case. *See United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (a "Presidential pardon ends all litigation").

---

[2] Executive Order "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021," 90 FR 8331, attached as Ex. 1.

### B. Government Motion to Dismiss Pursuant to Rule 48(a)

Rule 48. Dismissal

> (a) By the Government. The government may, *with leave of court*, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

(Emphasis added). The "leave of the court" authority granted by Rule 48(a) is intended to avoid unfair prejudice or a substantial threat thereof to a defendant or deny the government an unfair advantage by allowing it to restart the case at a later more advantageous time. *See United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) (dismissal with prejudice warranted where basis for government's Rule 48 dismissal was dissatisfaction with state of its investigation and trial preparation); *United States v. Poindexter*, 719 F. Supp. 6, 10 (D. D.C. 1989) (ultimate decision whether to dismiss with or without prejudice rests with the trial judge and "depends upon the purpose sought to be achieved by the government and its effect on the accused"); *United States v. Fields*, 475 F. Supp. 903, 906 (D. D.C. 1979) (dismissal with prejudice appropriate where prosecution at later time deemed more favorable to the prosecution).

#### 1. Counts Six through Eleven

The government has moved to dismiss with prejudice only Counts Seven, Eight, Nine, Ten, and Eleven. Gov't Motion to Dismiss (ECF 96). All these counts allege that Mr. Taranto violated various federal offenses "on or about January 6, 2021." Superseding Indictment (ECF 45 at 4-5).[3]

A chart setting forth all the counts is attached as Exhibit 1.

---

[3] Count 7 alleges that Mr. Taranto violated 18 U.S.C. § 1512(c)(2), "within the District of Columbia and elsewhere." *Id.* Counts 8-11 allege that Mr. Taranto violated various misdemeanor offenses "in the District of Columbia."

### 2. Counts One Through Six

The Government Motion to Dismiss does not address Counts One through Six. Counts One through Five allege that Mr. Taranto violated certain non-violent D.C. Code and federal gun licensure-related felony and misdemeanor offenses on or about June 29. *Id.* Count Six alleges that Mr. Taranto violated a federal offense "on or about January 28 and 29, 2023." Other than citing the President's Executive Order, the Motion provides no other explanation for excluding the remaining counts.

## ARGUMENT

### I. The Allegations in All the Counts of the Superseding Indictment Are Related to the "Events at or near the United States Capitol on January 6, 2021"

#### A. The Prosecution for J6 Charges Begins on June 29, 2023

This prosecution began on June 29, 2023. On that date, a Complaint and sworn affidavit were filed (ECF 1). An arrest warrant was issued and executed (ECF 5). Mr. Taranto was arrested. *Id.* The complaint charges only the four standard J6 misdemeanor offenses. The 9-page affidavit filed in support of the Complaint alleges only conduct that took place on January 6. *Id.* Mr. Taranto was not arrested nor charged with any offenses related to J6 before June 29, 2023.

It is difficult to explain the timing of Mr. Taranto's arrest and charges without concluding that the allegations and charges regarding Mr. Taranto's conduct on June 28-29, 2023 "relat[e] to the events at or near the United States Capitol on January 6, 2021".[4]

#### B. The Interrelatedness of Taranto's Alleged Conduct on J6 With His Conduct on June 2023 Is Present Throughout the Case

At a time when the only charges pending against Mr. Taranto were the J6 offenses, the 26-

---

[4] January 20, 2025 Executive Order granting pardons to J6 defendants.

page Memorandum filed by the government seeking Mr. Taranto's pretrial detention begins and ends with a recitation of his alleged statements and conduct on June 28-29, 2023, explaining throughout how the June 2023 allegations are related to J6. *See* Gov Memo (ECF 8, filed 7/5/23). In describing the nature and circumstances of the offense that support detention, the government explicitly links the J6 and June 2023 conduct. *Id.* at 21-22. On July 12, 2023, Mr. Taranto is charged with the four standard J6 misdemeanors and two DC code firearm-licensing misdemeanors. Indictment (ECF 15). The Court's opinion upholding the decision to detain Mr. Taranto pretrial also links his June 2023 conduct to the events at the Capitol on J6.

In every pleading filed by the government in this case, they argue – explicitly or implicitly – that the J6 and June 2023 conduct are related. *See, e.g.,* Gov Opp to Motion to Dismiss Count 4 (ECF 68, filed 7/25/24) at 2-3; Gov Opp to Motion to Dismiss Count 1 (ECF 73 at 3-4)(explaining how J6 led to the conduct alleged in Count 1).

**C.    Rule 8 and Relatedness of the Charges**

In charging all counts in one indictment, the government necessarily determined that the charges are related. *See* FED. R. CRIM. PROC. 8(a)

> Rule 8. Joinder of Offenses or Defendants
>
> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The J6 offenses and the June 2023 offenses are not of the "same or similar character." Mr. Taranto is not alleged to have possessed any firearms on J6 and he is not alleged to have conveyed any false information and hoaxes on J6. Thus, the offenses can only be joined in one indictment under the

8

prongs that allow joinder of offenses involving the same act or transaction or under the third connectedness prong. *See, e.g., United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984):

> Interpretative case law, reading Rule 8(b) in conjunction with Rule 8(a) and the policies underlying each, does, however, yield a fairly definitive answer to this question. The language "the same series of acts or transactions" may not be read to embrace similar or even identical offenses, unless those offenses are related. The Rule is not limited to offenses or transactions, but extends to a "series of acts ... constituting an offense ..." in which the joined party participated, even though he may not be charged on that offense. As this Court recognized in Jackson,[5] the required relationship of Rule 8(b) is "essentially coterminous with the wording employed in the last portion of Rule 8(a), 'two or more acts or transactions connected together or constituting parts of a common scheme or plan.'" Jackson, supra, 562 F.2d at 796 (citing 1 C. Wright, Federal Practice and Procedure § 144, at 322 (1969)). In other words, there must be a logical relationship between the acts or transactions within the series.

Moreover, it is clear that at any trial of this case, the government would seek to introduce evidence of the J6 conduct as related to the June 2023 offenses because they are related. The government should therefore not be heard to argue that the June 2023 offenses are not related when considering whether the President's pardon applies to Mr. Taranto.

Lastly, to the extent the government does not dispute that Mr. Taranto has been pardoned for the J6 offenses, the government should be precluded from introducing evidence of the J6 offenses at any trial.

D.    **Application In Other Cases**

The government has interpreted the President's Pardon Proclamation to apply to conduct that took place on dates other than January 6 and for conduct distinct from the January 6 charges involving entry into the Capitol. *See, e.g.*, *United States v. Garret Miller,* 21-cr-119 (CJN)

---

[5] *United States v. Jackson*, 562 F.2d 789 (D.C. Cir.1977)

(dismissing all counts including threatening to murder a member of Congress, made hours after defendant had left the Capitol); *United States v. Olivia Pollock and Joseph Hutchinson*, 21-cr-0447 (CJN) (dimissing failure to appear charges for conduct that took place in March and August 2023); *United States v. Vo*, 25-cr-10 (TSC) (dismissing separate charge for failure to report to BOP after sentencing).

## CONCLUSION

For all these reasons, and for any other reasons that may be just and proper, Mr. Taranto respectfully requests that this Honorable Court dismiss all charges pending against him under the authority of the Executive Grant of Clemency issued by President Trump on January 20, 2025 and *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (a "Presidential pardon ends all litigation").

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 3rd day of February, 2025.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**