UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **TAYLOR TARANTO,** <br><br> Defendant. | Case No. 23-cr-229 (CJN) |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S PRETRIAL MOTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to Defendant Taylor Taranto ("Defendant")'s Motion to Sever Count Six From Firearm Counts (ECF No. 105 or "Def. Mot."). The Court should deny his request, as the charges against the Defendant are properly joined and he cannot demonstrate sufficient prejudice to justify severance.

### FACTUAL BACKGROUND

In the spring of 2023, the Defendant drove cross-country from Washington to the District of Columbia and began to temporarily live out of his van on the streets of Washington, DC. At the time, the Defendant's publicly viewable social media accounts were being monitored by agents of the Federal Bureau of Investigation, based on evidence demonstrating that the Defendant had entered the United States Capitol Building during the events of January 6, 2021. After he moved to the District of Columbia and began living out of his van, the Defendant's behavior escalated in a series of erratic and dangerous stunts and social media posts, which culminated on June 28, 2023, when the Defendant stated on a publicly available live video stream filmed inside his van that he planned to detonate a self-driving vehicle at the National Institute of Standards and Technology. Based on this recorded statement, law enforcement personnel immediately began searching for the

Defendant in and around the District of Columbia. He was located and arrested the next day, June 29, 2023, while searching for "tunnels" he believed would provide access to private residences in the Kalorama neighborhood of Washington, DC. Shortly following his arrest, a lawful search was conducted of the Defendant's van, which was parked near the scene of his arrest in Kalorama. During the search of the vehicle, law enforcement officers found indicia that the Defendant had been living out of the van. They also lawfully seized a backpack behind the driver's seat, which contained two firearms, including a CZ Scorpion EVO 3 S1 9mm Luger firearm (the "CZ Scorpion"), as well as 13 magazines (at least one of which could hold 32 rounds) and hundreds of rounds of ammunition.

On February 14, 2024, the Defendant was charged by superseding indictment with the following offenses: (1) Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5861(d) and 5845(a)(3) (Count One); (2) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1) (Count Two); (3) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1) (Count Three); (4) Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code § 2506.01(b) (Count Four); (5) Unlawful Possession of Ammunition, in violation of 7 D.C. Code § 2506.01(a)(3) (Count Five); (6) False Information and Hoaxes, in violation of 18 U.S.C. §1038(a) (Count Six); (7) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count Seven); (8) Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Eight); (9) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Nine); (10) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Ten);

and (11) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Eleven). On February 12, 2025, the Court dismissed Counts Seven through Eleven of the indictment, pursuant to a motion filed by the government on January 25, 2025 (ECF No. 96). Counts One through Six remaining pending in this case, with trial set for May 12, 2025.

## ARGUMENT

The Defendant now argues that Counts One through Five and Count Six were improperly joined and should be severed from one another in order to avoid prejudicing his right to a fair trial and "fundamental unfairness." *See* Def. Mot. at 1. This request should be denied, as the remaining six counts are properly joined. Federal Rule of Criminal Procedure 8(a) governs the joinder of multiple counts against the same defendant, and provides that counts are properly joined when the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

Rule 8 "has generally been construed liberally in favor of joinder." *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998). Indeed, offenses may be "entirely unrelated to each other" and still qualify as of the same character. *United States v. Gooch*, 665 F.3d 1318, 1325 (D.C. Cir. 2012). The Supreme Court has recognized that joint trials "play a vital role in the criminal justice system," noting particular policy reasons underscoring the benefits of joinder to "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations and citations omitted); *see also United States v. Long*, 905 F.2d 1572, 1580–81 (D.C. Cir. 1990) (stating that joinder promotes the judicial system's "strong and legitimate interest in efficient and expeditious proceedings"); *United States v. Robinson*, 432 F.2d 1348, 1351 (D.C. Cir. 1970) (

"[Joinder] expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."). Indeed, there is a "presumption in favor of joinder," *McGill*, 2016 WL 790413, that "is especially strong where the respective charges require presentation of much of the same evidence, testimony of the same witnesses and involve defendants who are charged, *inter alia*, with participating in the same illegal acts," *id.* (quoting *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999)) (ellipsis omitted).

Under certain circumstances, however, Federal Rule of Criminal Procedure 14(a) permits a court to order "separate trials of counts," "if joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." "While the standard of 'appears to prejudice a defendant' set out in Rule 14(a) for consideration of severance, does not, on its face, provide an onerous test, the discretion afforded to district courts must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, No. 14-030 (BAH), 2016 WL 912169, at *46 (D.D.C. Mar. 7, 2016), *aff'd,* 926 F.3d 761 (D.C. Cir. 2019). The D.C. Circuit has made clear that even if prejudice is shown, this "does not result in an automatic grant of the motion." *Gooch*, 665 F.3d at 1326. Instead, the D.C. Circuit has instructed that for severance to be proper "[t]here must be 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Bostick*, 791 F.3d at 152–53 (affirming a district court's denial of a defendant's motion for a severed trial) (quoting *Zafiro*, 506 U.S. at 539); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same

4

standard).

