## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **vs.** | * | **Case No. 23-cr-00229-CJN** |
| | * | |
| **TAYLOR TARANTO,** | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

## MOTION FOR RECONSIDERATION OF DENIAL OF TAYLOR TARANTO'S MOTION TO DISMISS BASED ON THE PARDON

Taylor Taranto, by his undersigned counsel, respectfully moves this Honorable Court to reconsider its decision denying his Motion to Dismiss (ECF 99) all counts, which was based on President Trump's Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021 (the "pardon"). *See* Minute Order entered 2/12/25. The basis for reconsideration is that shortly after the government opposed dismissal of Mr. Taranto's charges under the pardon, the government has taken the position in multiple filings in other cases that the pardon granted by President Trump is broader than it originally had argued or than it argued in this case. In those filings, the government has moved to dismiss charges under circumstances that warrant dismissal of all of Mr. Taranto's charges. In that light, continuing to prosecute Mr. Taranto would be inconsistent with the pardon issued by President Trump, as currently interpreted by the government, and result in a violation of his federal constitutional rights to due process of law and to equal protection of the law.

Mr. Taranto adopts and incorporates by reference his Motion to Dismiss all Counts (ECF 99).

**Introduction**

On January 25, 2025, citing the Presidential pardon, the government filed a Motion to Dismiss Counts Seven, Eight, Nine, Ten, and Eleven with prejudice. ECF 96 at 1. Those counts alleged conduct that took place on January 6, 2021. In response, Mr. Taranto filed a Motion to Dismiss all counts on the basis that all counts were covered by the pardon, which by its terms applied to "all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." (ECF 99 at 5)[1]. In particular, among other things, Mr. Taranto pointed to the fact that the government had charged all the offenses in a single indictment; that the factual allegations set forth in all the counts arose out of an arrest and complaint that only referenced Mr. Taranto's conduct at the Capitol on January 6; and other facts relied on by the Court in earlier rulings and the government in its pleadings that reflected the interrelatedness of all the offenses charged. *Id.* at 7-10. In its opposition to Mr. Taranto's motion, the government took a very narrow reading of the pardon arguing that Counts 1-6 were not covered by the pardon. *See* Opposition to Defendant's Motion to Dismiss (ECF 101, filed 2/11/25). In a Minute Order entered on February 12, 2025, the Court denied Mr. Taranto's motion to dismiss all counts instead dismissing only Counts 7-11.[2]

---

[1] Executive Order "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021," 90 FR 8331, attached as Ex. 1.

[2] "MINUTE ORDER: It is hereby ORDERED that Defendant TAYLOR TARANTO's 99 Motion to Dismiss is DENIED. It is further ORDERED that the Government's 96 Partial Motion to Dismiss is GRANTED. Counts Seven, Eight, Nine, Ten, and Eleven of the 45 Superseding Indictment are DISMISSED with prejudice. Signed by Judge Carl J. Nichols on 2/12/2025 (lccjn3) (Entered: 2/12/2025) (Entered: 02/12/2025)"

A.    **The Government Has Now Taken the Position That the Presidential Pardon Covers Unrelated Crimes That Were Discovered During FBI Searches Stemming from the Attack on the Capitol**

Beginning on or about February 20, 2025, after it opposed dismissal of all of Mr. Taranto's charges, the government began filing motions to dismiss and responses to defendants' motions to dismiss in a number of cases that involved offenses that were alleged to have taken place on dates other than January 6 in locations outside the Capitol but which resulted from investigations and searches of January 6 cases. The government generally explained its position in this manner: "Based on consultation with Department of Justice leadership, it is the position of the United States that the offenses of conviction in this case are intended to be covered by this Pardon." *United States v. Brown*, No. 8:21-cr-00348-SDM-SPF, MD Florida, Tampa Division (ECF 372, filed 2/25/25) at 1-2.

