UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA * | |
| * | Case No.  23-cr-0229 (CJN) |
| v. * | |
| * | |
| TAYLOR TARANTO, * | |
| Defendant. * | |

********

SECOND MOTION TO DISMISS FOR SELECTIVE
AND VINDICTIVE PROSECUTION AND ENFORCEMENT AND
MOTION TO COMPEL DISCOVERY THERETO

Taylor Taranto, by his undersigned counsel, hereby respectfully moves this Honorable Court to dismiss the Superseding Indictment on the grounds that it is the result of selective and vindictive prosecution and enforcement against him.  He adopts and incorporates by reference the Motion to Dismiss Count One for Vindictive Prosecution (ECF 59); Motion to Compel Discovery in Support of Claim of Selective Prosecution (ECF 60); Reply (ECF 75).

### INTRODUCTION

More than four years after the events of January 6, 2021, *Mr. Taranto remains the only person charged in this district in connection with those events for whom the government has not moved to dismiss all charges.  Taranto's is the only J6 case that the United States is still prosecuting where all the charges were brought in a single indictment.*  That is the case even though Mr. Taranto did not commit any acts of violence or destroy any property on January 6 or at any other time.  And, none of the charges pending against him allege that he committed or attempted to commit any acts of violence or destruction of property.

He is an honorably discharged veteran, who is fully disabled as a result of PTSD.

He has no prior convictions.

He is married and the father of two children.

He has been held at the D.C. Jail for nearly two years in cells with oozing black mold and other unsanitary conditions. He has received no psychological therapy during that time. While at the jail, he was physically attacked by other J6 detainees, who are pardoned, cases dismissed, and at home.

**I.      Pending Charges**

Mr. Taranto has five pending charges. Four of the charges allege D.C. Code violations involving firearm licensing offenses; none involve an allegation that he possessed or used the firearms and ammunition in connection with a crime of violence or any other crime.[1] The two firearms, a magazine and ammunition underlying the charges were allegedly recovered from inside a locked backpack found inside Mr. Taranto's parked van, where he had been living while temporarily in the District of Columbia. There is no allegation that Mr. Taranto obtained any of these items illegally.

The sole remaining federal charge alleges that Mr. Taranto perpetrated a hoax in violation of 18 U.S.C. § 1038(a) by making certain statements while live-streaming on his You Tube channel, where he regularly broadcast satirical commentary on politics and other social issues.[2] Specifically, the Indictment alleges that Mr. Taranto conveyed false information that "he would maliciously damage or destroy, or attempt to damage or destroy, by means of an explosive, the National Institute of Standards and Technology ("NIST")."

Significantly, the gravamen of the offense is not that he did or intended to do any of these

---

[1] Count 2 and 3 charge carrying a pistol without a license, 22 DC Code 4504(a)(1).
Count 4 charges possession of an ammunition feeding device, 7 DC Code 2506.01(b).
Count 5 charges possession of ammunition without a license, 7 DC Code 2506.01(a)(3).

[2] Section 1038(a)(1)(A) carries a maximum penalty of 5 years imprisonment.

things; the gravamen of the offense is that the alleged statements were not true. Indeed, there is no allegation that Mr. Taranto actually intended or attempted to damage or destroy the NIST or any other government building; nor has Mr. Taranto ever engaged in such conduct. He did not say that he actually had a bomb or a detonator. He did not possess any explosives or bomb-making materials. He was nowhere near the NIST, which is located in Gaithersburg, Maryland at the time of his comments. The comments the government alleges amount to the hoax were a handful of off-the cuff and disjointed comments made during a one-hour podcast while saying and doing other similarly absurd and satirical statements.[3] Finally, there is no evidence that anyone was injured as a result of Mr. Taranto's bad joke; or that the government sought to evacuate the NIST building; or that the government was even contemporaneously aware of Mr. Taranto's statements. In sum, the statements were no different than a thousand other statements – provocative and over-the-top nonsense – published on social media by people every day.

