UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 23-CR-229 (CJN) |
| | : | |
| **TAYLOR TARANTO,** | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND ENFORCEMENT AND MOTION TO COMPEL DISCOVERY THERETO

The United States of America respectfully submits this opposition to Defendant Taylor Taranto ("Defendant")'s Second Motion to Dismiss For Selective and Vindictive Prosecution and Enforcement and Motion to Compel Discovery Thereto ("Defendant's Motion"). The Defendant argues that his indictment should be dismissed due to selective and vindictive prosecution and enforcement again him, or, in the alternative, that the Court order discovery regarding his claim of selective prosecution. ECF No. 119 at 1, 9. The Defendant's claims lacks merit, and this Court should deny the Defendant's motion.

### I.   BACKGROUND

The government incorporates by reference its factual summaries of the Defendant's conduct in January 2021 and June 2023 from its prior responses on vindictive and selective prosecution (ECFs No. 70 and 71). Following the Defendant's arrest on June 29, 2023, in July 2023 the grand jury charged the Defendant with the following offenses: (1) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1); (2) Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code § 2506.01(b); (3) Entering or Remaining in a Restricted Building or Grounds, in violation of 18

U.S.C. § 1752(a)(1); (4) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On July 14, 2023, defense counsel for the Defendant emailed trial counsel to request a conversation about a potential plea offer for the Defendant. During a subsequent phone conversation, the government proposed a plea offer to defense counsel in which the Defendant would plead guilty to five counts: (1) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1); (2) Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Following that phone conversation, the government received no further inquiries from defense counsel regarding the plea offer discussed by telephone, and the parties subsequently litigated multiple motions, including the Defendant's Motion for Release from Custody, filed on July 27, 2023 (ECF No. 19) and the Defendant's Motion to Suppress evidence seized from his van, filed on September 27, 2023 (ECF No. 30), both of which suggested to the government that the Defendant was uninterested in a pre-trial resolution of his case.

On July 24, 2023, as part of their ongoing investigation of the case, FBI case agents obtained a lawful search warrant for information associated with the YouTube account with userhandle "tftx22," which had been the source of livestreamed videos (including the video conveying the potential threat to NIST) believed to have been recorded by the Defendant on June

2

28 and 29, 2023. The signed search warrant was served on Google, LLC (the parent company of the social media/video streaming website YouTube) on July 28, 2023. On August 11, 2023, FBI case agents received digital notice of an available production of materials from Google in response to the previously served search warrant, which included materials for the YouTube account associated with the Defendant's livestreamed video from June 28, 2023. Materials from the Google search warrant return received by the FBI on August 11, 2023 were subsequently provided to prosecutors in the case on September 1, 2023. Review by prosecutors and case agents of the search warrant return received from Google continued through October and November 2023, as documented in previously disclosed materials in this case.

In October 2023, as part of its ongoing investigation in the case, the government shipped the CZ Scorpion seized from the Defendant's van to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). After receiving the CZ Scorpion on October 30, 2023, ATF conducted an evaluation of the weapon to determine if it was a short-barreled rifle, as defined by the National Firearms Act of 1934 (NFA) and the Gun Control Act of 1968 (GCA). As subsequently documented in a Report of Technical Examination dated November 6, 2023, an ATF firearms enforcement officer determined that the CZ Scorpion seized from the Defendant's van on June 29, 2023 was both a firearm and a rifle with a barrel length of less than 16 inches in length, making it subject to registration requirements under the NFA.

Following receipt of the YouTube materials received on August 11, 2023 in response to the search warrant served on Google on July 28, 2023, as well as receipt of the ATF's Report of Technical Examination on November 6, 2023, the government contacted defense counsel via email on December 1, 2023, documenting the government's understanding that the Defendant was not interested in resolving his case via the plea outlined during the previous summer and setting a

3

deadline of December 8, 2023 for the Defendant to notify the government if he wanted to accept that plea offer. The government's email also informed defense counsel that the government expected, based in part on new evidence gathered in the case, to pursue a superseding indictment in the near future. In an email reply on December 3, 2023, defense counsel inquired about what charges the government intended to bring in its superseding indictment and requested an extension of the plea deadline beyond December 8, 2023. On December 8, 2023, the government informed defense counsel that the anticipated superseding indictment would include, among other counts, a charge under 26 U.S.C. § 5861(d) and agreed to keep the plea offer open through December 18, 2023. On December 15, 2023, the government followed up with draft plea paperwork, formally extending the same plea offer previously discussed with defense counsel to the Defendant via written letter and reiterating the December 18, 2023 deadline on the plea offer. The government received no further response prior to the December 18, 2023 deadline.

