UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-cr-229 (CJN) |
| | : | |
| **TAYLOR FRANKLIN TARANTO,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION IN LIMINE
REGARDING TESTIMONY OF THE DNA ANALYST**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this Motion *in Limine* regarding testimony of the DNA analyst in this case. Specifically, the government intends to call a DNA expert, Tiffany Smith, from the Federal Bureau of Investigation ("FBI") who performed the analysis in this case and rendered an expert opinion, but not five additional DNA forensic biologists from the FBI's DNA Casework Unit ("DCU") who processed the swabs containing DNA along the chain of custody. As detailed below, having Ms. Tiffany Smith available for cross examination on the DNA evidence in this case satisfies the defendant's rights pursuant to the Sixth Amendment's Confrontation Clause and the government need not call additional witnesses from the laboratory. In support of its motion, the government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter.

**RELEVANT FACTUAL BACKGROUND**

On June 29, 2023, Taylor Taranto was arrested after he broadcast statements the previous day that suggested he had outfitted his vehicle with an explosive device. Shortly following his arrest, the police searched his vehicle for hazardous or dangerous materials. As a result of their search, FBI agents recovered two firearms, multiple magazines, and hundreds of rounds of

1

ammunition from Taranto's vehicle. One firearm is a Smith and Wesson M&P handgun, serial number LFK6710 (the "M&P handgun"). The other firearm is a CZ Scorpion Evo 3 S1, serial number C193454 (the "CZ Scorpion"). The firearms and magazines recovered from inside Taranto's van and a buccal swab taken from Taranto were sent to the FBI DCU for analysis.

In the DCU, Forensic Examiners and biologists each play a role in the DNA analysis of evidence. When evidence is received, Forensic Examiners determine the items that will be tested as well as which examinations will be performed (e.g., serological examinations for the presence of blood and/or semen in addition to DNA testing), and determine the appropriate workflow for such examinations. A team of biologists processes the evidence in accordance with the directions of the Forensic Examiner assigned to the case and the Standard Operating Protocols of such tests. Biologists keep detailed notes and work closely with the Forensic Examiner as items are processed. When testing is completed, the Forensic Examiner is responsible for data analysis, interpretation, and release of a report detailing his or her results and conclusions.

In the defendant's case, Tiffany Smith is the Forensic Examiner while the biologists involved in laboratory examinations are Curtis Gaul, Peri Valentin, Crystal Cauley, Margaret Curran, and Stacy Campbell. Biologist Curtis Gaul spot-tested brown stains on the M&P handgun to detect the presence of blood, and blood was not detected on the gun. He also swabbed the M&P handgun for potential DNA evidence. Biologist Peri Valentin swabbed the CZ Scorpion for potential DNA evidence. Peri Valentin also swabbed nine magazines. After a visual inspection, he determined that the surfaces of four other magazines were unsuitable for DNA examination and did not swab them. Biologist Crystal Cauley collected cuttings from the swabs used for DNA analysis, including the buccal swab taken from Taranto. Each cutting was assigned a unique barcode generated from the Laboratory Information Management System. Such barcodes are used

to track chain of custody throughout the examination process and are used by various instruments for quality assurance purposes throughout processing. The next step of the process was extraction, which was performed by Margaret Curran. Stacy Campbell conducted the quantitation, amplification, and capillary electrophoresis. Throughout these steps, all samples were electronically tracked by their barcodes and quality assurance protocols were rigorously observed.

After the biologists concluded their work, Ms. Smith performed her analysis by consulting raw data outputs and laboratory notes, in accordance with standard operating procedures. Critically, Ms. Smith wrote her conclusions in the November 6, 2023, "Laboratory Report" that was furnished to the defendant's counsel.

Ms. Smith will testify that she analyzed DNA obtained from the swab of the grip of the M&P handgun and the swab of its remaining textured areas. For the swab of the grip, her analysis showed that male DNA was recovered from the swab and was interpreted as originating from three individuals. She will testify that the DNA results from that swab are 270 sextillion times more likely if they orginated from Taranto and two unknown, unrelated people than if they originated from three unknown, unrelated people. For the swab of the remaining textured areas, her analysis showed that DNA was recovered from the swab and was interpreted as originating from one individual. She will testify that the DNA results from that swab are 9 times more likely if they originated from Taranto than if they originated from an unknown, unrelated person.

