**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **vs.** | * | **Case No. 23-cr-00229-CJN** |
| | * | |
| **TAYLOR TARANTO**, | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

### REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR RECONSIDERATION OF DENIAL OF TAYLOR TARANTO'S MOTION TO DISMISS BASED ON THE PARDON

The government's first argument that Mr. Taranto's motion fails to meet the requirements for reconsideration lacks merit. As his motion points out (ECF 118 at 1-7), he seeks reconsideration because the government materially broadened its position on the scope of the President's Executive Order of clemency for J6 defendants. That change in position *vis a vis* similarly situated defendants meets all three prongs of the standard for reconsideration. It amounts to an intervening change in the controlling paradigm; presents new evidence; and seeks to correct clear error and manifest injustice that results from the continued prosecution of Mr. Taranto, whilst others similarly situated (or with worse records and alleged violations of law) have been released on motion of the government based on the President's Executive Order granting clemency.

Notably, the government does not deny, as it cannot, that it has changed its position as to the scope of the Executive Order. Recently, Judge Friedrich reviewed the government's change in position, even citing the instant case as an example of the government's initial narrow reading of the Executive Order. *See, e.g.*, *United States v. Wilson*, No. 23-CR-427-1 (DLF), 2025 WL 1009047,

at *1–2 (D. D.C. Mar. 13, 2025)[1]:

> on February 6, 2025, the government took the position that Wilson should return to prison because the "plain language" of the pardon does not apply to the Kentucky firearm offenses. . . .Because Wilson's firearms offenses did not occur at the United States Capitol on January 6, 2021, the government asserted that the pardon does not extend to those offenses. Id. at 2.

> The government's position at that time was consistent with the position it had taken in other January 6 cases. From January 20 through February 18, the Department repeatedly and unequivocally stated in courtrooms across the country that the "plain" and "unambiguous" language of the pardon does not apply to criminal offenses that did not occur at or near the Capitol on January 6. . . . United States' Opp'n to Def.'s Mot. to Dismiss at 4, *United States v. Taranto*, No. 23-cr-229 (CJN) (D.D.C. Feb. 11, 2025) ("Taranto's actions in June 2023 in Washington, D.C., were not offenses occurring at the U.S. Capitol on January 6, 2021 ... [and] are wholly unrelated to the pardon for and dismissal of charges related to January 6, 2021 at the United States Capitol.").

> This Court agreed with the government's reading of the pardon. . . .

> Less than two weeks later, however, the Department began to change its position.

---

[1] *See United States v. Wilson*, No. 25-3041, 2025 WL 999985, at *1 (D.C. Cir. Apr. 2, 2025) (denying motion for release pending appeal); *see also United States v. Kelley*, No. 3:22-CR-118-TAV-JEM-1, 2025 WL 757583, at *7–9 (E.D. Tenn. Mar. 10, 2025) ("Initially, the government argued that the Kentucky offenses "did not occur at the United States Capitol on January 6, 2021, and thus, by the plain language of the certificate, the pardon does not extend to these convictions." *Id*., Doc. 103, p. 2. Then, after the court entered an order agreeing with the government's interpretation, the *government reversed itself* and argued that "a reasonable interpretation" of the pardon "include[s] cases such as the defendant's, where the firearms that formed the basis of his convictions were found as a result of a search warrant for evidence of the defendant's conduct on January 6, 2021 (and for which he was not previously being investigated)." Id., Doc. 111, p. 3 (emphasis added).

The government's second argument attempting to distinguish Mr. Taranto's case from those where it has moved to dismiss is equally lacking in merit. Indeed, all the pending charges in the instant case are factually related to January 6 in two separate ways. Mr. Taranto had returned to Washington, D.C. in May 2003 "in response to Speaker of the House Kevin McCarthy's offer to produce *January 6* video."[2] And, on June 27, 2023, the day before the hoax alleged in Count 6 took place, Mr. Taranto "posted a video to YouTube of a recording of a phone call with Speaker McCarthy's office repeatedly asking to be granted access to certain video footage of the events of January 6." *Id*. In contrast, there is no similar factual connection to J6 in the cases where the government has more recently moved to dismiss charges that did not take place at the Capitol on J6.[3]

