IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| vs. | *   Case No. 23-cr-00229-CJN |
| | * |
| TAYLOR TARANTO, | * |
| Defendant | * |
| | * |

ooOoo

**TAYLOR TARANTO'S REPLY TO GOVERNMENT'S OPPOSITION
TO HIS MOTION FOR RELEASE PENDING SENTENCING**

**A.   A Sentence Greater than Necessary Is an Illegal Sentence**

The parsimony principle embedded in the Sentencing Reform Act of 1987, 18 U.S.C. § 3553(a) requires this Honorable Court to "impose a sentence sufficient but not greater than necessary."[1] As a matter of fundamental fairness and as guaranteed by the due process clause and § 3553(a), every day that Taylor Taranto's liberty is wrongfully withheld extracts a dear cost.[2] So it is no answer for the Government to argue to the Court that it should deny Mr. Taranto's motion for release without explaining why the exception set out in 18 U.S.C. § 3143 does not apply in a case where Mr. Taranto has served the full term of imprisonment recommended under the applicable guideline. No more analysis is required.

The Court should release Mr. Taranto to spend the Memorial Day weekend with his family and to remain free until sentencing.

---

[1] A "sentencing judge's overarching duty under § 3553(a) [is] to impose a sentence sufficient, but not greater than necessary." *Pepper v. United States*, 562 U.S. 476, 491 (2011).

[2] *United States v. Seefried*, 725 F. Supp. 3d 73, 79 (D.D.C. 2024) (releasing defendant from prison after the Supreme Court granted certiorari in *Fischer* but before it issued its opinion).

B.     **Section 3143(a)(1) Exempts Mr. Taranto from Detention Pending Sentence as He Has Already Served the Recommended Guideline Term of Imprisonment**

The government does not dispute that Mr. Taranto has served as much time as recommended under the applicable, U.S.S.G. § 2A6.1.  It does not dispute that he is an honorably discharged disabled veteran, married and the father of two children who has no criminal history and stands convicted of a non-violent offense.  It does not dispute that Mr. Taranto did not make an explicit threat, did not directly communicate with the object of his "hoax", did not possess explosives or bomb-making materials, did not posses a detonator, did not possess a self-driving vehicle, was not present anywhere near Gaithersburg, Maryland, nor that Mr. Taranto's comments were made during a 90-minute live-stream that he broadcast as part of his EOR News program that is live-streaming audience took as a comical farce.   It does not dispute that Mr. Taranto has no history of violent conduct.

The government does not dispute that applying U.S.S.G. § 2A1.6, his sentencing range under those circumstances is 21 to 27 months.[3]  It does not dispute that Mr. Taranto "has served over 22 months in pre-trial detention."  It does not dispute that with good-time credit, Mr. Taranto has actually served nearly 27 months.[4]

The government does not address Mr. Taranto's argument that in these circumstances he is entitled to be released under the exception set out in 18 U.S.C. § 3143(a)(1) for persons "for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment."  Instead, it jumps to an argument – risk of danger and flight – an assessment that §

---

[3] Gov. Opp.  (ECF 138) at 3.

[4] Taranto Motion for Release (ECF 136) at 2.

3143(a) does not require if the exemption applies.

Once a person has served the term recommended under the advisory guideline range, there can be no additional term of imprisonment to be served under the applicable guideline. *A fortiori*, in such a circumstance, the applicable guideline does not recommend a term of imprisonment. The Court should therefore deem that the government has conceded that Mr. Taranto is exempt from the mandatory provision for detention after conviction.[5] No more analysis is required under § 3143(a)(1), under § 3553(a)(1), nor under the Due Process clause. Mr. Taranto has done his time. The Court should release Mr. Taranto pending sentencing.

C.  **The Government's Argument That Mr. Taranto Poses a Risk of Flight and Danger Is Flawed Legally and Factually**

The government's argument is flawed legally because the Court is not required to do a risk of flight or dangerousness analysis where Mr. Taranto has already served the guideline sentence and is subject to the § 3143(a)(1) exception.

The government's argument is flawed factually for several reasons. First, its reliance of this Court's pretrial Order of detention (ECF 27) ignores that the evidence before the Court at the time was incomplete and in part, inaccurate. At the time of the pretrial Order, this Court had not viewed the 90-minute live stream.[6] Instead, the Court relied on a number of representations made by the government that were not accurate including that he had a detonator and that the van was self-

---

[5] *See Bancoult v. McNamara*, 227 F. Supp.2d 144, 149 (D. D.C.2002) ("if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded.")

