IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Case No.  23-CR-0229 (CJN) |
| **TAYLOR TARANTO,** | * | |
| **Defendant** | * | |

ooOoo

## MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL

Taylor Taranto, through his undersigned counsel, hereby respectfully moves for a Judgment of Acquittal and for a New Trial on Counts 2 and 3, which charged Mr. Taranto with carrying a pistol without a license in violation of 22 DC Code § 4504(a)(1) and on Count 5, which charged Mr. Taranto with unlawful possession of ammunition in violation of 7 DC Code § 2506.01(a)(3).  As applied to Mr.  Taranto, each of these statutes and the resultant convictions violate Mr. Taranto's rights guaranteed to him by the Second Amendment.

### I.    LEGAL STANDARDS

#### A.    Motion for Judgment of Acquittal

A defendant may move for a judgment of acquittal after a guilty verdict.  Rule 29(c), Fed. R. Crim. Proc.

#### B.    Motion for New Trial

Rule 33 provides that a court may "vacate any judgment and grant a new trial if the interest of justice so requires."  Rule 33(a), Fed. R. Crim. P.  "If the case was tried without a jury, the court may take additional testimony and enter a new judgment."  *Id.*  In contrast to the standard on a motion for judgment of acquittal, in ruling on a motion for new trial, "the Court

need not accept the evidence in the light most favorable to the government." *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D. D.C. 2003). Any error sufficient to require reversal on appeal is an adequate ground for granting a new trial. 3 Wright, King & Klein, Federal Practice and Procedure § 556 (3d ed.2004). The burden of demonstrating that a new trial would be "in the interest of justice" rests with the defendant. *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982). To meet this burden, a defendant must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights. *See United States v. Walker*, 899 F. Supp. 14, 15 (D. D. C. 1995) (*citing United States v. Johnson*, 769 F. Supp. 389, 395–96 (D. D. C. 1991)); *see also Kotteakos v. United States*, 328 U.S. 750, 765 (1946) (the inquiry is "whether the error itself had substantial influence"). If the defendant shows that there was error, the burden shifts to the Government to prove that the error was harmless. *United States v. Palmera Pineda*, 592 F.3d 199, 201 (D.C. Cir. 2010).

## II.     The Second Amendment Guarantees Mr. Taranto the Right to Bear Arms and Possess Ammunition for Those Arms

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. CONST. AMEND. II.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment confers "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). And, that the the District of Columbia's ban on the possession of handguns violated the Second Amendment. 554 U.S. at 635. In *McDonald v. City of Chicago*, the Court further explained that the right to keep and bear arms is a "fundamental" constitutional right implicit in our scheme of ordered liberty and "deeply rooted in this Nation's history and tradition." 561 U.S. 742, 768 (2010). The

opinion in *Heller* leaves no doubt that, collectively, the District's gun-control laws, and the District's application of these laws and their implementing regulations, swept too broadly, amounting to a "ban on handgun possession in the home" that "violates the Second Amendment." *Heller*, 554 U.S. at 595. Indeed, *Heller* made clear that the Second Amendment protects "bearing arms for a lawful purpose" by "law-abiding, responsible citizens ... in defense of hearth and home." *Heller*, 554 U.S. at 620, 634.

Mr. Taranto is a person with no prior convictions who was not charged with using the pistols or ammunition in connection with any other offense, had purchased the two pistols and the ammunition lawfully, and maintained the pistols and ammunition in a locked backpack, in a location where he was living at the time. Under these circumstances, the DC code felony offenses under which he was convicted violated his rights under the Second Amendment.

The Second Amendment leaves no room for these licensing restrictions, which as applied, required Mr. Taranto to obtain a license while he lived in the District of Columbia for a short period of time. There is no other constitutional guarantee which protects an individual only upon obtaining a license or registering in the particular jurisdiction. Persons are not required to obtain a license in order to exercise their First Amendment rights as they travel throughout the United States. The right of the people to be free from warrantless searches under the Fourth Amendment is not conditioned on obtaining a license while they travel in the District of Columbia or throughout the states. No licensing or registration requirements are necessary to secure rights guaranteed by the Fifth, Sixth, or Eighth Amendments. *See, e.g.*, *Heller*, 554 U.S. at 634-35:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding

> "interest-balancing" approach. The very enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad. We would not apply an "interest-balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie. *See National Socialist Party of America v. Skokie*, 432 U.S. 43 (1977) (per curiam). The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong headed views. The Second Amendment is no different. Like the First, it is the very product of an interest balancing by the people—which Justice Breyer would now conduct for them anew. And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

The District of Columbia's licensing requirements for carrying a pistol and its registration requirements for possession of ammunition, are unconstitutional as applied to Mr. Taranto, no less than the interest-balancing approach rejected by the Supreme Court in *Heller*. Indeed, as *Heller* noted, "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* The facts in this case place Mr. Taranto squarely within the Second Amendment rights recognized by *Heller. Id.*

With respect to the registration requirements for the ammunition, as then Judge Kavanaugh noted in his dissent, "Under Heller's history- and tradition-based test, D.C.'s registration requirement is therefore unconstitutional." *Heller v. D.C.*, 670 F.3d 1244, 1270 (D.C. Cir. 2011)*.*

**CONCLUSION**

For all these reasons, Mr. Taranto respectfully requests that the Court vacate his convictions in counts 2, 3, and 5 as violative of rights guaranteed to him under the Second Amendment. In the alternative, the Court should take additional testimony regarding the scope of the Second Amendment as applied and enter a new judgment vacating those convictions.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)
chernan7@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Motion was served via ECF on this 24th day of June, 2025.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**