**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE No. 23-cr-229 (CJN)** |
| | * | |
| **TAYLOR TARANTO,** | * | |
| **Defendant.** | * | |

# DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO ELIMINATE THE CYBERCRIME-MANAGEMENT CONDITION OF SUPERVISED RELEASE

Taylor Taranto, through undersigned counsel, respectfully submits this reply to the Government's Response (ECF No. 218) to his motion to eliminate the cybercrime-management condition of supervised release (ECF No. 204).

The Government's Response does not defend the condition. It "defers to the Court as to the ongoing appropriateness of the Defendant's cybercrime management condition" and closes by again deferring to the Court. Gov Response at 2, 4. The Government thus offers no affirmative argument that the condition satisfies 18 U.S.C. § 3583(d). Its "legal analysis" reduces to two propositions: that *United States v. Smocks* permits the condition because Mr. Taranto used a device to commit his offense, and that *United States v. Malenya* is distinguishable because the condition here is narrower than the computer ban struck down there. Neither proposition withstands scrutiny. *Smocks* is an unpublished, plain-error decision whose reasoning confirms — rather than defeats — Mr. Taranto's motion, and *Malenya*'s narrow-tailoring holding controls the analysis the Government declines to perform. Accordingly, Mr. Taranto respectfully renews his request that the Court eliminate the condition.

## ARGUMENT

### I. Section 3583(e)(2) Requires an Individualized Assessment.

Section 3583(e)(2) of Title 18 authorizes the Court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term." The governing test is "an individualized assessment of the appropriateness of existing conditions," applying the same § 3553(a) factors used to impose supervised release in the first instance. U.S.S.G. § 5D1.4. "The only statutory requirements for modification are that the district court consider the listed § 3553(a) factors, follow the procedure outlined in Fed. R. Crim. P. 32.1, and ensure that the modified conditions are consistent with the requirements applicable to all conditions of supervised release." *United States v. Hill*, 959 F. Supp. 2d 158, 162 (D.D.C. 2013). No showing of changed circumstances is required. *Id.*

That posture matters because the Government's lead authority arises in a fundamentally different one. The question before this Court is not whether an unpreserved condition survives plain-error review on appeal; it is whether, on the Court's own fresh assessment, the condition is "appropriate[]" and consistent with § 3583(d). U.S.S.G. § 5D1.4. Every discretionary condition — whether imposed at sentencing or retained on modification — must be "reasonably related" to the § 3553(a) factors and must "involve[] no greater deprivation of liberty than is reasonably necessary." 18 U.S. C. § 3583. The Government does not contend the condition clears that bar; it defers.

### II. *Smocks* Does Not Support the Condition; The Controlling Question Is Facilitation Under *Burroughs*.

The Government reads *United States v. Smocks*, No. 22-3087, 2024 WL 2468022 (D.C. Cir. May 24, 2024) to hold that it is "sufficient that a defendant 'use[] an electronic

device to commit the offense of conviction'" to impose computer-monitoring conditions. Gov Response at 3. That overstates the decision in three respects.

First, *Smocks* is unpublished and nonprecedential. The panel "determined [the issues] do not warrant a published opinion," citing D.C. Circuit Rule 36(d). *Smocks,* at *3. It is persuasive at most.

Second, *Smocks* was decided on plain-error review of an unpreserved claim. The defendant "failed to object to [the computer-monitoring condition] at his original sentencing," so the panel reviewed only for plain error and treated the addition of monitoring software as "a de minimis modification" of a condition already in place. *Id.* at *2. The panel held merely that "Smocks has not established any error, let alone one that calls into question the fairness, integrity, or public reputation of judicial proceedings." *Id.* at *3. That is not a holding that the condition was appropriate in the first instance — the very question now before this Court on Mr. Taranto's affirmative motion.

Third, the tailoring the panel found did not rest on device-use alone. The condition was "tailored" because "Smocks used an electronic device to commit the offense of conviction, *and* the district court observed 'he has an extensive history of using . . . electronic devices to commit crimes.'" *Id.* Mr. Taranto has no such history. The Court found he has no criminal convictions, an honorable military discharge, and does not pose "a significant risk of recidivism." Taranto Motion to Eliminate Cybercrime Management Condition (ECF 204) at 4, quoting sentencing transcript.