The D.C. Circuit has identified several different kinds of prejudice relevant to a Rule 14 severance analysis:  "1) [T]he jury may cumulate evidence of separate crimes; 2) the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt; or 3) the defendant may become 'embarrassed or confounded' in presenting different defenses to the different charges." *Gooch*, 665 F.3d at 1336 (citation omitted). In addition, prejudice may arise from joinder "when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." *Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1964). The burden is on the defendant to demonstrate the existence of sufficient prejudice justifying severance.  *United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994).

Even where a defendant demonstrates some prejudice, however, that does not necessarily require severance.  *See* Fed. R. Crim. Proc. 14(a) ("the court *may* order" relief upon discovering prejudice) (emphasis added). Rather, "it is incumbent upon the judge to weigh the considerations of economy and expedition in judicial administration against" any prejudice, such as "the defendant's interest in having a free choice with respect to testifying." *Bradley v. United States*, 433 F.2d 1113, 1122 (D.C. Cir. 1969) (cleaned up). Indeed, "district courts should grant severance *sparingly* because of the strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors." *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (emphasis added, cleaned up).

In the present case, the Defendant has failed to carry his burden of demonstrating sufficient prejudice to justify severing the charges against him. As an initial matter, the charges against the Defendant are properly joined as they "are based on the same act or transaction, or are connected

with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). All of the counts pending against the Defendant relate directly to his conduct over a two-day period and to his escalating behavior while living out of his van in June 2023. The Defendant's communication of the hoax on June 28, 2023 that forms the basis for Count Six occurred via a live stream recorded inside of (and directly referencing) the van. As a result of that conduct, law enforcement agents began an active search for the Defendant and his van, ultimately resulting in his apprehension the following day. At the time the Defendant was apprehended, his van was parked nearby, and based upon the alarming threat made over the social media live stream the previous day, law enforcement agents immediately conducted a lawful search of the van in order to determine if explosives or other materials posing a risk to public safety were contained inside. This search resulted in the recovery of the firearms and ammunition that form the basis for Counts One through Five. Given all of the charges pending against the Defendant relate to his conduct on June 28 and 29, 2023, the prosecution of all six counts will require the presentation of much of the same evidence and the testimony of the same witnesses. *See Richardson*, 167 F.3d at 624. Indeed, it would likely be highly confusing for the finder of fact if the government were to present testimony relating to the search of the van without the context provided by the details of the hoax communicated by the Defendant the previous day. Given the inextricable nature of the facts, witnesses, and evidence undergirding all six pending counts, the presumption in favor of joinder has not been rebutted in this case. *McGill*, 2016 WL 790413.

Additionally, the Defendant has not (and cannot) demonstrate prejudice sufficient to justify severance under Federal Rule of Criminal Procedure 14. The Defendant does not clearly or specifically articulate any prejudice at all in his succinct filing, beyond alleging that a jury

6

might conclude from the firearm and ammunition allegations in this case that he has "no respect for the law." *See* ECF No. 105 at 4. At best, Defendant appears to claim that the jury might cumulate evidence of the separate crimes against him. *See Id.* at 3-4. But given the substantial factual overlap across the charges between the elements, the hoax and possessory charges will necessitate much of the same proof and witnesses, even in the case of severance being granted. Additionally, our courts have long recognized that even where evidence is not mutually admissible, severance is not required if evidence "is so simple that the jury should encounter no substantial difficulty in properly confining its treatment within zones of relevance." *Robinson v. United States*, 459 F.2d 847, 859 (D.C. Cir. 1972). Counts One through Five, which are possessory offenses, are sufficiently simple that the jury will be able to properly cabin evidence, as necessary. Indeed, our courts have found far more complicated cases not to be severable under this standard. *See, e.g., Baker v. United States*, 401 F.2d 958, 975 (D.C. Cir. 1968) (finding that the joint trial of four income tax offenses over multiple years sufficiently simple to negate prejudice).

For all of these reasons, the joinder of these offenses remains appropriate, and the Defendant fails to carry his burden of demonstrating sufficient prejudice to sever these charges.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motion.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY

By:       /s/
        Samuel White
        NC Bar No. 44908
        Carlos A. Valdivia
        D.C. Bar No. 1019242
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        202-431-4453
        Samuel.white@usdoj.gov