1.    **Jeremy Brown - Middle District of Florida**

The *Brown* case is particularly relevant to the government's view of the scope of the pardon. Brown had been sentenced to 87 months imprisonment after a jury trial and verdict of guilt in the Middle District of Florida for various offenses uncovered when his Florida home was searched in September 2021 in connection with a warrant issued for J6 offenses. Brown's charges included possession of various firearms and actual explosive devices, including two hand grenades covered by the National Firearms Act, 26 USC 5841 et seq. Brown was also charged and convicted of possession of classified National Defense documents in violation of 18 USC 793(e).[3] Per the Brown Indictment, all the offenses involved conduct that took place in the State of Florida "from an unknown date and continuing through September 30, 2021." On April 2, 2025, the district court in

---

[3] The jury convicted on Counts 1-5 (firearms and hand grenade offenses) and Count 10 (retention of document relating to the national defense). Jury Verdict Sheet (ECF 305, filed 2/12/22).

*Brown* vacated the judgment and dismissed the *Brown* indictment citing the government's motion to dismiss which set forth that "the offenses of conviction in this case are intended to be covered by this Pardon." Order (ECF 379).

### 2.    Elias Costianes - District of Maryland

The government recently filed a Motion conceding that Mr. Costianes' case wherein he pleaded guilty in 2023 to possessing a firearm in violation of 18 U.S.C. § 922(g) was covered by the pardon and should be dismissed. Costianes had just begun to serve his two-year term of imprisonment on that charge. The *Costianes* case involved several charges including possession of a firearm and controlled substances uncovered during a search of his Maryland home in February 2021. The complaint filed in the district of Maryland alleged:

> Officers then searched the basement of the residence and – consistent with COSTIANES's statement – found four firearms: a Glock Model 17 9mm pistol, a Smith & Wesson M&P 15 semi-automatic rifle, a Ruger Mini-14 Ranch Rifle .223 caliber semi-automatic rifle, and a Remington Model 870 shotgun. Although the Glock and the Smith & Wesson were registered to COSTIANES, the other two firearms were not. Officers also found numerous quantities of 9mm, .22 caliber, .223 caliber, and shotgun ammunition in the basement. FBI took custody of the firearms and ammunition pursuant to COSTIANES's consent. The firearms and ammunition were later examined and found to meet the federal definitions as set forth in the U.S. Code. Because I know, based on my own investigation and my consultation with the Bureau of Alcohol, Tobacco, Firearms and Explosives, that none of the firearms or ammunition were manufactured in the state of Maryland, they necessarily traveled in interstate commerce prior to being recovered by the FBI on February 12, 2021.

Complaint, 21-cr-00458 (D. Md.) (ECF 1-1 at 4-5). Also recovered at the time were various controlled substances and paraphernalia, including vials of testosterone and used hypodermic needles; in his car, agents recovered 28 grams of marijuana and a digital scale in his vehicle; his phone

contained images and conversations about cocaine transactions. The evidence reflected that the defendant used and distributed controlled substances for a couple of years preceding the date of the search. *Id.* at 5-20

In a filing in the Fourth Circuit in response to Costianes' motion for release pending appeal, the government stated the following:

> The United States largely consents to the relief that defendant-appellant Elias Nick Costianes, Jr., seeks. *See* Appellant's Emergency Motion for Injunction to the U.S. Marshals to Release Appellant, Stay the Sentence, and Expedite this Motion Pending Appeal, filed Feb. 12, 2025 [hereinafter Motion]. The United States agrees that the President pardoned him, he should be immediately released from custody in connection with this case, his sentence should be stayed, and this Court should resolve his motion on an expedited basis. Because the President's pardon has mooted Mr. Costianes's appeal, the Court should also vacate his judgment of conviction. *See United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (per curiam).
>
> On Inauguration Day, President Donald J. Trump fulfilled his promise to pardon individuals convicted of offenses related to the events that occurred at or near the U.S. Capitol on January 6, 2021. *See* Proclamation No. 10887, 90 Fed. Reg. 8331-32 (Jan. 20, 2025) (granting a "full, complete and unconditional pardon" to the individuals); *see also* U.S. CONST. art. II, § 2, cl. 1 (the President's Pardon Power). Mr. Costianes was one of the people the President pardoned. Ex. A (his certificate of pardon). The pardon represents "the determination of the ultimate authority that the public welfare will be better served" by an act of grace, *Biddle v. Perovich*, 274 U.S. 480, 486 (1927), and where, as here, it has been properly bestowed, it is not "subject to . . . judicial examination," *Trump v. United States*, 603 U.S. 593, 608 (2024). Four years ago, in February 2021, federal agents executed a search warrant on Mr. Costianes's Maryland residence. ECF No. 33 at 2. The agents were searching for evidence of offenses related to the events of January 6. *Id.* While executing the warrant, they discovered evidence that Mr. Costianes was non-violently possessing contraband in violation of federal law. *Id.* at 2–4. He was indicted on several charges, ECF No. 34, and pleaded guilty to one of them under a plea agreement, ECF No. 83. The district court sentenced him to one year and one day in prison. ECF No. 139.