**I.      The Government's Continued Prosecution of Mr. Taranto for Making a Hoax and for Firearm Licensing Offenses Demonstrates a Realistic Likelihood of Vindictiveness and Selective Prosecution**

**A.      The Government Has Moved to Dismiss Multiple Other Cases Filed Against J6 Defendants Involving Charges That Did Not Take Place on January 6 at the Capitol in Cases Where the Defendants are Similarly Situated to Mr. Taranto**

As noted in his Motion for Reconsideration of Denial of his Motion to Dismiss Based on the Pardon (ECF 118), since mid-February, the government has moved to dismiss gun and other charges

---

[3] In denying bail, the Court referred to the following statements alleged by the government as constituting the hoax: (a) that the van was "self-driving"; (b) that he was "just going one way for this mission, to hell"; (c) that he was working on a "detonator" though he did not "really need one for this"; (d) that the van would only have to go straight, which he would accomplish with a steering wheel lock, and that he would not be near the van when it "goes off." *See* Order (ECF 27) at 4.

in multiple cases involving J6 defendants based on the pardon. Those cases involve offenses that did not take place at the Capitol on January 6. A number of the defendants in the dismissed cases have one or more prior felony offenses, some for violent crimes. A number of the dismissed cases involve charges as, or more, serious than those alleged against Mr. Taranto. Thus, there is no just reason why the government is treating Mr. Taranto disparately to the pardoned defendants.

    **B.    The Government Decided to Charge Mr. Taranto in a Superseding Indictment with the Hoax and Additional Firearm Offenses Only After he Declined to Accept a Plea Offer to the J6 Misdemeanors and Litigated the Motion to Suppress**

The government filed more serious charges against Mr. Taranto in the second superseding indictment (ECF 45) filed on February 14, 2024, nearly eight months after he was originally charged with the J6 misdemeanors. It charged two new felonies – the federal hoax offense as well as the National Firearms Act shoulder brace offense that it has recently dismissed. No new facts came to light in the interim 8 months that should have prompted those additional charges. To the contrary, during those 8 months it should have become clear to the government that Mr. Taranto's words on his You Tube channel were political commentary protected by the First Amendment, one of many podcasts which he regularly broadcast to the public. By that time, the government had accessed his electronic devices and had conducted various searches. By that time, the government was aware that Mr. Taranto had taken no steps to carry out any destruction of the NIST. He did not have a detonator. He did not have any bomb-making materials. He did not travel near Gaithersburg where the NIST is located. He had no prior convictions.

    The only change in circumstance is that Mr. Taranto had rejected a plea offer that would have required him to plead to the four J6 misdemeanors and a a DC Code offense of carrying a pistol

without a license. He also had filed a motion to suppress. Under the plea agreement, the government would have agreed to the guideline range of 0 to 6 months and for the single DC code firearm offense of 6 to 24 months. Thus, Mr. Taranto had already served a sentence that the government at that time believed was a reasonable and just resolution of the charges. Yet instead of proceeding by allowing Mr. Taranto his 6th Amendment right to trial, the government ratcheted up his criminal exposure. The timing of the investigation and charging decisions gives rise to a presumption of vindictiveness, and the Court should therefore dismiss the entire superseding indictment.

### C. Mr. Taranto's Continued Criticism of the Government And His Outsider Position Vis a Vis J6 Defendants Also Demonstrate a Likelihood that His Continued Prosecution is the Result of Vindictiveness and Selective Prosecution and Enforcement by the Government

While the administration has changed, Mr. Taranto has continued to criticize the government for its conduct. He continues to publicly deride the atrocious conditions at the DC Jail, where he is housed in cells with growing black mold.

He has continued to express his opinion about Ashley Babbit's death that is contrary to the prevailing opinion held by J6 defendants and even by President Trump, who has publicly expressed sympathy for her death.[4] Indeed, Mr. Taranto's views on this issue, among others, caused him to be shunned from the gatherings by J6 supporters outside the DC Jail (the "Freedom Corner") before he was charged in this case. After he was charged and detained at CTF, Mr. Taranto was physically

---

[4] During a June 2023 interview of Mr. Taranto posted online, he "discussed being inside the Capitol on January 6 and reviewed video footage of himself from that day and narrated what he was doing and what was happening around him in the footage. The interview host and Taranto spent a considerable amount of time dissecting footage of Ashli Babbitt being shot, and Taranto endorsed a conspiracy theory that Babbitt's death was a hoax and that the first responders and people in the crowd around her were actors." Gov't Memo in Support of Pretrial Detention (ECF 8 at 6).

attacked by other J6 defendants. To this day, former J6 defendants express antagonism toward Mr. Taranto. There are posts on social media questioning whether Mr. Taranto is an "operative."