On December 19, 2023, at a status hearing in the Defendant's case, the government relayed to the Court that the Defendant had rejected the previously discussed plea offer, and that the government intended to seek a superseding indictment in the case. Based on the representations of the parties, the Court suggested that the government might delay its pursuit of a superseding indictment, in order to allow the Defendant additional time to consider the previously discussed plea offer. The government agreed to both delay seeking a superseding indictment and extend the deadline on its plea offer. On December 21, 2023, the government confirmed in writing to the Defendant, through counsel, that the plea offer would remain available through January 12, 2024, and that the government would not present its superseding indictment to a grand jury until after the plea offer had expired. On January 5, 2024, defense counsel acknowledged in writing that the plea offer would expire on January 12, 2024. The government received no further response from

the Defendant regarding the plea offer prior to its expiration on January 12, 2024, and subsequently emailed defense counsel on February 9, 2024 to confirm in writing that the plea offer had expired and was revoked.

On February 14, 2024, the Defendant was charged by superseding indictment with the following offenses: (1) Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5861(d) and 5845(a)(3) (Count One); (2) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1) (Count Two); (3) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(1) (Count Three); (4) Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code § 2506.01(b) (Count Four); (5) Unlawful Possession of Ammunition, in violation of 7 D.C. Code § 2506.01(a)(3) (Count Five); (6) False Information and Hoaxes, in violation of 18 U.S.C. §1038(a) (Count Six); (7) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count Seven); (8) Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Eight); (9) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Nine); (10) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Ten); and (11) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Eleven).

On January 25, 2025, the government filed a motion to dismiss with prejudice Counts Seven, Eight, Nine, Ten, and Eleven of the Superseding Indictment (ECF No. 45), citing the Executive Order dated January 20, 2025 granting pardons for offenses related to the events of January 6, 2021 at the U.S. Capitol. The Defendant subsequently sought (via ECF No. 99) to compel the government to also dismiss Counts One through Six, claiming they fell within the

5

scope of the Executive Order from January 20, 2025. The government opposed the Defendant's motion (via ECF No. 101), and the Court denied the Defendant's motion. Minute Order dtd Feb. 12, 2025. On April 16, 2025, the government moved to dismiss Count One of the superseding indictment. ECF No. 114.

## II.     LEGAL STANDARD

### A.     *Prosecutorial Vindictiveness*

"'Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). It refers to situations where the government acts in a way that is designed to penalize a defendant for his or her prior exercise of a constitutional or statutory right. *Id.*, citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *see also United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). The "concerns over alleged vindictiveness do not relate to whether the prosecutor has acted maliciously or in bad faith, but whether a prosecutor's actions are designed to punish a defendant for asserting her legal rights." *United States v. Gary*, 291 F.3d 30, 35 (D.C. Cir. 2002); *see also Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001). There are two ways that a defendant may establish prosecutorial vindictiveness: (1) the defendant shows "actual vindictiveness," or (2) the defendant presents facts that give rise to a "presumption of vindictiveness." *Meyer*, 810 F.2d at 1245, citing *Goodwin*, 457 U.S. at 380–81; *see also Safavian*, 649 F.3d at 692. When considering whether the defendant has demonstrated vindictiveness under either approach, the court must consider the actions of the government as a whole – not necessarily just the actions of the individual prosecutor. *Meyer*, 810 F.2d at 1248 ("The Supreme Court's decisions concerning vindictive prosecution have focused on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor . . . . Thus, the

government cannot defeat the defendants' argument that a presumption should arise in this case merely by pointing out that two different individuals made the charging decisions.").

A defendant may establish actual vindictiveness "through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights." *Id.* at 1245; *see also Maddox*, 238 F.3d at 446 ("To prove actual vindictiveness requires 'objective evidence' that the prosecutor's actions were designed to punish a defendant for asserting his legal rights."). "This showing is, of course, exceedingly difficult to make." *Meyer*, 810 F.2d at 1245.