Ms. Smith will testify that she analyzed DNA obtained from the swab of the grip of the CZ Scorpion, its trigger, and its remaining textured areas. For the swab of the grip, her analysis showed that male DNA was recovered from the swab and was interpreted as originating from three individuals. She will testify that the DNA results from that swab are 2.8 septillion times more likely if they orginated from Taranto and two unknown, unrelated people than if they originated

from three unknown, unrelated people. For the swab of the trigger, her analysis showed that male DNA was recovered from the swab and was interpreted as originating from two individuals. She will testify that the DNA results from that swab are 2.2 sextillion times more likely if they orginated from Taranto and an unknown, unrelated person than if they originated from two unknown, unrelated people. For the swab of the remaining textured areas of the CZ Scorpion, her analysis showed that male and female DNA was recovered from the swab and was interpreted as originating from three individuals. She will testify that the DNA results from that swab are 2.3 million times more likely if they orginated from Taranto and two unknown, unrelated people than if they originated from three unknown, unrelated people.

## RELEVANT PROCEDURAL BACKGROUND

On April 9, 2024, the government furnished a copy of the November 6, 2023, report to counsel for the defendant. The same day, the government provided defense counsel the full FBI DNA digital case file, which, among other things, documents the chain of custody for the DNA evidence in this case and states who performed which tasks and on which dates and times. The government further filed its Notice of Expert Testimony for Ms. Tiffany Smith's testimony on April 12, 2024, (ECF No. 51), which indicated that, in addition to testifying about her findings and conclusions about the DNA in this case, that she "determined that the DNA profiles developed in this case were suitable for comparison and compared these DNA profiles using the applicable Quality Assurance Manual and Standard Operating Procedures in place at the time at the FBI Laboratory."

While preparing for trial, the government consulted with the defense about stipulations in this case and the parties are still negotiating. At the time of this filing, however, the parties have not agreed on stipulations about the chain of custody or standard testing procedures conducted by

the biologists who worked under the supervision of Ms. Smith. Accordingly, the government files the instant motion *in limine* as to why the testimony of Ms. Smith satisfies the defendant's constitutional rights to confront the witnesses against him and the government need not call any additional witnesses from the FBI's DCU.

## ARGUMENT

For the reasons detailed below, Ms. Tiffany Smith's testimony in this case satisfies the defendant's rights pursuant to the Sixth Amendment's Confrontation Clause. "The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Sixth Amendment "guarantees a defendant the right to cross-examine the witnesses against him or her, and it is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (citation omitted); *see also Whorton v. Bockting*, 549 U.S. 406, 413 (2007) ("[O]ur opinion in *Crawford* . . . held that '[t]estimonial statements of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness].'" (quoting *Crawford*, 541 U.S. at 59)). Statements are "testimonial" when their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v. Clark*, 576 U.S. 237, 244 (2015) (*quoting Davis v. Washington*, 547 U.S. 813, 822).

"[W]hen a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the [statement]' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the [statement] occurs." *Michigan v. Bryant*, 562 U.S. 344, 370, 131 S.Ct. 1143, 179

L.Ed.2d 93 (2011). The out-of-court statements of expert witnesses conducting scientific analysis of forensic evidence are also subject to the Confrontation Clause.

For example, an affidavit of a state laboratory analyst, swearing that the analyst chemically tested a particular substance and found it to contain a prohibited narcotic, constitutes a testimonial statement such that the affidavit may not be admitted into evidence absent an opportunity for the criminal defendant to cross-examine the analyst. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). Such affidavits constitute testimonial statements because they "are incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" *id*. (*quoting Crawfor*d, 541 U.S. at 51), and because "the affidavits [were] 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id*. (*quoting Crawford*, 541 U.S. at 52). The Supreme Court subsequently held that a signed statement attesting to an analysis of the blood-alcohol content of a defendant's blood sample likewise qualifies as a testimonial statement to which the Confrontation Clause applies. *See Bullcoming v. New Mexico*, 564 U.S. 647, 663–65 (2011).