In addition, the government's claim that Mr. Taranto's arrest on June 29, 2023 was not related to J6 is just not accurate. The June 28 live-stream which forms the basis for the hoax charged in Count 6 was first watched by a United States Capitol Police officer, who later brought it to the attention of the FBI.[4] Capitol Police Officers have no jurisdiction over alleged threats to government buildings in Gaithersburg, Maryland. Their jurisdiction is limited to policing "the United States Capitol Buildings and Grounds." 2 U.S. Code § 1961. Thus, by definition, to the extent that Mr. Taranto's conduct on June 28, 2023 was being monitored or investigated by the Capitol Police it would necessarily have to have been related to J6. Moreover, the government's assertions as to how the search of Mr. Taranto's van took place are just not accurate. After the FBI was contacted by the Capitol Police concerning the June 28, an FBI Special Agent swore out a Complaint (ECF 1) and

---

[2] Order denying pretrial release (ECF 27 at 2-4).

[3] *See* Taranto Motion for Reconsideration (ECF 118) at 3-7 listing cases.

[4] Suppression Hrg Tr (ECF 36), 18:21-25

obtained an arrest warrant signed by Magistrate Judge Harvey on June 29, 2023.  None of the allegations in the Complaint refer to the existence of a detonator or the concern about explosives. The Metropolitan Police Officers who arrested Mr. Taranto and were in the vicinity of the van captured on the BWC videos are heard asking whether there is a warrant and mentioning Mr. Taranto's ties to J6.  The only warrant available on June 29, 2023 was the one issued by Magistrate Judge Harvey that references the four J6 misdemeanors.  Indeed, the hoax is not charged until February 14, 2024 when the Second Superseding Indictment was returned (ECF 45).

Thus, the only logical inference to be drawn from the arrest warrant and complaint filed on June 29, 2023 is that Mr. Taranto was being arrested in whole, or in part, for his conduct relating to the events of January 6, which brings the charges squarely within a plain reading of the Executive Order signed by the President.[5]  was based on President Trump's Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021 (the "pardon").  *See* Minute Order entered 2/12/25.

In sum, as noted in his Motion for Reconsideration, Mr. Taranto - an honorably discharged veteran with no prior convictions, whose only charges at the Capitol were for non-violent misdemeanors – is being prosecuted for charges that are less serious than other J6 defendants with prior convictions.  He has never destroyed or attempted to destroy any government building, was nowhere near the government building that is the subject of the hoax, he had no bomb-making

---

[5]  Executive Order "Granting Pardons and Commutation of Sentences for Certain Offenses relating to the Events at Or Near the United States Capitol on January 6, 2021" (directing the Attorney General "to pursue dismissal with prejudice to the government of all pending indictments against individuals for *their conduct related to the events* at or near the United States Capitol on January 6, 2021.") 90 FR 8331.

4

materials and he engaged in no other activity in furtherance of the alleged hoax.  In that light, and given the actual factual connection between his presence in DC on June 28, 2023, continuing to prosecute Mr. Taranto is inconsistent with the Executive Order signed by President Trump, as currently interpreted by the government.  He is thus being disparately treated by the government.

Under these circumstances, his continued prosecution violates his constitutional rights to due process of law and to equal protection of the law.[6]  This Honorable Court should therefore dismiss all charges to correct this unjust prosecution.

For all these reasons, and for any other reasons that may be just and proper, Mr. Taranto respectfully requests that this Honorable Court dismiss all charges pending against him under the authority of the Executive Grant of Clemency issued by President Trump on January 20, 2025 and *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir.  2001) (a "Presidential pardon ends all litigation").  To do otherwise in light of the government's dismissal of the charges in the cases noted above, would amount to a violation of his rights to equal protection of the law and due process.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

---

[6]  The government has made no argument that the Court lacks authority to dismiss the charges if it were to find such a violation.  That is, the government has made no argument that Rule 48 limits the Court's discretion in this case in any fashion.

5

**CERTIFICATE OF SERVICE**

I hereby certify that the instant notice was served via ECF on all counsel of record this 8th day of May, 2025.


/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**

6