[6] "[O]n June 28, 2023, Taranto posted a livestream to his YouTube channel from his parked van. . . . The government has not submitted to the Court video of this incident, and Taranto disputes the government's proffer. *See* Appeal at 19–20; Def.' Reply at 3 n.1, ECF No. 21.

driving.[7] In fact, as the video that was introduced at trial revealed, Mr. Taranto did not say he had a detonator; he said he was "working on a detonator." He did not say that the van was self-driving, he said that Danny's vehicle was self-driving. As it happened, Danny's vehicle was old and not in good working condition; it had just been towed to a lot in Oxon Hill, Maryland where it required a jump to start, making it doubtful that it was self-driving. And, Danny's van was nowhere to be seen for the rest of the 90-minute live-stream. While Mr. Taranto said in the live-stream that he was parked in a lot in Gaithersburg, it is now undisputed that he was in Oxon Hill, Maryland, later drove to the National Harbor and ended his video in Alexandria, Virginia. He never traveled to Gaithersburg. In any event, as late as the Court's denial of the motion to suppress, it was under the misimpression that Mr. Taranto had been parked in Gaithersburg during the June 28 live-stream.[8]

In considering the nature and circumstances of the offense, the Court considered the J6 charges, which have now been dismissed. Whatever the significance of the J6 charges at the time, the fact that President Trump was reelected makes this fact less relevant.

In considering the history and characteristics of the defendant, the Court noted the positives including his military record and supportive family but also relied on the government's claim that Taranto "openly stated that he does not acknowledge the legitimacy of the United States Constitution." It should be noted that the government did not introduce any such statement during the trial. In contrast, the Court heard Mr. Taranto in the rebuttal video introduced by the government volunteer that he was in favor of paying taxes to allow the government to provide address the

---

[7] ECF 27 at 4.

[8] ECF 49 (filed 3/6/24) at 1 ("In particular, on Wednesday, June 28, 2023, Taranto began livestreaming himself on YouTube while waiting in the parking lot of a car repair shop in Gaithersburg").

scourge of veteran suicide. He himself described the provenance of his "dark humor" which allowed him to help his fellow servicemen weather their deployment in Iraq and saved at least one of them from committing suicide. Besides his own military service, he also had American flags and "USA" written all over his van; his wife described coming to DC with the family for July 4 festivities; and he was overheard on one of the videos introduced by the defense decrying another person's destruction of American flags, among other things. None of these facts were known to the Court at the time it made its pretrial decision to detain.

With respect to the risk to the danger to the community, the Court relied on what it termed "concrete steps" in connection with the NIST comments. At the time, the Court had not viewed the video and was under the mistaken believe that Mr. Taranto had been present in Gaithersburg. Having now watched the 6/28 video itself as well as other vidoes that reflect the humorous nature of some of Taranto's antics as well as the reaction of many viewers that the comments were farce, the Court should be able to reach a different assessment.[9] In this regard, the Court should also consider that the USCP intelligence analyst who watched the video while it was live-streaming recognized the farcical and fantastical nature of some of the comments that the Court had considered serious.

---

[9] The Court should know that since the verdict, a person who watched the 6/28 live stream reached out to the defense to explain that she had taken the video as political commentary and comedy. And described that others who were commenting on the YouTube stream also responded in the same manner. The person, a 50-something year old who was not present in DC for J6 described herself as a life-long Democrat who was at first outraged at the events of J6 but has since changed her views upon watching more videos of the many persons who were not violent on J6 and became interested in the 1776 Restoration Movement. She works from home and has not traveled to DC because she cares for her elderly mother. Counsel have her name and contact information. She expressed her willingness to testify on Mr. Taranto's behalf if the opportunity arose. Counsel expect that more people may come forward.