The decision the Government cannot avoid is *United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010) — binding authority holding that a computer condition is reasonably related to the offense only where the defendant used a computer to facilitate the crime. The

D.C. Circuit vacated computer-monitoring and internet-log conditions as "plainly out of sync with the relevant factors," opening with the dispositive point that "Burroughs did not use a computer to facilitate his crimes." *Burroughs,* 613 F.3d at 242. The Court rejected precisely the Government's argument here — treating the general utility of computers to wrongdoers as a justification. "That an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense," because "from drug dealers to Ponzi schemers and smugglers to stalkers — nearly any criminal can use the Internet to facilitate illegal conduct." *Id.,* 613 F.3d at 243. Reading the Guidelines' computer-restriction provision, the court held that such restrictions are "not *categorically* appropriate in cases where the defendant did not use them to facilitate his crime." *Id.*

The cases that *sustain* computer conditions confirm the mismatch. In *United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011), the Court upheld computer conditions expressly because, unlike Burroughs, "Laureys did" use a computer to facilitate his crimes — he "used the internet to facilitate criminal sexual conduct with minors." *Laureys, 653 F.3d at 35.* And in *United States v. Bernier*, 322 F. Supp. 3d 143 (D.D.C. 2018), Judge Kollar-Kotelly sustained computer monitoring because the defendant "forged documents . . . with the use of a computer" and continued to create "false medical documents online" — covert fabrications "similar in nature to the criminal conduct underlying" his false-statements conviction. *Bernier*, 322 F.Supp. 3d at 145-147, 162. That is the paradigm the cybercrime label addresses: the offender who exploits the computer as a hidden instrument of deception.

Mr. Taranto's conduct is the opposite. He did not conceal anything. He broadcast the statements underlying his conviction openly, during a 90-minute livestream, under his own identity, to an audience he had cultivated across several channels over many years. His offense was a public false alarm carried out through a broadcast medium — not the clandestine, concealment-based computer criminality that justified the conditions in *Laureys* and *Bernier*. Under *Burroughs*, the incidental fact that a computer was the broadcast tool cannot support a cybercrime-management condition. *Burroughs*, 613 F.3d at 243.

## III. *Malenya*'s Narrow-Tailoring Requirement Controls, and the Government's Attempt to Distinguish It Misframes the Test.

The Government concedes that the governing standard under *United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013) provides that the Court "must impose the least restrictive condition when weighing the defendant's liberty against the statutory purpose of the condition imposed." Gov Response at 3. *Malenya* holds that § 3583(d)(2) "in effect require[s] the court to choose the least restrictive alternative" and is a "narrow tailoring requirement"; the court "must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes." *Malenya*, 736 F.3d at 559.

The Government's only response is that the condition here is milder than the outright computer ban struck down in *Malenya* — a ban that "shrunk . . . employment opportunities to the vanishing point." That distinction misunderstands what *Malenya* holds. *Malenya*'s rule is not that only total bans fail; it is a *method* the Court must apply to any condition. Two parts of that method defeat the condition here.

First, *Malenya* forecloses justifying a condition by a generic label or an undifferentiated risk of reoffense. The court rejected a justification resting on "the standard

conditions that are imposed in these cases" and on the need to "minimize the risk" of reoffense, holding that such reasoning "ignores the balancing of goals against the defendant's liberty, as required by § 3583(d)(2)." *Malenya,* 736 F.3d at 560. A condition labeled "cybercrime management" cannot be sustained on the strength of the label.

Second, *Malenya* squarely rejects the but-for reasoning that the offense was committed online. The Court held that the argument "that but for the internet, Malenya would not have met his victim . . . alone cannot be enough to justify such a deprivation of liberty," warning that such logic would permit "bans on reading newspapers" or "eyeglasses," and reaffirming that "the mere possibility" of internet misuse "is inadequate to justify an internet restriction." *Id.* at 560-61. Conditions must be matched to demonstrated conduct, not speculation. The district court applied the wrong standard, so the D.C. Circuit "vacate[d] all the challenged conditions." *Id.* at 562.