In October 2024, Mr. Costianes filed this appeal. ECF No. 143. President Trump, as noted, pardoned Mr. Costianes on January 20, 2025. Two days later, Mr. Costianes moved the district court to stay the commencement of his sentence while he investigated how his pardon affects this case. ECF No. 158 at 6- 7. The court denied that motion. ECF No. 159 at 3.

In his motion for emergency relief, Mr. Costianes argues for the first time that President Trump's pardon of "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021," 90 Fed. Reg. at 8331, covers his conviction. He accepts that he was "deservedly pardoned" and says that the pardon is "properly applied" here. Motion 15-16. Whether the pardon applies is a fact-intensive and case-specific inquiry. *After consulting with the Department of Justice's leadership, the United States has concluded that the President pardoned Mr. Costianes of the offenses in the indictment. This determination by the Executive is "conclusive and preclusive." Trump, 603 U.S. at 608.* (emphasis added).[4]

### 3.    Daniel Ball - Middle District of Florida

In *United States v. Ball*, No. 5:24-cr-00097-TPB-PRL (MD FL, Ocala Division), the government also filed a motion to dismiss (ECF 41, filed 2/20/25) asserting that the offense charged was covered by the pardon.  Ball was charged with a violation of 18  U.S.C. § 922(g) arising out of his possession of a firearm and ammunition in May 2023 in Florida which was discovered during a search related to the J6 charges. The Indictment alleged that Ball was prohibited from possessing a firearm based on three separate prior convictions:

1.    Domestic Violence Battery by Strangulation, on or about June 13, 2017;
2.    Resisting Law Enforcement with Violence, on or about October 22, 2021;
3.    Battery on Law Enforcement Officer, on or about October 22, 2021;

*Ball*, Indictment (ECF 1, filed 8/6/24).

---

[4] *United States v. Costianes*, No. 24-4543, United States of America's Response to Appellant's Emergency Motion for Relief (Doc 20-1, filed 2/19/25).

4.    **Additional Dismissal of Gun Charges Pursuant to the Pardon**

In addition to the three cases set out above, the government has moved to dismiss a number

of other gun and other offenses filed in separate indictments in other districts arising out of searches

conducted during the investigation and prosecution of J6 cases. Undersigned counsel has not been

able to determine how many such cases have been dismissed by the government beginning in mid-

February 2025, after it opposed dismissal of all of Mr. Taranto's charges. *See, e.g., United States*

*v. Reffitt,* Case 4:22-cr-00289-SDJ-KPJ (ED Texas, Sherman Div) (possession on January 16, 2021

in Texas of an unregistered silencer in violation of 26 U.S.C. § 5861(d) was dismissed based on

government motion based on the J6 pardon, ECF 47, 2/28/25);[5] *United States v. Sattler*, Case No.

23-cr-00438-JRR (D. Md.) (felon in possession of shotgun in violation of 18 U.S.C. § 922(g) and

possession of unregistered short-barrel rifle in violation of 26 U.S.C. § 5861(d) located during a J6

search on 12/3/22, dismissed on 2/26/25 based on the J6 pardon).[6]

The Court should require a complete accounting of such cases from the United States.

B.    **The President's Pardon Covers Mr. Taranto's Remaining Charges**

There is no material difference between the pending counts against Mr. Taranto and the

charges which the government has moved to dismiss as covered by the Presidential pardon in the

above noted cases. Under these circumstances to continue to prosecute Mr. Taranto would result

---

[5]  Mr. Reffitt was charged in this district on J6 charges in Case No.21-cr-032 (DLF).

[6]  While executing a warrant on a Maryland residence to search for evidence of offenses
related to the events at or near the U.S. Capitol on January 6, 2021, federal agents discovered
evidence that Mr. Sattler was in possession of firearms. "After consulting with the Department of
Justice's leadership, the United States has concluded that President Donald J. Trump pardoned Mr.
Sattler of the offenses in the indictment." (23-cr-00438-JRR (D.Md.), ECF 38, 02/26/25). The J6
case in this district was 1:23-cr-00003-RCL.

in a violation of his constitutional rights to equal protection of the law and due process.