Mr. Taranto has been reporting news for years, much of it has has been in the form of aggregation of news that is thrown to the wayside. He also "connects the dots" on issues that would get most news reporters fired. His continued prosecution abridges his first amendment rights and raises a likelihood of point-of-view discrimination. *See, e.g., Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1131 (D.C. Cir. 2023) (reversing dismissal of selective enforcement claim, holding that "The First Amendment prohibits government discrimination on the basis of viewpoint."). "Discriminatory motive, however, is not an element of a First Amendment free speech selective enforcement claim. The First Amendment prohibits discrimination on the basis of viewpoint irrespective of the government's motive." *Id.*

### D. The Disparate Treatment of Mr. Taranto Raises a Likelihood of Selective Enforcement

> To make out a selective enforcement claim, the target of enforcement must displace "the presumption that a prosecutor has acted lawfully." This requires a plaintiff to demonstrate he was singled out for enforcement "from among others similarly situated."
>
> Individuals "are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." The "similarly situated requirement is necessary" to ensure courts are not " 'interfer[ing] with the course of criminal justice.' "
>
> The similarly situated requirement strikes the proper balance between executive discretion and judicial enforcement of constitutional rights by isolating whether a decision turns on "unlawful favoritism," rather than lawful prosecutorial considerations. In practice, courts must assess whether a plaintiff is similarly situated to a person against whom the law was not enforced across the relevant prosecutorial factors. Such factors may include "the strength of the case, the

> prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan."

*Frederick Douglass Found., Inc. v. D.C.* (internal citations omitted).

A review of the pardon cases and the government's decision to increase the charges against Mr. Taranto only after he rejected the plea agreement shows a reasonable likelihood that the United States is selectively and vindictively enforcing the offenses that Mr. Taranto is charged with. At a minimum, the Court should require the Government to explain why it continues to prosecute Mr. Taranto for firearm offenses which it has dismissed against other similarly situated defendants.

### E. The Second Superseding Indictment and the Totality of Circumstances Raises a Likelihood of Vindictive Prosecution

The second superseding indictment which charged Mr. Taranto with more serious offenses only after he turned down a plea agreement – for allegedly perpetrating a hoax by conveying false information that "he would maliciously damage or destroy, or attempt to damage or destroy, by means of an explosive, the National Institute of Standards and Technology ("NIST") and for a violation of the National Firearms Act (which has now been dismissed) raises the specter of vindictiveness, particularly when coupled with the other facts set out above. These enhanced charges violate Mr. Taranto's right to the due process of law as it results from the fact that he exercised his right to a trial, thus burdening the exercise of his constitutional rights. *United States v. Meyer*, 810 F.2d 1242, 1243 (D.C. Cir.), *reh'g en banc granted, opinion vacated*, 816 F.2d 695 (D.C. Cir. 1987), and *opinion reinstated on reconsideration sub nom. Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C. Cir. 1987).

Given the sequence of events, the Second Superseding Indictment filed against Mr. Taranto nearly eight months after he was first charged primarily with misdemeanor offenses based on facts that were known to the government since his initial arrest must be seen as the result of his decision to reject the plea and exercise his Sixth Amendment right to a trial, denying him due process. The continued prosecution of Mr. Taranto despite the dismissal of similar charges against similarly situated defendants further supports that conclusion. Thus his continued prosecution on these charges amounts to prosecutorial vindictiveness. Indeed, the facts which led the United States Court of Appeals to affirm dismissal of charges in the *Meyer*, a case that like Mr. Taranto's involved the prosecution of persons who had engaged in a political demonstration, on the basis of prosecutorial vindictiveness are eerily similar to the present situation. In almost every respect, the sequence of events in the instant case mirror the events in the *Meyer* case – from his assertion of the right to go to trial, to disparate treatment of others, to his exercise of First Amendment rights in engaging in criticism of the government.