In the absence of such evidence, a defendant may attempt to establish a presumption of vindictiveness. To establish the presumption, a defendant must produce evidence sufficient to establish a "realistic likelihood of vindictiveness." *Safavian*, 649 F.3d at 692, quoting *Meyer*, 810 F.2d at 1245. Identifying evidence establishing a "realistic likelihood of vindictiveness" requires "something more" than an increase in charges that followed the exercise of his constitutional or statutory rights. *United States v. Meadows*, 867 F.3d 1305, 1313 (D.C. Cir. 2017); *see also Safavian,* 649 F.3d at 692 ("[A] prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context"). This principle applies even where the evidence supporting the new charge was in the government's possession at the time of the initial indictment. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution." *Goodwin*, 457 U.S. at 380. "[E]ven where the government has full knowledge of the facts, it can initially exercise its discretion to bring lesser charges." *United States v. Slatten*, 865 F.3d 767, 800 (D.C. Cir. 2017). And, as the Supreme Court has observed, "a prosecutor may"—as part of a plea agreement—"forgo legitimate charges already brought in an effort to save the time and expense of trial." *Goodwin,* 457 U.S.

at 380. The converse is likewise true: "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id.*

In the pretrial context, prosecutorial vindictiveness claims based on the addition of charges rarely succeed. "A defendant must show that the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34) (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make in a pretrial posture, where "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* In addition, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Meadows*, 867 F.3d at 1313 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

In *Goodwin,* the Supreme Court addressed a situation where the government initially charged a defendant with misdemeanors and then added a felony charge after the defendant requested a jury trial. *Goodwin*, 457 U.S. at 370. The Court declined to apply a presumption of vindictiveness. It explained, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader*

8

*significance.*" *Id.* at 381 (emphasis added). The Court found that:

> the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional or greater charges after the defendant made a pretrial demand for a jury trial. *Id.* at 384.

### B.    *Selective Prosecution*

"[T]he prosecution (and non-prosecution) power is a vital aspect of the executive power. . . . Prosecutorial discretion lies within the 'special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'" *Frederick Douglass Found. v. District of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). As a result, it is generally beyond the purview of the judiciary to review charging decisions made by the executive. *See id.* at 1136–37 ("As we have explained, the 'Executive's charging authority embraces decisions about whether to initiate charges, whom to prosecute, which charges to bring,' and '[i]t has long been settled that the Judiciary generally lacks authority to second-guess those Executive determinations.'" (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 737 (D.C. Cir. 2016)). However, "a prosecutor's discretion is 'subject to constitutional constraints,'" including that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (first quoting *United States*

*v. Batchelder*, 442 U.S. 114, 125 (1979), and then quoting *Oyler v. Boles*, 368 U.S. 446, 456 (1962)). A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also Fokker Servs. B.V.*, 818 F.3d at 741 ("[J]udicial authority is … at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong,* 517 U.S. at 465.

A claim of selective prosecution seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *Armstrong,* 517 U.S. at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong,* 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong,* 517 U.S. at 463. "[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30

(D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Attorney Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982). "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). More recently, in the First Amendment context, the D.C. Circuit has held that, at least in civil cases, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 1144-45 (D.C. Cir. 2023) (quoting *Reed v. Town of Gilbert,* 576 U.S. 155, 165 (2015)) (citations omitted). Discriminatory effect – a showing that the defendant has been treated differently from similarly situated individuals – is still required. *Id.* at 1145.

As explained by Judge Berman Jackson in *Stone*, an individual may be similarly situated to the defendant if:

> "[He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); s*ee also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008) (defining a similarly situated offender as "one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced."). "Defendants are similarly situated when their circumstances present **no** distinguishable legitimate prosecutorial factors that might justify making different prosecutorial

11

decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)) (emphasis added). The phrase "similarly situated" is "narrowly" interpreted. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) (quoting *Stone*, 394 F. Supp. 3d at 31). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27-28 (internal citations omitted).

### III.     ARGUMENT

#### A.     *The Defendant's Claims of Vindictive Prosecution are Meritless*

The Defendant claims that he has been the victim of a vindictive prosecution, and points to the government's pursuit of a superseding indictment after his rejection of a plea offer and litigation of a motion to suppress and the alleged disparate treatment of other January 6 defendants with charges that did not take place at the U.S. Capitol Building on January 6, 2021 as bases for his motion. ECF No. 119 at 3-9. These claims are unsupported by the facts presented above and in the Defendant's motion, which fail to establish either actual vindictiveness or the presumption of vindictiveness.

##### 1.     The Timing of the Superseding Indictment

First, the timing of the government's pursuit of a superseding indictment, to include Count Six's allegation of a violation of 18 U.S.C. §1038(a), does not support the rebuttable presumption of vindictiveness. The Defendant claims that because the superseding indictment in this case was

filed "only after [the Defendant] turned down a plea agreement," the superseding charges "raise the specter of vindictiveness" and punish him for exercising his rights. ECF No. 119 at 7.

This argument fails as a matter of both law and fact. The Defendant's reliance on the superseding charges' timing contravenes the Supreme Court's guidance in *Goodwin* that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution" and that "[a]n initial decision should not freeze future conduct"; rather, "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." 457 U.S. at 381-82.