This case does not implicate the Confrontation concerns raised in *Melendez-Diaz* or *Bullcoming,* as the government intends to call the witness who formed the conclusions in this case and signed the report at issue, Ms. Smith. The United States Supreme Court and the Circuit Courts of Appeal have been careful "not [to] hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz*, 557 U.S. at 311, n.1. In other words, "this does not mean that everyone who laid hands on the evidence must be called." *Id*. In cases involving DNA examinations specifically, the Supreme Court has noted,

6

"[i]f DNA profiles could not be introduced without calling the technicians who participated in the preparation of the profile, economic pressures would encourage prosecutors to forgo DNA testing and rely instead on older forms of evidence, such as eyewitness identification, that are less reliable." *Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012).

Many Federal Circuit Courts have now ruled that the Confrontation Clause does not require personnel who simply process evidence, such as the biologists in this case, to testify. One such case, *United States v. Murray* is directly on point. 540 Fed. Appx. 918 (11th Cir. 2013). There, the defense challenged the testimony of an FBI DNA examiner from the same FBI DNA Casework Unit as Ms. Smith. The defense argued the forensic examiner's testimony violated the Confrontation Clause, as her testimony relied on test results produced by biologists under her supervision. The Eleventh Circuit held, citing *Williams*, that this was not a Confrontation Clause violation. *See also Grim v. Fisher*, 816 F.3d 296 (5th Cir. 2016) (technical reviewer verified original analyst's findings, signed certification, and was not a violation of the Confrontation Clause); *see also United States v. Kaszuba*, 823 Fed. Appx. 77 (3d Cir. 2020) (admission of report through lab director rather than technician who performed the testing did not violate the Confrontation Clause).

The United States District Court for the District of Columbia ruled likewise. In *United States v. Perkins*, the Petitioner claimed an FBI DNA analyst's testimony (again from the same FBI DNA Casework Unit as Ms. Smith), violated the Confrontation Clause, as it was premised on the work of the team of biologists who handled the evidence. 83 F. Supp. 3d 326 (D. D.C. 2015). Citing *Williams*, the Court rejected the argument. *Id.*

In the context of expert testimony regarding DNA analysis, a District Court in the Eastern District of New York recently explained why the Confrontation Clause does not require each lab analyst who may have participated in testing to testify at trial:

> . . . not everyone "whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz*, 557 U.S. at 311 n.1. This is especially true with regard to DNA evidence. In a recent federal habeas decision, the Second Circuit characterized clearly established Supreme Court precedent as follows: "[T]he Supreme Court has never held that the Confrontation Clause requires an opportunity to cross examine each lab analyst involved in the process of generating a DNA profile and comparing it with another, nor has it held that uncertified, unsworn notations of the sort at issue here are testimonial." *Washington v. Griffin*, 876 F.3d 395, 407 (2d Cir. 2017). A plurality of the Supreme Court has noted that "in many labs, numerous technicians work on each DNA profile. When the work of a lab is divided up in such a way, it is likely that the sole purpose of each technician is simply to perform his or her task in accordance with accepted procedures." *Williams v. Illinois*, 567 U.S. 50, 85 (2012) (plurality opinion) (citations omitted). Given this primary purpose, these analysts' notes and written materials concerning their preliminary role in the DNA analysis would not constitute testimonial statements to which the Confrontation Clause applied. *See Clark*, 576 U.S. at 244 (applying the primary purpose test); *Bryant*, 562 U.S. at 370 (same).

*Sanders v. Fischer*, No. 16-CV-4832 (MKB), 2021 WL 3373127, at *7 (E.D.N.Y. Aug. 3, 2021).

Similarly, in *Fructuoso v. Paramo*, No. CV 14-2481(SS), 2016 WL 6839307 (C.D. Cal. Nov. 21, 2016), a court in the Central District of California held that the state courts' rejection of the petitioner's Confrontation Clause challenge was not contrary to, or an unreasonable application of clearly established federal law regarding the Confrontation Clause, where the prosecution had called a DNA analyst who "personally analyzed and prepared a report based on raw data, she did not personally perform or supervise the preliminary steps through which the raw data was generated, such as DNA extraction, amplification and quantification." *Id.* at *12–13. In so holding, the court in *Fructuoso* pointed to Justice Breyer's concurrence in *Williams*: "As Justice Breyer pointed out in *Williams*, it is still unsettled under the [Supreme] Court's recent Confrontation

Clause jurisprudence whether there is a 'logical stopping place between requiring the prosecution to call as a witness one of the laboratory experts who worked on the matter and requiring the prosecution to call all of the laboratory experts who did so.'" *Williams*, 132 S. Ct. at 2246 (Breyer, J., concurring).[1]