The government misrepresents Mr. Taranto's contacts with elected officials. For one, contacting elected officials is one of the core guarantees of the First Amendment. He came to DC in May 2023, at the invitation of then-Speaker MacCarthy who publicly announced that he was making J6 videos available. Mr. Taranto communicated with the Speaker and his staff through emails and phone calls. He never presented himself peacefully or otherwise at the Speaker's Office. With respect to the allegations regarding Congressman Raskin, Mr. Taranto never personally confronted him nor visited his home (a fact that he states at the beginning of the video clip introduced at trial). While Taranto claims in the video that Piney Branch school was selected because it was right next to the Congressman's home, neither of those things are accurate. He did not select the venue. It was selected by the principals of a non-profit organization that had previously presented programs at other Montgomery County facilities (see defense trial stipulation). Undersigned counsel can represent to the Court, that Congressman Raskin does not live right next to Piney Branch Elementary.[10] Just as importantly, the government has no evidence that Mr. Taranto ever approached Raskin at his home or at his Congressional office, nor that Taranto ever searched for the address of the Congressman's residence.[11]

Lastly, Mr. Taranto was never the aggressor at the Freedom Corner, he and Danny were verbally attacked because of their views about Ashley Babbitt's death. In fact, there is video of the moment that a police officer is asked to have Mr. Taranto leave the Freedom Corner by persons associated with Ms. Babbitt's mother, who justifiably is sensitive about her daughter's death, which

---

[10] Counsel has obtained official records showing the address of the Congressman's residence and can represent that it is nearly a mile from the school. The materials are proffered to the Court were the Court to wish to review it.

[11] Some of this information is contained in the Intelligence Report prepared by the USCP.

includes the bald gentleman seen in the video that was shown in court destroying Danny's property and taking down his flags.[12] In the video where Mr. Taranto is asked by an officer to leave the Freedom Corner, Mr. Taranto is amiable as he walks away with the officer. In addition, it was Mr. Taranto who was physically assaulted by a dozen J6 pretrial detainees when he was first detained at CTF.[13]

Mr. Taranto is not a risk of flight. First, having observed Mrs. Taranto on the stand and in the courtroom for the past two weeks, the Court may readily understand her love and support for her husband. There is absolutely no reason presented by the government to believe that Mr. Taranto, who is an American citizen, a life-long resident of this country, the father of two children, with a supportive family who has established ties to Washington State, and who has limited resources (appointed counsel) presents a risk of flight.

---

[12] The man seen in the video shown by the defense is depicted in the J6 Complaint filed in Case No. 24-cr-00291-JDB (ECF 1 at 3), which charged him with assault, civil disorder and other offenses. He is also seen in the video not shown in court

[13] The government is aware that Mr. Taranto was the victim of the assault from the various reports prepared by the correctional officers. The reports are available for the Court's review.

**CONCLUSION**

For all the reasons stated and any that may be fair and just, Mr. Taranto respectfully requests that this Honorable Court release him pending sentencing. In finding him guilty, the Court explicitly found that the allegations he made regarding his statements on the June 28 video were false.[14] The Court's verdict and review of all the evidence should support a finding that Mr. Taranto does not present a risk of flight nor a danger to others. More importantly, he has served the full term of imprisonment recommended by the guidelines, the standard set out in 18 U.S.C. § 3143(a)(1) to establish an exception to detention pending sentencing.[15] Indeed, there are multiple mitigating circumstances that would warrant a sentence below that range.[16]

---

[14] While the Court did not consider the Kalorama video in its verdict, the fact remains that Mr. Taranto was only carrying a smart phone with a camera when he was walking around Kalorama. He was not carrying any firearms on his person; the firearms, all legally purchased and registered in Washington State were in a locked backpack in his van, which was fair distance away from where he was walking. He was live-streaming the situation, unarmed, in a manner that at least one J6 commentator described as an attempt to conduct the type of gotcha-interview that 60-Minutes has conducted for 50 years.

[15] The Court should consider that the Government plea agreement made in late 2013 and early 2014, did not include the hoax charge; the offer required a plea to the 4 non-violent J6 misdemeanors and one gun charge. Indeed, it was only after he rejected that plea that the government filed the hoax charge (ECF 45, 2/14/24). And, as recently as one month ago, the government offered a plea to the hoax and one gun charge that did not contemplate any enhancements, departures or variances and calculated the same guidelines that result in the 21-27 sentencing range (OL 16/CH I).