Applied here, the sentencing objectives the Court identified were protection of the public and respect for the law against future harmful public broadcasts — ensuring that Mr. Taranto not again make statements causing law enforcement to believe a bomb might be set off at a federal facility. Sent. Hrg. TR 10/30/25 at 33-34. A device-disclosure requirement and a bar on acquiring or accessing new computer devices is a poor and overbroad fit for that concern. It restricts the ordinary instruments of modern life that Mr. Taranto is not shown to have abused, while doing little to address the specific risk of a future public hoax. The Court recognized as much when it declined to impose Probation's proposed social-media restrictions — "I am not going to prohibit you from using, downloading or otherwise accessing social media." *Id.* at 36. Given the Court's findings at his sentencing hearing that Mr. Taranto has no prior convictions and does not present "a

significant risk of recidivism" *id.* at 33, the condition imposes a greater deprivation of liberty than is reasonably necessary.

## IV. Mr. Taranto Has Not Willfully Violated the Condition, And the "Veracity" Concern the Government Raises Does Not Change the Analysis.

The Government's background section suggests that Mr. Taranto's disclosure was untruthful because the Probation Office "noted that the Defendant posted a live stream on a social media account on August 14, 2026." That insinuation does not support retaining the condition, for two reasons.

First, truthful disclosure is compliance, not a violation. The condition requires Mr. Taranto to "inform [his] probation officer of all computer devices possessed or accessible" to him; it does not require him to possess devices. On August 7, 2026, he submitted the Computer Disclosure Form directed by the Probation Office, reporting on each category that the property was "abandoned." He certified that report as true. A disclosure condition cannot be violated by disclosing the truth. To the extent the condition is read to require that Mr. Taranto *maintain* devices, that reading was not apparent from its text and raises a fair-notice problem: due process requires that a condition be "sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and § 3583(f) requires a written statement "sufficiently clear and specific to serve as a guide for the defendant's conduct." *United States v. Stanfield*, 360 F.3d 1346, 1353 (D.C. Cir. 2004).

Second, any alleged violation would need to be willful. Before revoking supervised release, a court must find a "willful violation"; conduct that is not "intentional and deliberate" does not warrant revocation. *United States v. Parker*, 219 F. Supp. 3d 183, 184, 189 (D.D.C. 2016). A single livestream post does not establish that Mr. Taranto gave

a false disclosure. Undersigned counsel once again checked Mr. Taranto's Rumble account this evening and found no further postings. Nor does Mr. Taranto's use of email to transmit the required form — in order to comply with the Court's own disclosure directive — does not show ongoing device access amounting to a willful breach.[1]

## CONCLUSION

The Government has declined to defend the cyber crime condition on the merits, and the authorities it cites do not fill that gap. For the foregoing reasons, and those stated in his motion (ECF No. 204), Mr. Taranto respectfully requests that the Court eliminate the cybercrime-management condition of supervised release, dismiss the related violation notice, and grant any other relief the Court deems just and proper.

Respectfully submitted,

/s/

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; chernan7@aol.com

[1] To the extent USPO Stallman has asserted in his 8/24/26 Status Report at 2 that Mr. Taranto was "untruthful" with undersigned counsel, that is not accurate. USPO Stallman misunderstood an email sent on 8/19/26 by undersigned counsel which stated in pertinent part "As far as I can tell, *Mr. Taranto's position per the form that he emailed* to USPO Valencia is that he deleted/abandoned or inactivated all his social media and email accounts. And, that his devices, which are now in the safe that he cannot access, are therefore no longer in his possession." (emphasis added). That email did not report a conversation between Mr. Taranto and undersigned counsel. It merely reflected counsel's understanding of the meaning of the statements on the computer disclosure form that Mr. Taranto completed.

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 3RD day of November 2026.

/s/

______________________________

**Carmen D. Hernandez**