Indeed, Mr. Taranto, an honorably discharged veteran with no prior convictions is more worthy of the clemency granted by President Trump than the three persons referenced above, whose charges have been dismissed. Moreover, his offenses are less serious (or at least no more serious) than those dismissed above. The firearm offenses involve licencing infractions. The firearms were in a locked backpack in the van that he was using as his home which temporarily staying in the District of Columbia. By definition, Count 6 alleges a hoax, with no allegation that he took steps to carry out any conduct in furtherance of the alleged activity.

More so than the above noted cases, Mr. Taranto's offenses were related to the January 6 offenses. Unlike the cases above, all of Mr. Taranto's offenses were charged in one Indictment in this district, thus necessarily evidencing that the government deemed the offenses sufficiently related to meet the joinder requirements of Rule 8, Fed. Rule Crim. Proc.

As the government and the Court have noted in various filings in the instant case, the pending offenses are all interrelated to Mr. Taranto's alleged activities on January 6. And all the charges resulted from an arrest that took place on the basis of a warrant issued solely for the J6 offenses.

In sum, there is no principled manner to distinguish Mr. Taranto's charges from those that the government has moved to dismiss in the above noted cases as being covered by President's Trump's pardon. To continue to prosecute Mr. Taranto under these circumstances would result in a violation of his constitutional rights to equal protection of the law and to being treated fairly and with due process.

## CONCLUSION

Mr. Taranto is an honorably discharged veteran of the U.S. Navy who served in Iraq on behalf of this country, and who has repeatedly demonstrated respect for law enforcement. At the time of his arrest, Mr. Taranto had no weapons on his person, did not resist and did not make any threats.[7] The gun charges from June 2023 involve licensure violations.

Mr. Taranto has not threatened anyone directly and has never brandished a weapon. He has lived in Washington State for much of his adult life, save when he was in the U.S. Navy, where he was deployed to Iraq and served honorably for over six years before his honorable discharge. His mother, father, siblings, and numerous other relatives all reside in the Washington area. Mr. Taranto is a loving and engaged father who has actively worked to address mental health issues that began after trauma experienced during his military service. He is connected with a mental health therapist and psychiatrist, with whom he has been working for over a decade. He receives active assistance from the VA, and also SSDI benefits as a result of his service-related disability.

His wife has journeyed across the country at a moment's notice to accompany Mr. Taranto back home to Washington. Mr. Taranto owns a home together in Washington with his wife. His mother, father, siblings, and many other members of his extended family reside in Washington state.

The June 2023 charges arise out of statements he allegedly made on a podcast. Mr. Taranto, who considers himself a satirical reporter with an almost Jon Stewart or South Park-esque dry humor (that he would openly admit often did not land), often attempted to make jokes or double entendre

---

[7] The offense level for the felony offense charged in Count 6 for a violation of 18 U.S.C. § 1038(a) is 12, reflecting that it is neither a violent nor a serious offense. Indeed, as shown in the pending motions to dismiss, all the charges against Mr. Taranto raise substantial First and Second Amendment issues.

references in an effort to discuss and explore certain conspiracy theories and lines of thinking adjacent to January 6th and related events. This is why Mr. Taranto so frequently cites to the First Amendment and the protection of free speech in his endeavors and postings.

In sum, Mr. Taranto has zero criminal history, a history of honorable service in the U.S. Navy, and a supportive family network back in Washington state.  Most importantly, all his charges are related to the events at the United States Capitol on January 6.  Therefore they are covered by President Trump's exercise of his pardon power and grant of clemency as the government presently interprets the President's pardon.

For all these reasons, and for any other reasons that may be just and proper, Mr. Taranto respectfully requests that this Honorable Court dismiss all charges pending against him under the authority of the Executive Grant of Clemency issued by President Trump on January 20, 2025 and *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir.  2001) (a "Presidential pardon ends all litigation").  To do otherwise in light of the government's dismissal of the charges in the cases noted above, would amount to a violation of his rights to equal protection of the law and due process.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that the instant notice was served via ECF on all counsel of record this 30th day of April, 2025.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**