> We begin by noting a set of predicate facts that Goodwin and the case at bar have in common. In both cases, of course, the prosecutor increased the charges against the defendants after the defendants had asserted their constitutional rights. In neither case did the defendants have any notice of this possibility: at no time had the prosecutors informed the defendants that they might face increased charges if they chose to go to trial. Finally, in neither Goodwin nor the case at bar had the defendants' own conduct after the initial charging decision given the government a legitimate reason to enhance the charges. These circumstances alone, of course, fail to support a realistic likelihood of prosecutorial vindictiveness; the Supreme Court's decision in *Goodwin* held as much. We note them because they combine with other circumstances in the case to suggest a retaliatory motivation.
>
> Perhaps the most important of the circumstances peculiar to this case is the government's disparate treatment of the defendants who elected

> to go to trial and the defendants who elected to forego their trial rights. All of the defendants participated in the same demonstration and conducted themselves in the same manner. Yet the defendants who chose to go to trial faced two charges, whereas the other defendants confronted only one. This disparate treatment must give rise to a suspicion that the government discriminated among the defendants on the basis of their divergent decisions whether to exercise their right to trial. The facts in this case thus support, far more than did the facts in *Goodwin*, a finding of a realistic likelihood of prosecutorial vindictiveness.
>
> The simplicity and clarity of both the facts and law underlying these prosecutions heightens the suspicion of prosecutorial vindictiveness. Government officials often make their initial charging decisions prior to gaining full knowledge or appreciation of the facts involved in a given case. In addition, officials often make charging decisions before analyzing thoroughly a case's legal complexities. The decision in Goodwin stemmed largely from the Supreme Court's understanding of these facts: the Goodwin Court recognized the frequency with which prosecutors must act on (and later compensate for) incomplete information or understanding. *See United States v. Goodwin*, 457 U.S. 368, 381 (1982). But the case at bar appears to present few problems of this kind; not even the government contests the simplicity and straightforwardness of either the conduct involved in this case or the law relating to that conduct. Thus, the suspicion must grow that the prosecutor increased the charges not because of any further factual investigation or legal analysis, but because the defendants chose to exercise their constitutional right to trial.

*United States v. Meyer*, 810 F.2d at 1246-47 (internal citation omitted).

**II.     Discovery Request**

Based on his colorable claim of vindictive and selective prosecution and enforcement, Mr. Taranto respectively requests that the Court Order discovery regarding the disparity in his treatment. Specifically, he seeks the following:

1.     Communications between the Department of Justice ("DOJ") and the United States Attorney's Office for the District of Columbia ("USAO-DC") regarding the prosecution of J6

defendants and the subsequent pardons of defendants similarly situated to Mr. Taranto, *i.e.,* with charges additional to those that took place on J6.

2.      Communications between DOJ and USAO-DC regarding the decision to seek a second superseding indictment with enhanced charges; regarding the decision to oppose the dismissal of all his charges under the President's pardons; and generally regarding his prosecution.

3.      Any and all communications between DOJ and the USAO-DC and any other governmental entities, such as Congress, the Inspector General's Office and any other persons or parties that references or led to Mr. Taranto's continued prosecution.

**Conclusion**

For the same reasons that led the district court in *Meyer* to dismiss the charges based on prosecutorial vindictiveness, a decision later affirmed by the Court of Appeals, this Court should dismiss the charges against Mr. Taranto. This Court should also dismiss the charges on the basis of selective prosecution and enforcement. Alternatively, the Court should order the discovery requested.

In seeking the second superseding indictment to charge Mr. Taranto with a felony that substantially increased the punishment to which he was exposed based on facts known to the government from the inception and continuing to prosecute Mr. Taranto, while it dismisses charges for similarly situated defendants, the government violates his constitutional rights under the due process and equal protection clauses.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this Supplement to Motion to Dismiss was served on all counsel of record via ECF this 30th day of April, 2025.

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**