The Defendant's entire argument fails to account for the clear timeline of the government's investigation. In the present case, when the government sought the superseding indictment, the government did not just reassess the evidence and information that was already on hand at the time of the first indictment. Rather, as noted in the government's previous response on vindictive prosecution (ECF No. 70, which focused primarily on the subsequently dismissed Count One), it based its superseding charging decision on information that had not been available in the early summer of 2023. This included both new information about the Defendant's CZ Scorpion (as discussed in ECF No. 70), as well as the search warrant returns from Google LLC relating to the YouTube account used by the Defendant to live stream the video from June 28, 2023 that was the basis for Count Six. The government's plea negotiations with the Defendant were protracted (and intermittent), spanning the six-month period between July 2023 and January 2024. After the Defendant had expressed no further interest in the plea informally discussed between counsel in summer 2023, the government's investigation continued. Contrary to the Defendant's claim that the superseding indictment was based upon "facts that were known to the government since his initial arrest," the government subsequently took numerous investigatory steps in the summer and

fall 2023 to confirm key details about both the Defendant's CZ Scorpion's characteristics and status, and the YouTube account allegedly used by the Defendant for live streamed videos on June 28 and 29, 2023, information the government needed in order to determine what charges might be applicable and appropriate to the Defendant's conduct in June 2023.

As previously noted in the government's prior response to defendant's claim of vindictive prosecution and as clearly established by the timeline of the investigation and superseding indictment, the government could not have proceeded with indicting on Count One until at least November 6, 2023, and similarly could not have proceeded with indicting on Count Six before the receipt and review of the Google search warrant return in August through October 2023. Even after receiving these forms of new information, the government continued to engage in good-faith plea discussions with the Defendant in December 2023—at which time the government expressly informed the defense of its plan to seek additional charges. When those negotiations failed, and after an additional month of consideration by the government, the government filed the superseding indictment. Given the Defendant offers no other evidence regarding the timeline of this case to support his claim, he has failed to make the requisite showing to establish a realistic likelihood of vindictiveness and his motion should be denied.

### 2. The Treatment of Other J6 Defendants

The Defendant also claims that he has been treated differently than other "similarly situated defendants" because of his continued criticism of the government and his "outsider" status compared to other January 6 defendants. ECF No 119 at 5, 8. As noted in the government's previous filing on the scope of the Executive Order and its applicability to this particular case, the Defendant's remaining counts are wholly unrelated to the events of January 6, 2021, and were thus not covered by the pardons, commutations, and dismissals resulting from

the President's Executive Order. *See* ECF No. 101 at 3-4 (discussing and distinguishing the dismissal of charges stemming from conduct committed after the riot on January 6, 2021 in *United States v. Garret Miller*, No. 21-cr-119 (CJN), *United States v. Pollock, et al.*, No. 21-cr-447 (CJN), and *United States v. Vo,* No. 25-cr-10 (TSC)).

In addition to distinguishing cases where dismissal of post-January 6, 2021 conduct occurred following the issuance of the President's Executive Order, the government also notes that, contrary to his assertions, the Defendant's continued prosecution for conduct unrelated to the Defendant's actions on January 6, 2021 is not unique. In *United States v. Edward Kelley,* the court rejected a defendant's attempt to extend the scope of the President's Executive Order to cover a multi-count indictment in Tennessee charging the defendant with, amongst other things, conspiracy to murder employees of the United States, based on conduct in Tennessee in late 2022 that stemmed from the defendant's arrest for his conduct on January 6, 2021 and subsequent release pending trial in the District of Columbia. *See United States v. Kelley*, No. 22-cr-118 (TNED), ECF No. 102 at 4-5. The Court found the defendant's conduct in Tennessee "temporally and spatially unrelated" to events from January 6, 2021, as they were separated from the defendant's conduct at the United States Capitol by "years and miles." *Id.* at 10. Similarly, defendant David Daniel, who received a pardon for his actions related to January 6, 2021 at the United States Capitol, continues to face charges in federal district court for possession of alleged child sexual abuse material in North Carolina, based in part on digital images found during the execution of a search warrant issued pursuant to the government's investigation into the defendant's conduct on January 6, 2021. *See United States v. David Daniel*, No. 24-cr-209 (WDNC), ECF No. 32 at 3. As in each of these cases, the Defendant's alleged conduct is separated both spatially and temporally from his actions on January 6, 2021 at the United States

15

Capitol, and his continued prosecution, rather than reflecting vindictive prosecution, reflects the government's lawful use of prosecutorial discretion in continuing to pursue charges for conduct not covered by the President's Executive Order.