The Confrontation Clause entitles the defendant to cross-examine Ms. Smith, the DNA analyst who determined that the DNA on the firearms matched the defendant's DNA. Ms. Smith performed the final-level DNA analysis, reviewed the results of the preliminary evidence processing conducted by colleagues, produced the relevant DNA profiles, and expressed her expert opinion that there is very strong support for inclusion of the defendant's DNA on the firearms. Ms. Smith's actions amounted to the performance of a DNA test and defendant's Confrontation Clause rights will be satisfied as he will have an opportunity to cross-examine Ms. Smith at trial. *See Fischer*, 2021 WL 3373127, at *8; *see also Pitre v. Griffin*, No. 16-CV-6258, 2016 WL 7442653, at *9 (E.D.N.Y. Dec. 26, 2016) ("Here, petitioner had the opportunity to cross-examine the only expert that expressed an opinion to the jury tying the victim's DNA to petitioner's clothing . . . . At this point in the development of the law on the right to confrontation over DNA testing, no Supreme Court precedent requires more."); *see also Rush v. Wright,* 2018 WL 4375150, at *8 (N.D Ala. 2018) ("Here, after being qualified as an expert . . . [the analyst explained that] she reviewed a summary of all quality control measures within each analysis, as well as the actual

---

[1] Notably, the Supreme Court has recently declined twice to re-examine the *Williams* plurality's holding on the right to confrontation of every laboratory technician involved in forensic testing. *See Stuart v. Alabama*, 139 S. Ct. 36, (2018); *Chavis v. Delaware*, 141 S. Ct. 1528 (2021). In *Stuart*, the DNA analyst called at trial did not even have specific knowledge about that DNA casework, and yet the Supreme Court still declined to examine *Williams*. By contrast, in our case, Ms. Smith worked directly on this DNA evidence, is familiar with the DCU laboratory and its procedures, and the specific technical work of her colleagues in this case.

9

data from the specific samples. She then composed the report from which she testified. Her testimony comports with the requirements of the Sixth Amendment.").

It is the conclusions in Ms. Smith's report that are accusatory, because those are the statements that link the defendant to the DNA at issue. Unlike *Melendez-Diaz*, where no witness testified about the certificates, here the government will be calling a witness who will testify in detail about her work related to the DNA testing, and the defendant will have the opportunity to cross examine that witness. The record will not suggest that non-testifying employees would have opined about the final result, or that the match between the DNA profiles developed during the testing.

Furthermore, the testimony of the five additional DCU forensic biologists who processed the swabs for Ms. Smith's analysis would not add any particular value to Ms. Smith's testimony. As discussed above, and as Ms. Smith will testify to at trial, there is no indication from the entire digital case file that there was anything remarkable or irregular about the processing of the swabs in this case. There were no discrepancies in the chain of custody, nor were any tasks performed by the five additional DCU forensic biologists outside of the standard operating procedures of the FBI DCU.[2] Calling five additional FBI DCU biologists to say just that at this trial is not only a waste of resources, but also not necessary nor is their testimony required by the Sixth Amendment Confrontation Clause.

The government is not requesting a blanket rule that every biologist or technician in every case who processes DNA or other sorts of forensic material is exempt from testifying under the

---

[2] In the event the case file documented any irregularities or departures from protocols, the government would agree that the witnesses may be relevant; however, here, where no such issues have been identified (and where the defendant has had an opportunity to consult an expert to review the case file to locate any such issues), it is not clear why cross-examination of these witnesses would provide any additional information regarding Ms. Smith's conclusions.

Confrontation Clause. However, under the facts of this case, the Confrontation Clause does not require the testimony of the five additional DCU forensic biologists.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court find in advance of trial that the government does not need to call the five additional FBI DCU forensic biologists at trial in order to satisfy the defendant's general Sixth Amendment rights.

                                                    Respectfully submitted,

                                                    EDWARD R. MARTIN, JR.
                                                    United States Attorney
                                                    D.C. Bar Number 481866

By:    */s/ Carlos A. Valdivia*
          Carlos A. Valdivia
          DC Bar No. 1019242
          Samuel White
          NC Bar No. 44908
          Assistant United States Attorneys
          601 D Street NW, Fifth Floor
          Washington, D.C. 20530
          E-mail: Carlos.Valdivia@usdoj.gov
          Telephone: (202) 252-7508