[16] The hoax case is outside the heartland in ways that mitigate the punishment in that it did not involve an explict threat but rather disjointed phrases that were presented during a live-stream of Taranto's news cast, it was not communicated to the object of the threat, it was not accompanied by any conduct. All of which made it less likely that he intended that the hoax be taken seriously. *See, e.g.,* United States v. Fenton, 30 F.Supp.2d 520, 524-25 (W.D. Penn. 1998). *Compare United States v. Brahm*, 520 F. Supp. 2d 619, 621-22 (D.N.J. 2007) (posted statement that 7 "dirty" explosives would be planted on a date certain in a specific location); *United States v. Baldwin*, 2018 WL 4520210 (N.D. Ga. May 30, 2018) (left a phony bomb with flashing lights and colored wires at a location to be found by a particular person).

Moreover, as the Court well knows, there are a number of substantial constitutional issues that will be presented on appeal. The case implicates rights guaranteed to him by the First and Second Amendments to the United States Constitution, which he will surely litigate on appeal. Even the guideline calculation set out in the government's memorandum ignores downward adjustments that would have reduced the sentencing range, set out in the initial motion by Mr. Taranto. Indeed, the average sentence for first time offenders who commit § 1038 offenses is 14 months, a range which comprehends that downward variances are the norm and which shows that even a term of imprisonment as long as Mr. Taranto has already served in pretrial detention results in unwarranted sentencing disparity, which this Court is required to avoid. *See* 18 U.S.C. § 3553(a)(6).[17]

Moreover, this is Mr. Taranto's first criminal conviction. He stands convicted of nonviolent offenses. He did not engage in any violent conduct and did not destroy any property. He has been married for more than 15 years to a wonderful woman, who has stood by him during all the current difficulties and stands ready to continue her loving support. He is a loving and engaged father. His two children need their father.

Mr. Taranto is an honorably discharged disabled veteran. He has lived in Washington State for much of his adult life, save when he was in the U.S. Navy, where he was deployed to Iraq and

---

[17] During the last five fiscal years (FY2020-2024), there were 9 defendants whose primary guideline was §2A6.1, with a Final Offense Level of 16 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 8 defendants (89%) who received a sentence of imprisonment in whole or in part, the *average length of imprisonment imposed was 14 month(s)* and the median length of imprisonment imposed was 13 month(s). For all 9 defendants in the cell, the average sentence imposed was 13 month(s) and the median sentence imposed was 13 month(s). USSC, Judiciary Sentencing Information ("JSIN") at https://jsin.ussc.gov/analytics/saw.dll?Dashboard

served honorably for over six years. As the Court heard in the video played by the government on the last trial date, Taylor Taranto is a good and thoughtful person who has sought to use humor to help himself and his fellow veterans and prevented at least one of them from committing suicide. His dark and quirky humor is a direct result of his service to his country. He has actively worked to address the PTSD that resulted from trauma experienced during his military service. The lengthy period of pretrial detention with the limited services and unsanitary conditions including growing black mold that prevail in the DC Jail has been a disservice to this good and decent man.

Mr. Taranto stands convicted of gun charges, involving licensure violations. The firearms were all legally purchased in the state of Washington. He was not charged or convicted of using the firearms in any manner. He did not have any firearms on his person and did not otherwise use the firearms and while the rest of his possessions may have been messy, he kept the firearms in a locked backpack reflecting that he recognizes the care with which firearms should be handled.

Mr. Taranto's history and characteristics and the nature and circumstances of the offense reflect that any further imprisonment would be "greater than necessary" to provide just punishment, protect the public and provide needed rehabilitation. *See* 18 U.S.C. § 3553(a). By every applicable standard, it is time for this Honorable Court to apply the "uniform and constant. . . federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue."[18]

---

[18] *Koon v. United States*, 518 U.S. 81 (1996)

WHEREFORE, for all these reasons and any that the Court may find just and proper, Taylor Taranto respectfully implores this Honorable Court to release him pending sentencing pursuant to 18 U.S.C. § 3143(a)(1). It is time to let him return to his wife and children, fittingly on this Memorial Day weekend.

          Respectfully submitted,

          */s/ Carmen D. Hernandez*
          **Carmen D. Hernandez**
          Bar No. MD 03366
          7166 Mink Hollow Rd
          Highland, MD 20777
          240-472-3391
          chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 22nd day of May, 2025.

          */s/ Carmen D. Hernandez*
          **Carmen D. Hernandez**