### B. *The Defendant's Claim of Selective Prosecution is Meritless*

The Defendant also claims that he has been selectively targeted for prosecution for the same reasons discussed above: that he exercised his right to a trial and his unique "outsider" status compared to other defendants charged with their actions on January 6, 2021. ECF No. 119 at 3-5. The Defendant's claim of selective prosecution is without merit, and he fails to make the requisite showing of a colorable claim of discriminatory effect.

### 1. The Defendant Misidentifies The Pool of Alleged Similarly Situated Individuals

The Defendant's claim of discriminatory effect is undercut from the start by his failure to correctly identify an alleged pool of "similarly situated" individuals for comparison. The Defendant identifies no specific individuals and offers no statistical analyses or evidence of different treatment of other defendants. Instead, the Defendant merely alludes to the "pardons of defendants similarly situated to Mr. Taranto, *i.e.*, with charges additional to those that took place on J6." ECF No. 119 at 10. However, as evidenced by the discussion of the Edward Kelley and David Daniel cases above, the Defendant's continued prosecution for conduct unrelated to his actions on January 6, 2021, is not exceptional, and there is no basis for finding that his prosecution is the result of anything other than the government's continued practice in the District of Columbia of prosecuting both possessory gun offenses and potential threats to federal facilities.

## 2. The Defendant's Multiple Distinguishable Legitimate Prosecutorial Factors

Even if, for the sake of argument, the Defendant had successfully (and with sufficient detail) identified a pool of defendants who were not being prosecuted despite possessing unregistered firearms in the District of Columbia, there are multiple "distinguishable legitimate prosecutorial factors" present in this case that would justify the government's decision to prosecute the Defendant. *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). First, as noted above, the Defendant's claim of selective prosecution fails to account for the factual, temporal, and spatial distinctions between his case and any hypothetical pool of allegedly similarly situated individuals. Fundamentally, the Defendant's alleged criminal conduct in Count Six separates and distinguishes him from any hypothetical (if misidentified) pool of similarly situated firearm possessors. As discussed in *Stone*, "similarly situated" individuals are those:

> "that engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of the that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan."

*Stone*, 394 F. Supp. 3d at 31 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)). In the present case, the Defendant, in addition to his possessory firearm charges under the D.C. Code, currently faces one count of False Information and Hoaxes, in violation of 18 U.S.C. §1038(a). The Defendant's unique alleged conduct in that count, in which he communicated information indicating an imminent bombing threat against a federal facility, significantly narrows the field of potential comparators, and the breadth of criminal violations allegedly committed by the Defendant represents exactly the kind of legitimate prosecutorial factor that would lend greater

17

deterrence value to his potential prosecution and make him a higher enforcement priority for the government.

Additionally, and as previously discussed by the government in responding to the Defendant's previous motion alleging selective prosecution, the government notes that courts have upheld the government's decision to prosecute more readily when "the specter of terrorism is implicated." *United States v. Lewis*, 517 F.3d 20, 28 (1st Cir. 2008); *see also United States v. Khan,* 461 F.3d 477, 498 (4th Cir. 2006) (affirming denial of discovery in selective prosecution case where the available evidence demonstrates that legitimate prosecutorial factors, including the defendants' being accused of supporting a terrorist organization, motivated prosecutorial decisions); *cf. Reno v. Am.-Arab Anti-Discrim. Comm.,* 525 U.S. 471, 491-92 (1999) (holding that consideration of terrorist links in deportation context is not sufficient to constitute selective deportation). Here, the Defendant threatened via a social media live stream to detonate a self-driving vehicle at the National Institute of Standards and Technology, and then was arrested the following day in a residential neighborhood in the District of Columbia while searching for tunnels that he believed would provide access to the homes of private citizens. These acts, which posed a risk to public safety and raised grave concerns for local law enforcement and citizens alike, continue to set the Defendant apart from the vast majority of hypothetical comparators, and make clear why the Defendant's prosecution would have greater deterrence value to the government and be a greater enforcement priority than another hypothetical similarly situated defendant. *See Frederick Douglass Found.,* 82 F.4th at 1143 (quoting *Wayte*, 470 U.S. at 607).

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Defendant's Second Motion to Dismiss For Selective and Vindictive Prosecution and Enforcement and Motion to Compel Discovery Thereto be denied.

Respectfully submitted,

EDWARD R. MARTIN JR.
United States Attorney

/S/
Samuel White
Assistant United States Attorney
601 D Street NW
Washington, DC 20001
202-431-4453
Samuel.white@usdoj.gov

## CERTIFICATE OF SERVICE

On this 6th day of May 2025, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

/s/
Samuel White
Assistant United States Attorney